Mark Schonfeld (MS 2798)
Regional Director
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Three World Financial Center
Room 400
New York, NY 10281-1022
Telephone No. (212) 336-1020

**JUDGE McMAHON**

**07 CIV 3814**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                  Plaintiff,

        v.

MICHAEL W. CROW, DUNCAN CAPITAL LLC,
DUNCAN CAPITAL GROUP LLC, ROBERT DAVID
FUCHS, and ROBERT MACGREGOR,

                  Defendants,

               and

TREVOR CROW, SANTAL HOLDINGS LLC,
M.W. CROW FAMILY LP, CROW 2001 CHILDREN'S
TRUST FBO MICHELLE LEE CROW, CROW 2001
CHILDREN'S TRUST FBO SPENCER MICHAEL CROW,
CROW 2001 CHILDREN'S TRUST FBO DUNCAN CROW,
and CROW 2001 CHILDREN'S TRUST FBO OLIVIA
TREVOR CROW,

                  Relief Defendants.

---

07 Civ. _____ (    )
ECF CASE

COMPLAINT



RECEIVED
MAY 15 2007
U.S.D.C. S.D.N.Y.
CASHIERS

---

    Plaintiff Securities and Exchange Commission (the "Commission"), for its Complaint

against defendants Michael W. Crow, Duncan Capital LLC ("Duncan Capital"), Duncan Capital

Group LLC ("DC Group"), Robert David Fuchs, and Robert MacGregor (collectively, the

"defendants"); and, as relief defendants, Crow 2001 Children's Trust FBO Michelle Lee Crow,

Crow 2001 Children's Trust FBO Spencer Michael Crow, Crow 2001 Children's Trust FBO

Duncan Crow, Crow 2001 Children's Trust FBO Olivia Trevor Crow (collectively, the "Crow

Children's Trusts"), Trevor Crow, Santal Holdings LLC and M.W. Crow Family LP (collectively

with the Crow Children's Trusts, the "relief defendants"), alleges as follows:

## SUMMARY OF ALLEGATIONS

1.      From November 2003 through at least December 2004 (the "Relevant Period"),

defendant Crow, an individual previously enjoined by the United States District Court for the

Southern District of California from future violations of the anti-fraud provisions of the federal

securities laws and sanctioned by the Commission, acted as an unregistered principal of

defendant Duncan Capital, a registered broker-dealer.  Crow controlled virtually every significant

aspect of Duncan Capital's operations and received the vast majority of its profits.  Yet Duncan

Capital's regulatory filings did not identify Crow as an officer, director or other "control affiliate"

of the firm, and falsely stated that: (a) a court had never enjoined any of Duncan Capital's control

affiliates in connection with an investment-related activity; and (b) the Commission had never

entered an order against any of the firm's control affiliates in connection with an investment-

related activity.

2.      Defendant Fuchs, the owner and nominal president of defendant Duncan Capital

and the person who filed the false regulatory filings on behalf of Duncan Capital, not only

acquiesced in defendant Crow's undisclosed control of Duncan Capital but also facilitated it by,

among other things, transferring Duncan Capital's profits to entities Crow controlled, and directly

or indirectly, to the relief defendants.

3.    With the knowledge and substantial assistance of defendant Fuchs, defendant

Duncan Capital also failed to register several associated persons, including Crow and defendant

MacGregor, Duncan Capital's senior managing director in charge of private placements.

## VIOLATIONS

4.    By virtue of the conduct described herein:

    a.    Crow, DC Group, and MacGregor have engaged in acts, practices, and

        courses of business that constitute violations of Section 15(a) of the

        Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78o(a);

    b.    Duncan Capital has engaged in acts, practices, and courses of business that

        constitute violations of (i) Sections 15(b)(1) and 15(b)(7) of the Exchange

        Act, 15 U.S.C. §§ 78o(b)(1) and (7), and Rules 15b3-1 and 15b7-1

        thereunder, 17 C.F.R. §§ 240.15b3-1 and 15b7-1; and (ii) Section 17(a) of

        the Exchange Act, 15 U.S.C. § 78q(a), and Rule 17a-3(a)(12) thereunder,

        17 C.F.R. § 240.17a-3(a)(12);

    d.    Fuchs is liable, pursuant to Section 20(e) of the Exchange Act, 15 U.S.C.

