Mark Schonfeld (MS-2798)
Regional Director
Jack Kaufman (JK-3050)
Preethi Krishnamurthy (PK-2809)
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Three World Financial Center
Room 400
New York, NY 10281-1022
Telephone No. (212) 336-1020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

SECURITIES AND EXCHANGE COMMISSION,          :
                                             :
                              Plaintiff,     :       07 Civ. 3814 (CM)
                                             :       ECF CASE
              v.                             :
                                             :
MICHAEL W. CROW, DUNCAN CAPITAL LLC,         :       FIRST AMENDED
DUNCAN CAPITAL GROUP LLC, ROBERT DAVID       :       COMPLAINT
FUCHS, and ROBERT MACGREGOR,                 :
                                             :
                              Defendants,    :
                                             :
              and                            :
                                             :
TREVOR CROW, SANTAL HOLDINGS LLC,            :
M.W. CROW FAMILY LP, CROW 2001 CHILDREN'S    :
TRUST FBO MICHELLE LEE CROW, CROW 2001       :
CHILDREN'S TRUST FBO SPENCER MICHAEL CROW,   :
CROW 2001 CHILDREN'S TRUST FBO DUNCAN CROW,  :
and CROW 2001 CHILDREN'S TRUST FBO OLIVIA    :
TREVOR CROW,                                 :
                                             :
                         Relief Defendants.  :
                                             :
———————————————————————:

AUG 17 2007
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff Securities and Exchange Commission (the "Commission"), for its Complaint against defendants Michael W. Crow, Duncan Capital LLC ("Duncan Capital"), Duncan Capital Group LLC ("DC Group"), Robert David Fuchs, and Robert MacGregor (collectively, the "defendants"); and, as relief defendants, Crow 2001 Children's Trust FBO Michelle Lee Crow, Crow 2001 Children's Trust FBO Spencer Michael Crow, Crow 2001 Children's Trust FBO Duncan Crow, Crow 2001 Children's Trust FBO Olivia Trevor Crow (collectively, the "Crow Children's Trusts"), Trevor Crow, Santal Holdings LLC and M.W. Crow Family LP (collectively with the Crow Children's Trusts, the "relief defendants"), alleges as follows:

## SUMMARY OF ALLEGATIONS

1.      From November 2003 through at least December 2004 (the "Relevant Period"), defendant Crow, an individual previously enjoined by the United States District Court for the Southern District of California from future violations of the anti-fraud provisions of the federal securities laws, and previously sanctioned by the Commission, unlawfully acted as an unregistered principal of defendant Duncan Capital, a registered broker-dealer. Crow controlled virtually every significant aspect of Duncan Capital's operations and received the vast majority of its profits. Yet Duncan Capital's regulatory filings falsely and improperly omitted to state both Crow's control of the firm and his prior regulatory history.

2.      Defendant Fuchs, the owner and nominal president of defendant Duncan Capital and the person who filed the false regulatory filings on behalf of Duncan Capital, not only acquiesced in defendant Crow's undisclosed control of Duncan Capital but also facilitated it by, among other things, transferring Duncan Capital's profits to entities Crow controlled, and directly or indirectly, to the relief defendants.

2

3.    Defendant Duncan Capital also failed to register both defendants MacGregor (Duncan Capital's senior managing director in charge of private placements) and Crow with the appropriate regulatory authority, with the knowledge and substantial assistance of Crow, Fuchs, and MacGregor.

## VIOLATIONS

4.    By virtue of the conduct described herein:

  a.    Duncan Capital has engaged in acts, practices, and courses of business that constitute violations of (i) Sections 15(b)(1) and 15(b)(7) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78o(b)(1) and (7), and Rules 15b3-1 and 15b7-1 thereunder, 17 C.F.R. §§ 240.15b3-1 and 15b7-1; and (ii) Section 17(a) of the Exchange Act, 15 U.S.C. § 78q(a), and Rule 17a-3(a)(12) thereunder, 17 C.F.R. § 240.17a-3(a)(12);

  b.    DC Group has engaged in acts, practices, and courses of business that constitute violations of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a);

  c.    Fuchs is liable, pursuant to Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), as an aider and abettor of Duncan Capital's violations of Sections 15(b)(1) and 15(b)(7) of the Exchange Act, 15 U.S.C. §§ 78o(b)(1) and (7), and Rules 15b3-1 and 15b7-1 thereunder, 17 C.F.R. §§ 240.15b3-1 and 15b7-1; of Duncan Capital's violations of Section 17(a) of the Exchange Act, 15 U.S.C. § 78q(a), and Rule 17a-3(a)(12) thereunder, 17

3

C.F.R. § 240.17a-3(a)(12); and of DC Group's violations of Section 15(a)

of the Exchange Act, 15 U.S.C. § 78o(a);

d.    Crow is liable, pursuant to Section 20(e) of the Exchange Act, 15 U.S.C.