        § 78t(e), as an aider and abettor of Crow's, DC Group's and MacGregor's

        violations of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a); of

        Duncan Capital's violations of Sections 15(b)(1) and 15(b)(7) of the

        Exchange Act, 15 U.S.C. §§ 78o(b)(1) and (7), and Rules 15b3-1 and

        15b7-1 thereunder, 17 C.F.R. §§ 240.15b3-1 and 15b7-1; and of Duncan

        Capital's violations of Section 17(a) of the Exchange Act, 15 U.S.C.

        § 78q(a), and Rule 17a-3(a)(12) thereunder, 17 C.F.R. § 240.17a-3(a)(12);

3

and

e.    Crow is liable, pursuant to Section 20(e) of the Exchange Act, 15 U.S.C.

§ 78t(e), as an aider and abettor of Duncan Capital's violations of Section

15(b)(1) of the Exchange Act, 15 U.S.C. § 78o(b)(1), and Rule 15b3-1

thereunder, 17 C.F.R. § 240.15b3-1.

## JURISDICTION AND VENUE

5.    The Commission brings this action pursuant to Sections 21(d) and 21(e) of the

Exchange Act, 15 U.S.C. §§ 78u(d) and 78u(e), seeking (i) a permanent injunction against

defendants from violating and/or aiding and abetting violations of the provisions of the federal

securities laws described above; (ii) disgorgement from defendants and relief defendants of any

ill-gotten gains and payment of prejudgment interest thereon; and (iii) payment by defendants of

civil money penalties.

6.    This Court has jurisdiction over this action pursuant to Section 27 of the

Exchange Act, 15 U.S.C. § 78aa.  Defendants, directly or indirectly, have made use of the means

and instrumentalities of interstate commerce or of the mails, or the facilities of a national

securities exchange, in connection with the acts, practices and courses of business alleged herein.

7.    Venue in this District is proper pursuant to Section 27 of the Exchange Act, 15

U.S.C. § 78aa, because acts constituting the violations of law alleged in this Complaint occurred

in this District and one or more of the defendants can be found, is an inhabitant of, or transacts

business in this District.

## RELEVANT INDIVIDUALS AND ENTITIES

### The Defendants

8.    **Michael W. Crow**, age 46, is a resident of Fairfield, Connecticut.  In 2002, Crow

founded DC Group, an unregistered entity, for which he has, at all times, served as president and

chief executive officer.  At all times, Crow controlled defendant DC Group, and, during the

Relevant Period, Crow also controlled defendant Duncan Capital.  In 1998, Crow was enjoined,

on consent, from violating the antifraud provisions of the federal securities laws and barred from

serving as an officer or director of a public company.  SEC v. Michael W. Crow, et al., CV-96-

1661 S (CGA) (S.D. Cal. Apr. 20, 1998).  In its complaint in that action, the Commission alleged

that Crow, then president and chairman of Wilshire Technologies, Inc., caused Wilshire to

overstate its revenue through various fraudulent accounting schemes, issue materially misleading

press releases, and file materially misleading reports with the Commission.  The complaint

further alleged that Crow engaged in insider trading, avoiding losses of approximately $1.2

million by trading Wilshire stock while in possession of material non-public information

concerning the accuracy of Wilshire's financial statements.  In 1998, following the entry of the

injunction against him, the Commission issued an order, on consent, denying Crow the privilege

of appearing or practicing before the Commission as an accountant.  Michael Crow, Exchange

Act Release No. 39902 (Apr. 22, 1998).

9.    On information and belief, Crow currently provides investment and other advisory

services to numerous companies, in some of which he has a substantial financial interest,

including a company whose shares are traded on the Over-the-Counter Bulletin Board.

5

10.     **Duncan Capital** is a New York limited liability company, owned by defendant Fuchs (through his wholly-owned entity, relief defendant Santal Holdings), with its principal place of business in New York, New York.  Throughout the Relevant Period and until June 13, 2005, Duncan Capital was a registered broker-dealer.  Its sole business was to assist small cap companies in raising capital through private investment in public equity ("PIPE") offerings.[1] Duncan Capital does not currently conduct any business; however, it maintains certain assets acquired during the relevant period in accounts controlled by Fuchs.

11.     **DC Group** is an unregistered entity organized under Delaware law with its principal place of business in New York, New York.  It has been wholly owned by relief defendant M.W. Crow Family LP from its inception, except from November 2003 through August 2004, when another entity held a minority interest.  At all times, DC Group has been controlled by Crow.  Its primary business was to provide financial advisory services to small cap companies, including directing Duncan Capital to raise capital for its clients through PIPE offerings.  On information and belief, DC Group currently has no operations, but maintains certain assets acquired during the relevant period in accounts controlled by Crow.