§ 78t(e), as an aider and abettor of Duncan Capital's violations of Sections

15(b)(1) and 15(b)(7) of the Exchange Act, 15 U.S.C. §§ 78o(b)(1) and

(7), and Rules 15b3-1 and 15b7-1 thereunder, 17 C.F.R. §§ 240.15b3-1

and 15b7-1; and of DC Group's violations of Section 15(a) of the

Exchange Act, 15 U.S.C. § 78o(a).

e.    MacGregor is liable, pursuant to Section 20(e) of the Exchange Act, 15

U.S.C. § 78t(e), as an aider and abettor of Duncan Capital's violations of

Section 15(b)(7) of the Exchange Act, 15 U.S.C. § 78o(b)(7), and Rule

15b7-1 thereunder, 17 C.F.R. § 240.15b7-1.

### JURISDICTION AND VENUE

5.    The Commission brings this action pursuant to Sections 21(d) and 21(e) of the

Exchange Act, 15 U.S.C. §§ 78u(d) and 78u(e), seeking (i) a permanent injunction against

defendants from violating and/or aiding and abetting violations of the provisions of the federal

securities laws identified above; (ii) disgorgement from defendants and relief defendants of any

ill-gotten gains and payment of prejudgment interest thereon; and (iii) payment by defendants of

civil money penalties.

6.    This Court has jurisdiction over this action pursuant to Section 27 of the

Exchange Act, 15 U.S.C. § 78aa. Defendants, directly or indirectly, have made use of the means

and instrumentalities of interstate commerce or of the mails, or the facilities of a national

securities exchange, in connection with the acts, practices and courses of business alleged herein.

7.    Venue in this District is proper pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because acts constituting the violations of law alleged in this Complaint occurred in this District, and one or more of the defendants can be found, is an inhabitant of, or transacts business in this District.

## RELEVANT INDIVIDUALS AND ENTITIES

### The Defendants

8.    **Michael W. Crow**, age 46, is a resident of Fairfield, Connecticut.  In 2002, Crow founded DC Group, an unregistered entity, for which he has, at all times, served as president and chief executive officer.  At all times, Crow controlled DC Group, and, during the Relevant Period, Crow also controlled Duncan Capital.  In 1998, the United States District Court for the Southern District of California entered a consent judgment against Crow that enjoined him from violating the antifraud provisions of the federal securities laws and barred him from serving as an officer or director of a public company.  SEC v. Michael W. Crow, et al., CV-96-1661 S (CGA) (S.D. Cal. Apr. 20, 1998).  In its complaint in that action, the Commission alleged that Crow, then president and chairman of Wilshire Technologies, Inc., caused Wilshire to (i) overstate its revenue through various fraudulent accounting schemes; (ii) issue materially misleading press releases; and (iii) file materially misleading reports with the Commission.  The complaint further alleged that Crow engaged in insider trading, thus avoiding losses of approximately $1.2 million, by trading Wilshire stock while in possession of material non-public information concerning the accuracy of Wilshire's financial statements.  In 1998, following the entry of the district court injunction against him, the Commission issued an order, on consent, denying Crow the privilege

5

of appearing or practicing before the Commission as an accountant. Michael Crow, Exchange
Act Release No. 39902 (Apr. 22, 1998). On information and belief, Crow currently provides
financial advisory services to numerous companies, in some of which he has a substantial
financial interest, including a company whose shares trade on the Over-the-Counter Bulletin
Board.

9.    **Duncan Capital** is a New York limited liability company, owned by defendant
Fuchs (through his wholly-owned entity, relief defendant Santal Holdings), with its principal
place of business in New York, New York. Throughout the Relevant Period and until June 13,
2005, Duncan Capital was a registered broker-dealer. Its sole business was to assist small cap
companies in raising capital through private investment in public equity ("PIPE") offerings.[1]
Duncan Capital does not currently conduct any business; however, it maintains certain assets
acquired during the Relevant Period in accounts controlled by Fuchs.

10.    **DC Group** is an unregistered entity organized under Delaware law, with its
principal place of business in New York, New York. It has been wholly owned by relief
defendant M.W. Crow Family LP from its inception, except from November 2003 through
August 2004, when another entity held a minority interest. At all times, DC Group has been
controlled by Crow. Its primary business was to provide financial advisory services to small cap
companies, including directing Duncan Capital to raise capital for its clients through PIPE
offerings. On information and belief, DC Group currently has no operations, but maintains

---

[1]    A PIPE offering of securities is a form of financing typically used by securities issuers
when more traditional avenues of financing are not available. Securities in these
offerings are typically issued at a significant discount from the market price of the
company's unrestricted stock. PIPE investors receive restricted securities, which are
usually accompanied by an agreement by the issuer to register the shares for resale within

certain assets acquired during the relevant period in accounts controlled by Crow.