12.     **Robert David Fuchs**, age 56, is a resident of New Rochelle, New York.  During the relevant period, Fuchs was the sole owner of Duncan Capital (through his wholly-owned entity, Santal Holdings), as well as its president, registered financial and operations principal ("FINOP"), and sole registered principal.

---

[1]     A PIPE offering of securities is a form of financing typically used by securities issuers when more traditional avenues of financing are not available.  Securities in these offerings are typically issued at a significant discount from the market price.  PIPE investors receive restricted securities, which are usually accompanied by an agreement by the issuer to register the shares for resale within a specified time.

6

13.    **Robert MacGregor**, age 41, is a resident of Venice, California. From November 2003 through at least January 2005, while residing in New York, MacGregor was the most senior employee of Duncan Capital, after Fuchs. In February 2001, the National Association of Securities Dealers (NASD) barred MacGregor from association with any member firm. Accordingly, Section 15A(g)(2) of the Exchange Act, 15 U.S.C. § 78o-3(g)(2), disqualifies MacGregor from associating with a registered broker-dealer.

**The Relief Defendants**

14.    **Santal Holdings LLC** is a Delaware corporation with its principal place of business in New York, New York. Santal Holdings is, and at all relevant times was, wholly owned and controlled by Fuchs. In late 2002, Santal Holdings purchased Duncan Capital (then known by a different name) and, at all relevant times, was the owner of Duncan Capital. Santal Holdings has never had any employees.

15.    **The Crow Children's Trusts** (Crow 2001 Children's Trust FBO Michelle Lee Crow, Crow 2001 Children's Trust FBO Spencer Michael Crow, Crow 2001 Children's Trust FBO Duncan Crow, and Crow 2001 Children's Trust FBO Olivia Trevor Crow) are trusts for each of Crow's four children. They are limited partners of the M.W. Crow Family LP and have an address in Southport, Connecticut.

16.    **M.W. Crow Family LP** is a limited partnership organized under California law, with its registered business address in Encinitas, California. Crow has served as its general partner since its inception and controls the partnership. The limited partners are Crow's wife and the Crow Children's Trusts.

17.     **Trevor Crow** is a resident of Fairfield, Connecticut and is Crow's wife.  She is also a limited partner of M.W. Crow Family L.P.

## FACTUAL ALLEGATIONS

### Background – The Creation of Duncan Capital

18.     Crow organized DC Group in November 2002, for the purpose of finding investment opportunities and launching a hedge fund.  By mid-2003, Crow sought to affiliate DC Group, which was unregistered, with a registered broker-dealer.

19.     In October 2003, Crow met Fuchs, who owned Rockwood, Inc., the registered broker-dealer whose name would later be changed to Duncan Capital.

20.     Shortly thereafter, Crow and Fuchs combined the operations of their respective entities, and Crow began controlling the operations of Duncan Capital in addition to those of DC Group.

21.     Crow insisted that the name of Rockwood, Inc. be changed to Duncan Capital LLC, a name similar to Duncan Capital Group LLC, the unregistered entity that Crow controlled, and the namesake of Crow's son, Duncan Crow.

22.     Fuchs remained the nominal president of Duncan Capital.  Fuchs also served as Duncan Capital's FINOP and made all of the firm's regulatory filings with the Commission. Crow was not identified as an officer, director or control person of Duncan Capital, or in any other capacity, in any of Duncan Capital's regulatory filings.  Nor did the firm's regulatory filings disclose the 1998 court order enjoining Crow from violating the antifraud provisions of the securities laws or the 1998 Commission order denying Crow the privilege of appearing or practicing before the Commission as an accountant.

8

23.    Duncan Capital's sole business was arranging PIPE offerings by small cap public companies. Duncan Capital, as a registered broker-dealer, served as the designated placement agent for the PIPE offerings. Duncan Capital lined up investors to purchase the shares being offered and received a placement agent fee from the issuer based on the amount raised.

24.    During the Relevant Period, Duncan Capital was placement agent for approximately twenty PIPE offerings, in which it raised over $100 million for the issuers. Duncan Capital received at least $3.3 million in cash compensation, plus warrants and stock worth at least $2 million, for its services. The placement agent compensation from the PIPE transactions was Duncan Capital's only source of revenue.