11.    **Robert David Fuchs**, age 56, is a resident of New Rochelle, New York. During the relevant period, Fuchs was the sole owner of Duncan Capital (through his wholly-owned entity, Santal Holdings), as well as its president, registered financial and operations principal ("FINOP"), and sole registered principal.

12.    **Robert MacGregor**, age 41, is a resident of Venice, California. From November 2003 through at least January 2005, while residing in New York, MacGregor was the most senior employee of Duncan Capital, after Fuchs. In February 2001, the National Association of Securities Dealers ("NASD") barred MacGregor from association with any member firm, due to MacGregor's failure to respond to NASD requests for information in connection with a customer complaint against him.

**The Relief Defendants**

13.    **Santal Holdings LLC** is a Delaware corporation with its principal place of business in New York, New York. Santal Holdings is, and at all relevant times was, wholly owned and controlled by Fuchs. In late 2002, Santal Holdings purchased Duncan Capital (then known by a different name) and was the owner of Duncan Capital during the Relevant Period. Santal Holdings has never had any employees.

14.    **The Crow Children's Trusts** (Crow 2001 Children's Trust FBO Michelle Lee Crow, Crow 2001 Children's Trust FBO Spencer Michael Crow, Crow 2001 Children's Trust FBO Duncan Crow, and Crow 2001 Children's Trust FBO Olivia Trevor Crow) are trusts for each of Crow's four children. They are limited partners of the M.W. Crow Family LP and have

a specified time.

an address in Southport, Connecticut.

15.    **M.W. Crow Family LP** is a limited partnership organized under California law, with its registered business address in Encinitas, California.  Crow has served as its general partner since its inception and controls the partnership.  The limited partners are Crow's wife and the Crow Children's Trusts.

16.    **Trevor Crow** is a resident of Fairfield, Connecticut and is Crow's wife.  She is also a limited partner of M.W. Crow Family L.P.

## FACTUAL ALLEGATIONS

### Background – The Creation of Duncan Capital

17.    Crow organized DC Group in November 2002.  By mid-2003, Crow sought to affiliate DC Group, which was unregistered, with a registered broker-dealer.

18.    In October 2003, Crow met Fuchs, who owned Rockwood, Inc., the registered broker-dealer whose name would later be changed to Duncan Capital.

19.    Shortly thereafter, Crow and Fuchs combined the operations of their respective entities, and Crow began controlling the operations of Duncan Capital in addition to those of DC Group.

20.    Crow insisted that the name of Rockwood, Inc. be changed to Duncan Capital LLC, a name similar to Duncan Capital Group LLC, the unregistered entity that Crow controlled, and the namesake of Crow's son, Duncan Crow.

21.    Fuchs remained the nominal president of Duncan Capital.  Fuchs also served as Duncan Capital's FINOP and made all of the firm's regulatory filings. Duncan Capital's regulatory filings did not disclose Crow's control of Duncan Capital's management or policies,

8

or Crow's <u>de facto</u> role as an officer or director of Duncan Capital (or otherwise identify Crow). Nor did the firm's regulatory filings disclose (i) the 1998 court order enjoining Crow from violating the antifraud provisions of the securities laws and barring him from acting as an officer or director of a public company; or (ii) the 1998 Commission order denying Crow the privilege of appearing or practicing before the Commission as an accountant.

22.     Duncan Capital's sole business was arranging PIPE offerings by small cap public companies. Duncan Capital, as a registered broker-dealer, served as the designated placement agent for the PIPE offerings. Duncan Capital lined up investors to purchase the shares being offered and received a placement agent fee from the issuer based on the amount raised.

23.     During the Relevant Period, Duncan Capital was placement agent for approximately twenty PIPE offerings, in which it raised over $100 million for the issuers. Duncan Capital received at least $3.3 million in cash compensation, plus warrants and stock worth at least $2 million, for its services. The placement agent compensation from the PIPE offerings was Duncan Capital's only source of revenue.

**Crow Controlled Duncan Capital and Received the Vast Majority of Its Profits**

24.     During the Relevant Period, after Crow and Fuchs combined the operations of Duncan Capital and DC Group, Crow exercised control over both entities.

25.     From the beginning of 2004 until at least December 2004, Duncan Capital and DC Group shared office space, phone and fax numbers, an email system, a website, a chief financial officer, a general counsel, and other employees.

26.     From the beginning of 2004 until at least December 2004, Duncan Capital paid the entire rent for space used by both Duncan Capital and DC Group, all overhead expenses for

both entities and the full salaries and benefits of all shared employees, as well as the salaries and benefits of employees who worked exclusively for DC Group. Duncan Capital and DC Group also maintained a single, joint website and distributed marketing material indicating that Duncan Capital was part of DC Group.