**Crow Controlled Duncan Capital and Received the Vast Majority of Its Profits**

25.    During the Relevant Period, after Crow and Fuchs combined the operations of Duncan Capital and DC Group, Crow exercised control over both entities.

26.    From the beginning of 2004 until at least December 2004, Duncan Capital and DC Group shared office space, phone and fax numbers, an email system, a website, a chief financial officer, a general counsel, and other employees.

27.    During that time, Duncan Capital paid the entire rent for space used by both Duncan Capital and DC Group, all overhead expenses for both entities and the full salaries and benefits of all shared employees, as well as the salaries and benefits of employees who worked exclusively for DC Group. Duncan Capital and DC Group also maintained a single, joint website and distributed marketing material reflecting that Duncan Capital was part of DC Group.

28.    Throughout the Relevant Period, Crow actively participated in the management and business of Duncan Capital by, among other things, identifying potential PIPE issuers,

determining which transactions Duncan Capital would pursue, attending meetings with issuers, negotiating the substantive terms of the PIPE transactions, and allocating the compensation received from PIPE offerings.

29.    Throughout the Relevant Period, Crow sometimes solicited investors to purchase the shares being offered in the PIPEs or instructed Duncan Capital employees to contact potential investors about PIPE offerings. Crow sometimes acted as an intermediary between PIPE issuers and potential investors in an attempt to secure an investor's commitment to purchase shares in a PIPE.

30.    Throughout the Relevant Period, Crow personally hired key Duncan Capital employees, often without any meaningful input by Fuchs. Crow determined the compensation of key Duncan Capital employees, gave direction to Duncan Capital employees concerning broker-dealer matters, and made decisions on even relatively minor personnel matters for Duncan Capital employees, such as the use of vacation days.

31.    Throughout the Relevant Period, entities controlled by Crow received the vast majority of Duncan Capital's profits. After payment of the combined payroll and other expenses of Duncan Capital and DC Group, Fuchs, at Crow's direction, transferred the bulk of Duncan Capital's remaining funds to DC Group or M.W. Crow Family LP, both of which were controlled by Crow.

32.    On numerous occasions during the Relevant Period, Duncan Capital also paid business and personal travel and entertainment expenses for Crow.

33.    As the person who controlled Duncan Capital and its securities business, Crow received most of the profits generated by that business. Entities that Crow controlled, namely

M.W. Crow Family LP and DC Group, received approximately half of the cash fees paid to Duncan Capital by PIPE issuers and approximately half of the fees paid to Duncan Capital by PIPE issuers in the form of warrants or stock.

34.     Since salaries and overhead expenses for both Duncan Capital and DC Group were paid from the remaining half of the cash fees Duncan Capital generated, DC Group received the vast majority of Duncan Capital's profits.

35.     Between January 2004 and December 2004 alone, Duncan Capital transferred to DC Group at least $894,229, which comprised most of Duncan Capital's reported net income of $943,806 during that period.  On some occasions, Crow received additional compensation directly from the PIPE issuers.  In total, at least $1.6 million of Duncan Capital's cash compensation from PIPE offerings was transferred or paid directly to DC Group or M.W. Crow Family LP.  In addition, at least $1.3 million in warrants and $480,000 in stock payable to Duncan Capital for PIPE placement services were issued or transferred to DC Group or M.W. Crow Family LP.  Crow also received warrants worth at least $2 million ostensibly in connection with reverse mergers that were completed by the issuers in connection with related PIPE offerings.

36.     Fuchs and Crow structured the payment of Duncan Capital's placement agent compensation to conceal Crow's receipt of the compensation.  The cash portion of the placement agent fees from the PIPE offerings was generally funneled by Fuchs to DC Group through Santal Holdings.  Thus, on six occasions between April and December 2004, Fuchs directed the transfer of amounts ranging from $50,000 to $300,000 from Duncan Capital to Santal Holdings, and then promptly transferred the same amount, or nearly the same amount, from Santal Holdings to DC

Group. On occasion, the path of the placement agent fees from Duncan Capital to a Crow-controlled entity was even more circuitous.

**Duncan Capital Failed to Disclose Crow's Role**

37.    Section 15(b)(1) of the Exchange Act and Rule 15b3-1 thereunder require registered broker-dealers to file with the Commission a document called Form BD. Form BD requires broker-dealers to disclose, among other things:

    a.  the names of the firm's officers and directors;

    b.  the names of any other person who exercises control, directly or indirectly, over the firm's management or policies, through agreement or otherwise;

    c.  the names of any "control affiliates;" and

    d.  whether (i) the firm or any control affiliate has ever been enjoined for an investment-related activity; and (ii) the Commission has ever entered an order against the firm or any control affiliate in connection with an investment-related activity.