27.     Throughout the Relevant Period, Crow actively participated in the management and business of Duncan Capital by, among other things, identifying potential PIPE issuers, determining which transactions Duncan Capital would pursue, attending meetings with issuers, negotiating the substantive terms of PIPE offerings, and allocating the compensation received from PIPE offerings.

28.     Throughout the Relevant Period, Crow sometimes solicited investors to purchase shares in the PIPE offerings or instructed Duncan Capital employees to contact potential investors about PIPE offerings. Crow sometimes acted as an intermediary between PIPE issuers and potential investors in an attempt to secure an investor's commitment to purchase shares in a PIPE offering.

29.     Throughout the Relevant Period, Crow personally hired key Duncan Capital employees, often without any meaningful input from Fuchs. Crow determined the compensation of key Duncan Capital employees, gave direction to Duncan Capital employees concerning broker-dealer matters, and made decisions on even relatively minor personnel matters for Duncan Capital employees, such as the use of vacation days.

30.     Throughout the Relevant Period, entities controlled by Crow received the vast majority of Duncan Capital's profits. After payment of the combined payroll and other expenses of Duncan Capital and DC Group, Fuchs, at Crow's direction, transferred the bulk of Duncan

10

Capital's remaining funds to DC Group or M.W. Crow Family LP, both of which were controlled by Crow.

31.     On numerous occasions during the Relevant Period, Duncan Capital also paid business and personal travel and entertainment expenses for Crow.

32.     As the person who controlled Duncan Capital and its securities business, Crow received most of the profits generated by that business. Entities that Crow controlled, namely M.W. Crow Family LP and DC Group, received approximately half of the cash fees paid to Duncan Capital by PIPE issuers and approximately half of the fees paid to Duncan Capital by PIPE issuers in the form of warrants or stock. Because salaries and overhead expenses for both Duncan Capital and DC Group were paid from the remaining half of the cash fees Duncan Capital generated, DC Group received the vast majority of Duncan Capital's profits.

33.     Between January 2004 and December 2004 alone, Duncan Capital transferred to DC Group at least $894,229, which comprised most of Duncan Capital's reported net income ($943,806) during that period. On some occasions, Crow received additional compensation directly from the PIPE issuers. In total, at least $1.6 million of Duncan Capital's cash compensation from PIPE offerings was transferred or paid directly to DC Group or M.W. Crow Family LP. In addition, at least $1.3 million in warrants and $480,000 in stock that issuers allocated to Duncan Capital for PIPE placement services were issued or transferred to DC Group or M.W. Crow Family LP. Crow also received warrants worth at least $2 million ostensibly in connection with reverse mergers that were completed by the issuers in connection with related PIPE offerings.

34.     Fuchs and Crow structured the payment of Duncan Capital's placement agent

compensation to conceal Crow's receipt of the compensation. The cash portion of the placement agent fees from the PIPE offerings was generally funneled by Fuchs to DC Group through Santal Holdings. Thus, on six occasions between April and December 2004, Fuchs directed the transfer of amounts ranging from $50,000 to $300,000 from Duncan Capital to Santal Holdings, and then promptly transferred the same amount, or nearly the same amount, from Santal Holdings to DC Group. On occasion, the path of the placement agent fees from Duncan Capital to a Crow-controlled entity was even more circuitous.

35.    Throughout the Relevant Period, Crow acted as a de facto officer of Duncan Capital, and either directly or indirectly controlled, or had the power to control, the management and policies of Duncan Capital.

**Duncan Capital Failed to Disclose Crow's Role**

36.    Section 15(b)(1) of the Exchange Act and Rule 15b3-1 thereunder require a registered broker-dealer to file with the Commission a document called Form BD. Form BD requires a broker-dealer to disclose, among other things:

      a.  the names of the broker-dealer's officers and directors "and individuals with similar status or functions";

      b.  whether or not any such officers or directors (or similarly functioning persons) are "control persons" of the broker-dealer;

      c.  the name of any other person who directly or indirectly controls the management or policies of the broker-dealer, through agreement or otherwise;

      d.  the name of "any corporation or other organization engaged in the securities or investment advisory business" that, directly or indirectly, either controls the

12

broker-dealer or is "under common control" with the broker-dealer;

e.  whether in the past ten years any "domestic court" has enjoined the firm, or any "control affiliate" of the broker-dealer, in connection with an investment-related activity; and

f.  whether the Commission has ever entered an order against the firm, or any "control affiliate" of the broker-dealer, in connection with investment-related activity.