38.    In regulatory filings that Fuchs filed on behalf of Duncan Capital, he falsely represented that he alone controlled the firm, notwithstanding that Fuchs knew that Crow controlled Duncan Capital. On January 14, 2004, for example, Fuchs filed a Form BD with the Commission on behalf of Duncan Capital that did not identify Crow or DC Group as control affiliates or control persons as required. This Form BD also did not disclose Crow's disciplinary history in response to a question requiring disclosure of such information with respect to control affiliates.

39.    From March 1, 2004 through January 19, 2005, Fuchs filed six amendments to the Forms BD on behalf of Duncan Capital. None of the amendments identified Crow or provided any information about Crow.

40.    Crow knew that Duncan Capital's filings with the Commission did not identify him as being affiliated with Duncan Capital. Indeed, Crow structured Duncan Capital in order to conceal his control of the firm, which Crow knew should have been disclosed in Commission filings.

41.    As the person who controlled Duncan Capital, Crow was ultimately responsible for ensuring that Duncan Capital properly disclosed his control and the prior injunction and Commission sanction against him.

**Crow, DC Group and MacGregor Acted as Unregistered Broker-Dealers**

42.    Section 15(a)(1) of the Exchange Act requires a "broker" to be registered with the Commission or, if a natural person, to be associated with a registered broker-dealer in order "to induce or attempt to induce the purchase or sale[] of any security" while making use of the mails or any means or instrumentality of interstate commerce. Section 3(a)(4) of the Exchange Act defines a "broker" as any person, other than a bank, "engaged in the business of effecting transactions in securities for the account of others."

43.    DC Group acted as a broker without being registered with the Commission. Crow made virtually no distinction between DC Group and Duncan Capital to issuers or investors when effecting securities transactions. Furthermore, as described above, DC Group received much of the compensation for the PIPE transactions for which Duncan Capital served as the placement agent.

13

44.     Crow acted as a broker without being registered or associated with a registered broker-dealer. As set forth above, Crow actively participated in the management and activities of Duncan Capital, including soliciting investors to purchase the shares being offered in the PIPEs and acting as an intermediary between PIPE issuers and potential investors in an attempt to secure an investor's commitment to purchase shares in a PIPE offering. Crow also received most of the profits from the PIPE transactions, as set forth above.

45.     MacGregor acted as a broker without being registered or associated with a registered broker-dealer.

46.     MacGregor played a substantial role in the PIPE offerings. MacGregor was paid the highest salary at Duncan Capital (greater even than Fuchs), held the title of managing director and then senior managing director, and according to Duncan Capital's website, was the head of Duncan Capital's private placement business.

47.     MacGregor negotiated the terms of PIPE offerings with issuers and regularly solicited investors for the PIPE offerings.

48.     MacGregor's salary was paid from the fees Duncan Capital received for serving as placement agent for the PIPE deals.

49.     Fuchs was responsible for registering DC Group as a broker-dealer and ensuring that Crow and MacGregor were registered or associated with a registered broker-dealer. Fuchs failed to register DC Group, Crow and MacGregor. Fuchs knew that DC Group should have been registered as a broker-dealer and that Crow and MacGregor should have been associated with a registered broker-dealer.

14

**Duncan Capital Failed to Register Crow and MacGregor and Failed to Make and Keep Certain Employment Documentation Concerning Them**

50.    Section 15(b)(7) of the Exchange Act and Rule 15b7-1 thereunder prohibit a registered broker-dealer from "effect[ing] any transaction in, or induc[ing] the purchase or sale of, any security" unless any natural person associated with the broker-dealer who effects or is involved in effecting any such transaction is registered with or approved by any national securities exchange or national securities association of which the broker-dealer is a member.

51.    Section 17(a) of the Exchange Act and Rule 17a-3(a)(12) thereunder further require registered brokers and dealers to make and keep current a questionnaire or application for employment executed by each associated person of the broker-dealer.  Section 3(a)(18) of the Exchange Act defines the term "associated person of a broker or dealer" to include "any partner, officer, director, or branch manager of such broker or dealer (or any person occupying a similar status or performing similar functions), any person directly or indirectly controlling, controlled by, or under common control with such broker or dealer, or any employee of such broker or dealer, except … any person associated with a broker or dealer whose functions are solely clerical or ministerial."