37.  In regulatory filings that Fuchs filed on behalf of Duncan Capital, he falsely represented that he alone controlled the firm, notwithstanding that Fuchs knew that Crow controlled Duncan Capital. On January 15, 2004, for example, Fuchs filed a Form BD with the Commission on behalf of "Rockwood Inc." that failed to (i) identify Crow as a de facto officer or director of Duncan Capital; (ii) identify Crow as a person who directly or indirectly controlled the management or policies of Duncan Capital; (iii) identify DC Group as a "corporation or other organization" that, directly or indirectly, either controls Duncan Capital or is "under common control" with Duncan Capital; and (iv) disclose Crow's disciplinary history in response to questions requiring disclosure of such information with respect to "control affiliates."

38.  From March 1, 2004 through January 19, 2005, Fuchs filed six amendments to the Forms BD on behalf of Duncan Capital. None of the amendments identified Crow or provided any information regarding Crow.

39.  Crow knew that Duncan Capital's filings with the Commission did not disclose his affiliation with Duncan Capital, and knew that, because of his control of Duncan Capital, he should have been identified in those filings. Indeed, Crow intentionally used Duncan Capital as a

13

front for his and DC Group's brokerage activities.

## DC Group Acted as an Unregistered Broker-Dealer

40.    Section 15(a)(1) of the Exchange Act requires a "broker" to be registered with the Commission in order "to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security" while making use of the mails or any means or instrumentality of interstate commerce. Section 3(a)(4) of the Exchange Act defines a "broker" as any person, other than a bank, "engaged in the business of effecting transactions in securities for the account of others."

41.    DC Group acted as a broker without being registered with the Commission. Crow made virtually no distinction between DC Group and Duncan Capital to issuers or investors when effecting securities transactions. Furthermore, as described above, DC Group received much of the compensation for the PIPE offerings for which Duncan Capital served as the placement agent.

42.    As set forth in paragraphs 33-34, above, Fuchs caused large portions of Duncan Capital's placement agent fees to be transferred to DC Group, while Fuchs knew that DC Group was not, but should have been, registered as a broker-dealer.

43.    Crow knew that DC Group was "effect[ing] ... transactions in" or "induc[ing] or attempt[ing] to induce the purchase or sale of[ ] any security" while it was not registered with the Commission as a broker-dealer. As the president and chief executive officer of DC Group, Crow was responsible for registering DC Group with the Commission as a broker-dealer, yet Crow failed to do so.

14

**Duncan Capital Failed to Register Crow and MacGregor**

44.     Section 15(b)(7) of the Exchange Act and Rule 15b7-1 thereunder prohibit a registered broker-dealer from "effect[ing] any transaction in, or induc[ing] the purchase or sale of, any security" unless any natural person associated with the broker-dealer who effects or is involved in effecting any such transaction is registered with or approved by any national securities exchange or national securities association of which the broker-dealer is a member.

45.     During the Relevant Period, Duncan Capital was a member of the NASD.

46.     During the Relevant Period, Crow and MacGregor were associated with Duncan Capital.

47.     Duncan Capital never registered Crow and MacGregor with the NASD as associated persons of Duncan Capital.

48.     Fuchs's responsibilities included registering associated persons of Duncan Capital with the NASD and complying with other regulatory requirements.

49.     Fuchs was aware that neither Crow nor MacGregor was registered with the NASD as a representative of Duncan Capital, and that neither had passed the requisite qualification examinations to effect any transaction in, or induce the purchase or sale of, any security.

50.     Fuchs was aware that, in light of Crow and MacGregor's brokerage activities on behalf of Duncan Capital, each was required to pass certain qualification examinations and to be registered with the NASD.

51.     Crow and MacGregor knew that they were not registered with the NASD, and that they had not passed the requisite qualification examinations, while they were effecting or involved in effecting transactions in securities. Crow and MacGregor knew that they needed to

15

be registered with the NASD, and to pass such examinations, in order to conduct such activities.

**Duncan Capital Failed to Make and Keep Certain Employment Documentation Concerning Crow and MacGregor**

52.      Section 17(a) of the Exchange Act and Rule 17a-3(a)(12) thereunder require registered brokers and dealers to make and keep current a questionnaire or application for employment executed by each associated person of the broker-dealer.  Section 3(a)(18) of the Exchange Act defines the term "associated person of a broker or dealer" to include "any partner, officer, director, or branch manager of such broker or dealer (or any person occupying a similar status or performing similar functions), any person directly or indirectly controlling, controlled by, or under common control with such broker or dealer, or any employee of such broker or dealer, except ... any person associated with a broker or dealer whose functions are solely clerical or ministerial."

53.      Duncan Capital never made or kept current a questionnaire or application for employment executed by Crow and MacGregor.

54.      Fuchs's responsibilities included making and keeping current a questionnaire or application for employment for each associated person.

55.      Fuchs knew that Duncan Capital was required to make and keep a questionnaire or application for employment for Crow and MacGregor.  Fuchs failed to do so and knew that Duncan Capital failed to do so.