52.    During the Relevant Period, Duncan Capital was a member of the NASD.

53.    Duncan Capital never registered Crow and MacGregor with the NASD as associated persons of Duncan Capital.  Duncan Capital also never made or kept current a questionnaire or application for employment executed by Crow and MacGregor.

54.    Fuchs's responsibilities included registering associated persons of Duncan Capital with the NASD and complying with other regulatory requirements, including making and keeping current a questionnaire or application for employment for each associated person.

55.    Fuchs, Duncan Capital's nominal president, FINOP, and only registered principal, routinely disregarded the obligation to register associated persons of Duncan Capital with the NASD.

56.    Fuchs was aware that neither Crow nor MacGregor was registered as a representative of Duncan Capital and that neither had passed the qualification examinations that were a prerequisite to his registration.

57.    Fuchs was aware that, in light of Crow and MacGregor's brokerage activities on behalf of Duncan Capital, each was required to pass certain qualification examinations and to be registered with the NASD.

58.    Fuchs also knew that Duncan Capital was required to make and keep a questionnaire or application for employment for Crow and MacGregor. Fuchs failed to do so and knew that Duncan Capital failed to do so.

**Receipt of Ill-Gotten Gains by Relief Defendants**

59.    During the Relevant Period, Crow arranged for the transfer of placement agent compensation (in the form of cash, stock and/or warrants) he had received from Duncan Capital, or directly from issuers in connection with his securities brokerage activities, to six of the seven relief defendants – specifically, Trevor Crow, M.W. Crow Family LP and the Crow Children's Trusts.

60.    These transfers were made to the relief defendants without consideration.

61.    DC Group transferred at least $190,000 in cash plus stock worth at least $205,000 to Trevor Crow.

62.     DC Group transferred stock worth at least $233,000 to each of the Crow

Children's Trusts.

63.     DC Group transferred stock worth at least $740,000 and warrants to M.W. Crow

Family LP.

64.     Fuchs caused Duncan Capital to transfer to relief defendant Santal Holdings much

of the cash compensation Duncan Capital was paid in connection with the PIPE offerings.  Fuchs

then caused Santal Holdings to transfer most of these funds to DC Group.  Fuchs also caused

Santal Holdings to transfer at least $86,000 of these funds to M.W. Crow Family LP, to pay a

portion of the funds to Fuchs, and to retain a portion of the funds.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Violations of Section 15(a) of the Exchange Act
(Against Defendants Crow, DC Group and MacGregor)**

65.     The allegations contained in paragraphs 1 through 64, above, are repeated and

realleged as if fully set forth herein.

66.     Defendants Crow, DC Group and MacGregor acted as brokers within the meaning

of Section 3(a)(4) of the Exchange Act, 15 U.S.C. § 78c(4), and made use of the mails or the

means or instrumentalities of interstate commerce to effect transactions in, or to induce or

attempt to induce the purchase or sale of, securities (other than an exempted security or

commercial paper, bankers' acceptances, or commercial bills) without being registered with the

Commission in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b), or, in

the case of Crow and MacGregor, without being associated with a registered broker-dealer as

required by Section 15(a) of the Exchange Act.

17

67.   By reason of the foregoing, defendants Crow, DC Group and MacGregor violated, and unless enjoined will continue to violate, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

### SECOND CLAIM FOR RELIEF

**Aiding and Abetting Violations of Section 15(a) of the Exchange Act
(Against Defendant Fuchs)**

68.   The allegations contained in paragraphs 1 through 67, above, are repeated and realleged as if fully set forth herein.

69.   Defendant Fuchs knowingly provided substantial assistance to the violations of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a), by defendants Crow, DC Group and MacGregor.

70.   By reason of the foregoing, defendant Fuchs aided and abetted the violation of, and unless enjoined, will continue to aid and abet the violation of, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

### THIRD CLAIM FOR RELIEF

**Violations of Sections 15(b)(1) and 15(b)(7) of the Exchange Act,
and Rules 15b3-1 and 15b7-1 Thereunder
(Against Defendant Duncan Capital)**

71.   The allegations contained in paragraphs 1 through 70, above, are repeated and realleged as if fully set forth herein.