**The Relief Defendants Received Some of Defendants' Ill-Gotten Gains**

56.      During the Relevant Period, Crow arranged for the transfer of placement agent compensation (in the form of cash, stock and/or warrants) he had received from Duncan Capital, or directly from issuers in connection with his securities brokerage activities, to six of the seven

16

relief defendants – specifically, Trevor Crow, M.W. Crow Family LP and the Crow Children's Trusts. These transfers were made to the relief defendants without consideration.

57.    DC Group transferred at least $190,000 in cash plus stock worth at least $205,000 to Trevor Crow.

58.    DC Group transferred stock worth at least $233,000 to each of the Crow Children's Trusts.

59.    DC Group transferred stock worth at least $740,000 and warrants to M.W. Crow Family LP.

60.    Fuchs caused Duncan Capital to transfer to relief defendant Santal Holdings much of the cash compensation Duncan Capital was paid in connection with the PIPE offerings. Fuchs then caused Santal Holdings to transfer most of these funds to DC Group. Fuchs also caused Santal Holdings to transfer at least $86,000 of these funds to M.W. Crow Family LP, to pay a portion of the funds to Fuchs, and to retain a portion of the funds.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violations of Section 15(b)(1) of the Exchange Act and Rule 15b3-1 Thereunder
(Against Defendant Duncan Capital)**

61.    The allegations contained in paragraphs 1 through 60, above, are repeated and realleged as if fully set forth herein.

62.    Defendant Duncan Capital failed to disclose in the numerous forms the firm filed with the Commission during the Relevant Period both Crow's relationship to, and control of, Duncan Capital, and Crow's prior district court injunction and the Commission order against Crow.

17

63.    Defendant Duncan Capital also failed to disclose in the numerous forms the firm filed with the Commission during the Relevant Period Crow's common control of Duncan Capital and DC Group.

64.    By reason of the foregoing, defendant Duncan Capital violated, and unless enjoined will continue to violate, Section 15(b)(1) of the Exchange Act, 15 U.S.C. § 78o(b)(1), and Rule 15b3-1 thereunder, 17 C.F.R. § 240.15b3-1.

### SECOND CLAIM FOR RELIEF
**Aiding and Abetting Violations of Section 15(b)(1) of the Exchange Act
and Rule 15b3-1 Thereunder
(Against Defendants Crow and Fuchs)**

65.    The allegations contained in paragraphs 1 through 64, above, are repeated and realleged as if fully set forth herein.

66.    Defendant Crow controlled Duncan Capital and knew that, in various Commission filings, Duncan Capital failed to disclose Crow's control of Duncan Capital and the prior injunction and Commission order against Crow.

67.    Defendant Fuchs filed Forms BD with the Commission that failed to disclose Crow's control of Duncan Capital or the prior injunction and Commission order against Crow, as well as Crow's common control of Duncan Capital and DC Group.  Accordingly, Fuchs filed false forms with the Commission on behalf of Duncan Capital.

68.    Defendants Crow and Fuchs thus knowingly provided substantial assistance to the violations of Section 15(b)(1) of the Exchange Act, 15 U.S.C. § 78o(b)(1), and Rule 15b3-1 thereunder, 17 C.F.R. § 240.15b3-1, by defendant Duncan Capital.

69.    By reason of the foregoing and Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), defendants Crow and Fuchs aided and abetted the violation of, and unless enjoined will

18

continue to aid and abet the violation of, Section 15(b)(1) of the Exchange Act, 15 U.S.C.

§ 78o(b)(1), and Rule 15b3-1 thereunder, 17 C.F.R. § 240.15b3-1.

### THIRD CLAIM FOR RELIEF
### Violations of Section 15(b)(7) of the Exchange Act and Rule 15b7-1 Thereunder
### (Against Defendant Duncan Capital)

70.    The allegations contained in paragraphs 1 through 69, above, are repeated and

realleged as if fully set forth herein.

71.    Defendant Duncan Capital failed to register Crow and MacGregor as associated

persons of Duncan Capital, and failed to ensure that they passed the requisite qualification

examinations, while Crow and MacGregor were associated with Duncan Capital and were

effecting, or involved in effecting, transactions in securities.

72.    By reason of the foregoing, defendant Duncan Capital violated, and unless

enjoined will continue to violate, Section 15(b)(7) of the Exchange Act, 15 U.S.C. § 78o(b)(7),

and Rule 15b7-1 thereunder, 17 C.F.R. § 240.15b7-1.

### FOURTH CLAIM FOR RELIEF
### Aiding and Abetting Violations of Section 15(b)(7) of
### the Exchange Act and Rule 15b7-1 Thereunder
### (Against Defendants Crow, Fuchs, and MacGregor)

73.    The allegations contained in paragraphs 1 through 72, above, are repeated and

realleged as if fully set forth herein.