72.   Defendant Duncan Capital failed to disclose, in any of the numerous forms the firm filed with the Commission during the Relevant Period, Crow's relationship to, or control of, Duncan Capital or the prior injunction and Commission order against Crow.

18

73.    Defendant Duncan Capital also failed to register Crow and MacGregor as representatives of Duncan Capital.

74.    By reason of the foregoing, defendant Duncan Capital violated, and unless enjoined will continue to violate, Sections 15(b)(1) and 15(b)(7) of the Exchange Act, 15 U.S.C. §§ 78o(b)(1) and (7), and Rules 15b3-1 and 15b7-1 thereunder, 17 C.F.R. §§ 240.15b3-1 and 240.15b7-1.

## FOURTH CLAIM FOR RELIEF

### Aiding and Abetting Violations of Sections 15(b)(1) and 15(b)(7) of the Exchange Act, and Rules 15b3-1 and 15b7-1 Thereunder (Defendant Fuchs)

75.    The allegations contained in paragraphs 1 through 74, above, are repeated and realleged as if fully set forth herein.

76.    Defendant Fuchs filed Forms BD with the Commission that failed to disclose Crow's control of Duncan Capital or the prior injunction and Commission order against Crow. Accordingly, Fuchs filed misleading forms with the Commission on behalf of Duncan Capital.

77.    Defendant Fuchs also failed to cause the registration of defendants Crow and MacGregor with the NASD, even though Fuchs was the president, FINOP and the sole registered principal of Duncan Capital.  Fuchs knew that Crow and MacGregor (a) were conducting securities brokerage activities on behalf of Duncan Capital, (b) were therefore required to be registered with the NASD, and (c) were not registered to do so.

78.    Defendant Fuchs thus knowingly provided substantial assistance to the violations of Sections 15(b)(1) and 15(b)(7) of the Exchange Act, 15 U.S.C. §§ 78o(b)(1) and (7), and

Rules 15b3-1 and 15b7-1 thereunder, 17 C.F.R. §§ 240.15b3-1 and 240.15b7-1, by defendant

Duncan Capital.

79.    By reason of the foregoing, defendant Fuchs aided and abetted the violation of,

and unless enjoined will continue to aid and abet the violation of, Sections 15(b)(1) and 15(b)(7)

of the Exchange Act, 15 U.S.C. §§ 78o(b)(1) and (7), and Rules 15b3-1 and 15b7-1 thereunder,

17 C.F.R. §§ 240.15b3-1 and 240.15b7-1.

## FIFTH CLAIM FOR RELIEF

### Aiding and Abetting Violations of Section 15(b)(1) of the Exchange Act
### and Rule 15b3-1 Thereunder
### (Defendant Crow)

80.    The allegations contained in paragraphs 1 through 79, above, are repeated and

realleged as if fully set forth herein.

81.    Defendant Crow controlled Duncan Capital and caused Duncan Capital to fail to

disclose Crow's control of Duncan Capital and the prior injunction and Commission order

against Crow.

82.    Defendant Crow thus knowingly provided substantial assistance to the violations

of Section 15(b)(1) of the Exchange Act, 15 U.S.C. § 78o(b)(1), and Rule 15b3-1 thereunder, 17

C.F.R. § 240.15b3-1, by defendant Duncan Capital.

83.    By reason of the foregoing, defendant Crow aided and abetted the violation of,

and unless enjoined, will continue to aid and abet the violation of, Section 15(b)(1) of the

Exchange Act, 15 U.S.C. § 78o(b)(1), and Rule 15b3-1 thereunder, 17 C.F.R. § 240.15b3-1.

## SIXTH CLAIM FOR RELIEF

### Violations of Section 17(a) of the Exchange Act and Rule 17a-3(a)(12) Thereunder
### (Against Defendant Duncan Capital)

84.     The allegations contained in paragraphs 1 through 83, above, are repeated and

realleged as if fully set forth herein.

85.     Despite the fact that defendants Crow and MacGregor were each conducting

securities brokerage business on behalf of Duncan Capital, Duncan Capital failed to make and

keep either a questionnaire or application for employment for Crow and MacGregor, as required

by Section 17(a) of the Exchange Act, 15 U.S.C. § 78q(a) and Rule 17a-3(a)(12) thereunder, 17

C.F.R. § 240.17a-3(a)(12).

86.     By reason of the foregoing, defendant Duncan Capital violated, and unless

enjoined will continue to violate, Section 17(a) of the Exchange Act, 15 U.S.C. § 78q(a), and

Rule 17a-3(a)(12) thereunder, 17 C.F.R. § 240.17a-3(a)(12).