74.    Crow and MacGregor knew that they were not registered with the NASD, and that

they had not passed the requisite qualification examinations, while they were effecting or

involved in effecting transactions in securities, and knew that they needed to be registered with

the NASD, and to have passed such examinations, in order to conduct such activities.

75.    Defendant Fuchs failed to cause the registration of defendants Crow and

19

MacGregor with the NASD, and to ensure that they passed the requisite qualification examinations, even though Fuchs was the president, FINOP and the sole registered principal of Duncan Capital. Fuchs knew that Crow and MacGregor were conducting securities brokerage activities on behalf of Duncan Capital, were therefore required to be registered with the NASD and to have passed the requisite qualification examinations, and that they were not so registered, and had not passed such examinations.

76. Defendants Crow, MacGregor and Fuchs thus knowingly provided substantial assistance to the violations of Section 15(b)(7) of the Exchange Act, 15 U.S.C. § 78o(b)(7), and Rule 15b7-1 thereunder, 17 C.F.R. § 240.15b7-1, by defendant Duncan Capital.

By reason of the foregoing and Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), defendants Crow, Fuchs, and MacGregor aided and abetted the violation of, and unless enjoined will continue to aid and abet the violation of, Section 15(b)(7) of the Exchange Act, 15 U.S.C. § 78o(b)(7), and Rule 15b7-1 thereunder, 17 C.F.R. § 240.15b7-1.

### FIFTH CLAIM FOR RELIEF
### Violations of Section 15(a) of the Exchange Act
### (Against Defendant DC Group)

77. The allegations contained in paragraphs 1 through 76, above, are repeated and realleged as if fully set forth herein.

78. Defendant DC Group acted as a broker within the meaning of Section 3(a)(4) of the Exchange Act, 15 U.S.C. § 78c(a)(4), and made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, securities (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) without being registered with the Commission in

20

accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b).

79.    By reason of the foregoing, defendant DC Group violated, and unless enjoined

will continue to violate, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

**SIXTH CLAIM FOR RELIEF**
**Aiding and Abetting Violations of Section 15(a) of the Exchange Act**
**(Against Defendants Crow and Fuchs)**

80.    The allegations contained in paragraphs 1 through 79, above, are repeated and

realleged as if fully set forth herein.

81.    Defendants Crow and Fuchs knowingly provided substantial assistance to the

violations of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a), by defendant DC Group.

By reason of the foregoing and Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), defendants

Crow and Fuchs aided and abetted the violation of, and unless enjoined, will continue to aid and

abet the violation of, Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

**SEVENTH CLAIM FOR RELIEF**
**Violations of Section 17(a) of the Exchange Act and Rule 17a-3(a)(12) Thereunder**
**(Against Defendant Duncan Capital)**

82.    The allegations contained in paragraphs 1 through 81, above, are repeated and

realleged as if fully set forth herein.

83.    Despite the fact that defendants Crow and MacGregor were both "associated

persons" (as that term is used in 17 C.F.R. § 240.17a-3(a)(12)), Duncan Capital failed to make

and keep either a questionnaire or application for employment for Crow and MacGregor, as

required by Section 17(a) of the Exchange Act, 15 U.S.C. § 78q(a) and Rule 17a-3(a)(12)

thereunder, 17 C.F.R. § 240.17a-3(a)(12).

84.    By reason of the foregoing, defendant Duncan Capital violated, and unless enjoined will continue to violate, Section 17(a) of the Exchange Act, 15 U.S.C. § 78q(a), and Rule 17a-3(a)(12) thereunder, 17 C.F.R. § 240.17a-3(a)(12).

### EIGHTH CLAIM FOR RELIEF
### Aiding and Abetting Violations of Section 17(a) of the Exchange Act and Rule 17a-3(a)(12) Thereunder
### (Against Defendant Fuchs)

85.    The allegations contained in paragraphs 1 through 84, above, are repeated and realleged as if fully set forth herein.

86.    Defendant Fuchs knew that defendants Crow and MacGregor were each "associated persons" (as that term is used in 17 C.F.R. § 240.17a-3(a)(12)), and defendant Fuchs knew that Duncan Capital failed to make and keep either a questionnaire or application for employment for Crow and MacGregor, as required by Section 17(a) of the Exchange Act, 15 U.S.C. § 78q(a), and Rule 17a-3(a)(12) thereunder, 17 C.F.R. § 240.17a-3(a)(12).  It was Fuchs's responsibility to make and keep either a questionnaire or application for employment for Crow and MacGregor, and Fuchs failed to do so.  Accordingly, defendant Fuchs knowingly provided substantial assistance to the violations of Section 17(a) of the Exchange Act, 15 U.S.C. § 78q(a), and Rule 17a-3(a)(12) thereunder, 17 C.F.R. § 240.17a-3(a)(12), by defendant Duncan Capital.