## SEVENTH CLAIM FOR RELIEF

### Aiding and Abetting Violations of Section 17(a) of the Exchange Act
### and Rule 17a-3(a)(12) Thereunder
### (Against Defendant Fuchs)

87.     The allegations contained in paragraphs 1 through 86, above, are repeated and

realleged as if fully set forth herein.

88.     Defendant Fuchs knew that defendants Crow and MacGregor were each

conducting securities brokerage business on behalf of Duncan Capital, and defendant Fuchs

knew that Duncan Capital failed to make and keep either a questionnaire or application for

employment for Crow and MacGregor, as required by Section 17(a) of the Exchange Act, 15

U.S.C. § 78q(a), and Rule 17a-3(a)(12) thereunder, 17 C.F.R. § 240.17a-3(a)(12).  It was Fuchs's

responsibility to make and keep either a questionnaire or application for employment for Crow and MacGregor, and Fuchs failed to do so. Accordingly, defendant Fuchs knowingly provided substantial assistance to the violations of Section 17(a) of the Exchange Act, 15 U.S.C. § 78q(a), and Rule 17a-3(a)(12) thereunder, 17 C.F.R. § 240.17a-3(a)(12), by defendant Duncan Capital.

89.    By reason of the foregoing, defendant Fuchs aided and abetted the violation of, and unless enjoined will continue to aid and abet the violation of, Section 17(a) of the Exchange Act, 15 U.S.C. § 78q(a), and Rule 17a-3(a)(12) thereunder, 17 C.F.R. § 240.17a-3(a)(12), by defendant Duncan Capital.

## EIGHTH CLAIM FOR RELIEF

### Disgorgement
### (Against the Relief Defendants)

90.    The allegations contained in paragraphs 1 through 89, above, are repeated and realleged as if fully set forth herein.

91.    As set forth in paragraphs 59 through 64, the relief defendants received hundreds of thousands of dollars or more in cash, stock and/or warrants directly or indirectly from the defendants, who transferred these ill-gotten gains to relief defendants. The relief defendants do not have a legitimate claim to these ill-gotten gains.

92.    Pursuant to the Court's equitable authority to enforce the federal securities laws, the Commission is entitled to disgorgement of these ill-gotten gains from the relief defendants.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

1.    Enter a final judgment:

    a.    Permanently enjoining:

  i.  Defendant Crow from violating Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a), and from aiding and abetting violations of Section 15(b)(1) of the Exchange Act, 15 U.S.C. § 78o(b)(1), and Rule 15b3-1, 17 C.F.R. § 240.15b3-1, thereunder;

  ii.  Defendant Duncan Capital from violating Sections 15(b)(1), 15(b)(7) and 17(a) of the Exchange Act, 15 U.S.C. §§ 78o(b)(1), 78o(b)(7) and 78q(a), and Rules 15b3-1, 15b7-1 and 17a-3(a)(12), 17 C.F.R. §§ 240.15b3-1, 240.15b7-1 and 240.17a-3(a)(12), thereunder;

  iii.  Defendant DC Group from violating Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a);

  iv.  Defendant Fuchs from aiding and abetting violations of Sections 15(a), 15(b)(1), 15(b)(7) and 17(a) of the Exchange Act, 15 U.S.C. §§ 78o(a), 78o(b)(1), 78o(b)(7) and 78q(a), and Rules 15b3-1, 15b7-1 and 17a-3(a)(12), 17 C.F.R. §§ 240.15b3-1, 240.15b7-1 and 240.17a-3(a)(12), thereunder;

  v.  Defendant MacGregor from violating Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a);

 b. Ordering all the defendants to disgorge all their ill-gotten gains from the violations alleged herein, plus prejudgment interest thereon;

 c. Ordering all the relief defendants to disgorge all their ill-gotten gains from the conduct alleged herein, plus prejudgment interest thereon;

      d.      Imposing civil money penalties against all the defendants pursuant to

Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d); and

2.      Grant such other relief as the Court deems appropriate.

Dated: May 15, 2007
New York, New York

By: _____
         Mark K. Schonfeld (MS-2798)

Regional Director
ATTORNEY FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Three World Financial Center
Room 400
New York, New York 10281-1022
(212) 336-1020

Of Counsel:

Jack Kaufman
Michael Paley
Preethi Krishnamurthy