87.    By reason of the foregoing and Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), defendant Fuchs aided and abetted the violation of, and unless enjoined will continue to aid and abet the violation of, Section 17(a) of the Exchange Act, 15 U.S.C. § 78q(a), and Rule 17a-3(a)(12) thereunder, 17 C.F.R. § 240.17a-3(a)(12), by defendant Duncan Capital.

## NINTH CLAIM FOR RELIEF
### Disgorgement
### (Against the Relief Defendants)

88.    The allegations contained in paragraphs 1 through 87, above, are repeated and

realleged as if fully set forth herein.

89.    As set forth in paragraphs 56 through 60, the relief defendants received hundreds

of thousands of dollars or more in cash, stock and/or warrants directly or indirectly from the

defendants, who transferred these ill-gotten gains to relief defendants.  The relief defendants do

not have a legitimate claim to these ill-gotten gains.

90.    Pursuant to the Court's equitable authority to enforce the federal securities laws,

the Commission is entitled to disgorgement of these ill-gotten gains from the relief defendants.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

1.    Enter a final judgment:

    a.    Permanently enjoining:

        i.    Defendant Crow from aiding and abetting violations of Sections

15(a), 15(b)(1), and 15(b)(7) of the Exchange Act, 15 U.S.C.

§§ 78o(a), 78o(b)(1), and 78o(b)(7), and Rules 15b3-1 and 15b7-1,

17 C.F.R. §§ 240.15b3-1 and 240.15b7-1, thereunder;

        ii.    Defendant Duncan Capital from violating Sections 15(b)(1),

15(b)(7) and 17(a) of the Exchange Act, 15 U.S.C. §§ 78o(b)(1),

78o(b)(7) and 78q(a), and Rules 15b3-1, 15b7-1 and 17a-3(a)(12),

17 C.F.R. §§ 240.15b3-1, 240.15b7-1 and 240.17a-3(a)(12),

23

thereunder;

    iii.    Defendant DC Group from violating Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a);

    iv.    Defendant Fuchs from aiding and abetting violations of Sections 15(a), 15(b)(1), 15(b)(7) and 17(a) of the Exchange Act, 15 U.S.C. §§ 78o(a), 78o(b)(1), 78o(b)(7) and 78q(a), and Rules 15b3-1, 15b7-1 and 17a-3(a)(12), 17 C.F.R. §§ 240.15b3-1, 240.15b7-1 and 240.17a-3(a)(12), thereunder; and

    v.    Defendant MacGregor from aiding and abetting violations of Section 15(b)(7) of the Exchange Act, 15 U.S.C. § 78o(b)(7), and Rule 15b7-1, 17 C.F.R. § 240.15b7-1, thereunder;

    b.    Ordering all the defendants to disgorge all their ill-gotten gains from the violations alleged herein, plus prejudgment interest thereon;

    c.    Ordering all the relief defendants to disgorge all their ill-gotten gains from the conduct alleged herein, plus prejudgment interest thereon;

    d.    Imposing civil money penalties against all the defendants pursuant to Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d); and

2.    Grant such other relief as the Court deems appropriate.

Dated:  August 17, 2007
New York, New York

Mark K. Schonfeld (MS-2798)
Regional Director
Jack Kaufman (JK-3050)
Preethi Krishnamurthy (PK-2809)
ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Three World Financial Center
Room 400
New York, New York 10281-1022
(212) 336-1020

25

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served the foregoing First Amended Complaint via FedEx overnight mail on this 17th day of August, 2007 to:

Seth Levine, Esq.
Foley & Lardner LLP
90 Park Avenue
New York, NY 10016
*Counsel for Michael W. Crow and Duncan Capital Group LLC*

Craig Warkol, Esq.
Bracewell & Giuliani LLP
1177 Avenue of the Americas
New York, NY 10036
*Counsel for Duncan Capital LLC, Robert David Fuchs,*
*Robert MacGregor, and Santal Holdings LLC*

Martin Russo, Esq.
Nixon Peabody LLP
437 Madison Avenue
New York, NY 10022
*Counsel for Trevor Crow, M.W. Crow Family LP,*
*Crow 2001 Children's Trust FBO Michelle Lee Crow,*
*Crow 2001 Children's Trust FBO Spencer Michael Crow,*
*Crow 2001 Children's Trust FBO Duncan Crow, and*
*Crow 2001 Children's Trust FBO Olivia Trevor Crow*

JACK KAUFMAN (JK-3050)
Attorney for Plaintiff
Securities and Exchange Commission
Northeast Regional Office
3 World Financial Center
New York, NY  10281-1022
Ph:  (212) 336-0106
Fax: (212) 336-1319
Email: KaufmanJa@sec.gov