UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MICHAEL W. CROW, DUNCAN CAPITAL LLC, DUNCAN CAPITAL GROUP LLC, ROBERT DAVID FUCHS, and ROBERT MACGREGOR,

    Defendants,

and

TREVOR CROW, SANTAL HOLDINGS LLC, M.W. CROW FAMILY LP, CROW 2001 CHILDREN'S TRUST FBO MICHELLE LEE CROW, CROW 2001 CHILDREN'S TRUST FBO SPENCER MICHAEL CROW, CROW 2001 CHILDREN'S TRUST FBO DUNCAN CROW, and CROW 2001 CHILDREN'S TRUST FBO OLIVIA TREVOR CROW,

    Relief Defendants.

07 Civ. 3814 (CM)
ECF Case

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MICHAEL W. CROW'S AND DUNCAN CAPITAL GROUP LLC'S <u>MOTION TO DISMISS CLAIMS FOR INJUNCTIVE RELIEF</u>**

                  Jack Kaufman (JK-3050)
                  Preethi Krishnamurthy (PK-2809)
                  Securities and Exchange Commission
                  New York Regional Office
                  3 World Financial Center
                  New York, NY  10281
                  (212) 336-1100
                  Attorneys for Securities
                    and Exchange Commission

September 24, 2007


## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................... 1

THE COMPLAINT'S FACTUAL ALLEGATIONS ................................ 2

ARGUMENT .............................................................. 6

    I.    The Court Has Subject Matter Jurisdiction ............................... 6

    II.   The Complaint Adequately Alleges a Basis for Injunctive Relief ............ 11

CONCLUSION ........................................................... 14

# TABLE OF AUTHORITIES

**Cases**

In re JP Morgan Chase Sec. Litig., 363 F.Supp.2d 595 (S.D.N.Y. 2005) .......... 13

Int'l Motor Sports Group, Inc. v. Gordon, 1999 WL 619633 (S.D.N.Y. Aug. 16, 1999) ...... 11

SEC v. Alpha Telcom, Inc., 187 F.Supp.2d 1250 (D. Ore. 2002) .......... 6 n.3

SEC v. Benson, 657 F.Supp. 1122 (S.D.N.Y. 1987) .......... 11, 12

SEC v. Broadwall Sec. Inc., 514 F.Supp. 488 (S.D.N.Y. 1981) .......... 7

SEC v. Capital Growth Co., S.A., 391 F.Supp. 593 (S.D.N.Y. 1974) .......... 7

SEC v. Cavanagh, 155 F.3d 129 (2d Cir. 1998) .......... 12

SEC v. Cavanagh, 1 F.Supp.2d 337 (S.D.N.Y. 1998) .......... 7

SEC v. Commonwealth Chem. Sec., Inc., 574 F.2d 90 (2d Cir. 1978) .......... 10, 12, 13

SEC v. Drexel Burnham Lambert Inc., 837 F.Supp. 587 (S.D.N.Y. 1993) .......... 13

SEC v. First Jersey Sec., Inc., 101 F.3d 1450 (2d Cir. 1996) .......... 6 n.3

SEC v. Friendly Power Co., LLC, 49 F.Supp.2d 1363 (S.D. Fla. 1999) .......... 6 n.3

SEC v. Jones, 476 F.Supp.2d 374 (S.D.N.Y. 2007) .......... 14

SEC v. Management Dynamics, Inc., 515 F.2d 801 (2d Cir. 1975) .......... 11, 13

SEC v. Manor Nursing Ctrs., Inc., 458 F.2d 1082 (2d Cir. 1972) .......... 11

SEC v. Martino, 255 F.Supp.2d 268 (S.D.N.Y. 2003) .......... 6 n.3

SEC v. Steadman, 967 F.2d 636 (D.C. Cir. 1992) .......... 14

SEC v. Thermodynamics, Inc., 464 F.2d 457 (10th Cir. 1972) .......... 8, 9

**Statutes**

15 U.S.C. § 77t(b) .................................................. 8, 9, n.4

15 U.S.C. § 77v ........................................................ 9 n.4

15 U.S.C. § 78aa ........................................................... 7

15 U.S.C. § 78u(d)(1) ................................................. 8, 11

15 U.S.C. § 78u(d)(3) ................................................. 10 n.6

15 U.S.C. § 78u(d)(5) ................................................. 10 n.5

**Rules**

Fed. R. Civ. P. 7(b) ..................................................... 1 n.1

Fed. R. Civ. P. 12(b)(1) .................................................. 10

Fed. R. Civ. P. 12(f) ..................................................... 11

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this memorandum of law in opposition to Defendants Michael W. Crow's and Duncan Capital Group LLC's motion to dismiss claims for injunctive relief. For the reasons set forth below, Defendants' partial motion to dismiss should be denied.

## PRELIMINARY STATEMENT

The Commission charges Defendants Michael W. Crow, a recidivist securities law violator, and Duncan Capital Group LLC (collectively, "the Crow Defendants") with violating several provisions of the broker-dealer registration and reporting requirements of the Securities Exchange Act of 1934, including failing to disclose to the Commission Crow's control of the broker-dealer at issue in this case. The Crow Defendants move to dismiss the Commission's claims for injunctive relief on the ground that the Court does not have subject matter jurisdiction over these claims. In the alternative, the Crow Defendants move to strike the Commission's request for injunctive relief under Federal Rule of Civil Procedure 12(f). The Crow Defendants' motion is contrary to settled law and wholly without merit. Defendants do not cite a single case supporting their positions, entirely misconstrue the jurisdictional and relief provisions at issue, and appear simply to have ignored well-established Second Circuit (and other) precedent. The Commission's complaint easily satisfies the applicable jurisdictional and relief pleading requirements at issue, and the Court should deny the Crow Defendants' frivolous motion.[1]

---

[1] Defendants Robert Fuchs, Robert MacGregor, Duncan Capital LLC and Santal Holdings LLC have not filed any written motion or notice of motion to dismiss the Complaint, as required by Fed. R. Civ. P. 7(b) for motions. However, their September 10, 2007 letter to the Court enclosing their answer states that they join in the Crow Defendants' motion. To the extent the Court considers the instant motion's applicability to the claims against those defendants, the Commission's arguments in this brief apply equally to those

## THE COMPLAINT'S FACTUAL ALLEGATIONS

The following are the salient factual allegations contained in the Commission's First Amended Complaint ("Complaint"). In 1998, the United States District Court for the Southern District of California entered a consent judgment against Defendant Crow that enjoined him from violating the antifraud provisions of the federal securities laws and permanently barred him from serving as an officer or director of a public company. (Compl. ¶ 8.) The complaint in that action, SEC v. Michael W. Crow, et al., CV-96-1661 S (CGA), alleged that Crow, as the then-president and chairman of a public company, caused the public company to make material financial misstatements through a fraudulent accounting scheme. (Id.) The complaint further alleged that Crow engaged in insider trading. (Id.) In 1998, following the entry of the consent judgment against him, the Commission issued a consent order denying Crow the privilege of appearing or practicing before the Commission as an accountant. (Id.)

In November 2002, Crow organized Defendant DC Group. (Id. ¶ 17.) DC Group was not a registered broker-dealer. (Id. ¶ 10.) In late 2003, Crow combined DC Group's operations with those of a registered broker-dealer owned by Defendant Fuchs, Defendant Duncan Capital LLC ("Duncan Capital"). (Id. ¶¶ 18-19.) Duncan Capital's sole business was to assist public companies with small market capitalizations to raise capital through private investment in public equity ("PIPE") securities offerings.[2] (Id.

---

defendants, and the Court should deny any such similar motion by those defendants, as well.

[2] A PIPE offering of securities is a form of financing typically used by securities issuers when more traditional avenues of financing are not available. Securities in these offerings are typically issued at a significant discount from the market price of the company's unrestricted stock. PIPE investors receive restricted securities, which are

2

¶ 9.) Duncan Capital served as the placement agent for these PIPE offerings and received placement agent fees from each issuer based on the amount of money Duncan Capital was able to raise for the issuer. (Id. ¶ 22.) Duncan Capital's placement agent fees for these securities transactions were its only source of revenue. (Id. at ¶ 23.) Fuchs was Duncan Capital's nominal president and registered financial and operations principal ("FINOP"). (Id. ¶ 11.) Fuchs was responsible for ensuring that Duncan Capital complied with its regulatory requirements. (Id. ¶ 48.)

Crow was a de facto officer and director of Duncan Capital and controlled Duncan Capital's management and policies. (Id. ¶ 35.) Crow identified potential PIPE issuers, determined which securities transactions Duncan Capital would pursue, attended meetings with issuers, negotiated the substantive terms of PIPE offerings, and allocated the compensation received from these securities offerings. (Id. ¶ 27.) Crow sometimes solicited investors to purchase shares in these securities offerings or instructed Duncan Capital employees to contact potential investors, among other things. (Id. ¶ 28.) Crow personally hired key Duncan Capital employees, determined their compensation, directed Duncan Capital employees on broker-dealer matters, and made decisions on even relatively minor personnel matters. (Id. ¶ 29.)

Crow also received most of Duncan Capital's profits from its broker-dealer activities, either directly or through entities he controlled, including DC Group and Relief Defendant M.W. Crow Family LP. (Id. ¶¶ 30, 32-33.) Crow and Fuchs structured the payment of Duncan Capital's broker-dealer compensation to conceal Crow's receipt of most of this compensation. (Id. ¶ 34.) Fuchs often funneled money from Duncan Capital

---

usually accompanied by an agreement by the issuer to register the shares for resale within a specified time. (Compl. ¶ 9 n.1.)

3

through Relief Defendant Santal Holdings and then to DC Group. (Id.) In total, Crow received more than $5.38 million of Duncan Capital's broker-dealer compensation. (Id. ¶ 33.)

Despite Crow's control of and de facto role as an officer and director of Duncan Capital, Fuchs failed to disclose Crow's name and disciplinary history in Duncan Capital's regulatory filings with the Commission, as required by Section 15(b)(1) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 15b3-1 thereunder. (Id. ¶¶ 36-37.) Crow knew that Duncan Capital's filings with the Commission did not disclose his affiliation with the entity and that he should have been identified in those filings. (Id. ¶ 39.) Crow intentionally used Duncan Capital as a front to conduct his and DC Group's brokerage activities without the required disclosures. (Id.) Therefore, Crow and Fuchs aided and abetted Duncan Capital's violations of Section 15(b)(1) of the Exchange Act and Rule 15b3-1 thereunder.

Crow and Defendant MacGregor also were not registered with the National Association of Securities Dealers as associated persons of Duncan Capital and had not passed the requisite qualification examinations to effect securities transactions. (Id. ¶¶ 47, 49-51.) Knowing this, Crow and MacGregor nevertheless effected or were involved in effecting securities transactions. (Id. ¶ 74.) Duncan Capital, which failed to register Crow and MacGregor as associated persons and failed to ensure that they had passed the requisite examinations, violated Section 15(b)(7) of the Exchange Act and Rule 15b7-1 thereunder. (Id. ¶¶ 71-72.) Crow, MacGregor and Fuchs aided and abetted Duncan Capital's violation. (Id. ¶¶ 74-76.)

In addition, DC Group acted as an unregistered broker-dealer in violation of Section 15(a) of the Exchange Act. (Id. ¶¶ 78-79.) Section 15(a)(1) of the Exchange Act requires brokers to be registered with the Commission in order to effect transactions in or induce or attempt to induce purchases of securities. (Id. ¶ 40.) DC Group acted as a broker, in part by receiving much of the broker-dealer compensation Duncan Capital received for its role as a broker in securities transactions. (Id. ¶¶ 41-42). Crow knew that DC Group was effecting transactions in or inducing or attempting to induce purchases of securities and yet failed to register DC Group as a broker-dealer with the Commission. (Id. ¶ 43.) Fuchs caused DC Group to receive large portions of Duncan Capital's brokerage fees, while knowing that DC Group should have been, but was not, registered as a broker-dealer. (Id. ¶ 42.) Crow and Fuchs therefore aided and abetted DC Group's violation of Section 15(a). (Id. ¶ 81.)

Duncan Capital and Fuchs further violated or aided and abetted violations of Section 17(a) of the Exchange Act and Rule 17a-3(a)(12) thereunder by failing to make and keep questionnaires or applications of employment for Crow and MacGregor. (Id. ¶¶ 52-55.)

Crow currently provides financial advisory services to numerous companies, including at least one public company. (Id. ¶ 8.) Neither Duncan Capital nor DC Group currently appear to have operations, although both maintain certain assets acquired during the relevant period. (Id. ¶¶ 9-10.) Crow continues to control DC Group. (Id. ¶ 10.)

Based on these allegations, the Commission's Complaint seeks from each of the defendants (1) a judgment enjoining them from violating the securities laws they have allegedly violated, (2) disgorgement of ill-gotten gains, and (3) civil money penalties. (Id.

5

¶ 5.) The Complaint also seeks disgorgement of ill-gotten gains from each of the relief defendants. (Id.)[3]

## ARGUMENT

**I.    The Court Has Subject Matter Jurisdiction.**

Section 27 of the Exchange Act grants subject matter jurisdiction to the United States district courts for all actions alleging violations of the Exchange Act and the rules and regulations promulgated thereunder:

---

[3] The Crow Defendants claim that the Commission has "overreached" by seeking disgorgement for non-fraud violations. (Crow Mem. at 3 n.1.) To the contrary, ample precedent supports such relief, and it is particularly appropriate in this case, given the necessity of deterring defendants and others from engaging in such violations in the future. Courts routinely award the Commission disgorgement for non-fraud violations of the registration requirements of the Securities Act of 1933. See, e.g., SEC v. Alpha Telcom, Inc., 187 F.Supp.2d 1250, 1262-63 (D. Ore. 2002) (ordering disgorgement where defendant profited from unregistered sale of securities); SEC v. Friendly Power Co., LLC, 49 F.Supp.2d 1363, 1372-73 (S.D. Fla. 1999) (same).

Furthermore, in SEC v. Martino, 255 F.Supp.2d 268 (S.D.N.Y. 2003), which the Crow Defendants misleadingly cite, Judge Milton Pollack awarded the Commission full disgorgement on non-fraud claims remarkably similar to those at issue here. In that case, defendant Carol Martino violated both Section 15(a) of the Exchange Act and a prior Commission bar by acting as an unregistered securities broker for transactions involving five different issuers. Id. at 272-76. Martino also committed fraud, but only concerning the stock of one of the issuers. Id. at 276-79. The court ordered Martino to disgorge her brokerage profits from all five sets of securities, including the four sets not involving fraud. Id. at 289. Furthermore, even the disgorgement awarded on the fifth set of securities was based not on the Commission's fraud claim, but rather on Martino's non-fraud violations. Id. at 275, 289 & n.23.

In any event, "the primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws." SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1474 (2d Cir. 1996). If courts were to refrain from ordering full disgorgement of ill-gotten gains for non-fraud securities violations, securities law violators like Crow would not be deterred from committing future violations. To the contrary, they could simply write off any monetary judgment as a mere cost of doing business and continue to violate the securities laws with impunity.

> The district courts of the United States ... shall have
> exclusive jurisdiction of violations of this title or the rules
> and regulations thereunder, and of all suits in equity and
> actions at law brought to enforce any liability or duty
> created by this title or the rules and regulations thereunder.

15 U.S.C. § 78aa (entitled "Jurisdiction of Offenses and Suits"). The Commission's Complaint alleges that the Crow Defendants violated, or aided and abetted violations of, the Exchange Act and certain rules thereunder and seeks injunctive and monetary relief. This Court therefore has subject matter jurisdiction over the instant Commission enforcement action.

Courts in this District have long acknowledged their subject matter jurisdiction under Section 27 of the Exchange Act in Commission enforcement actions seeking injunctive relief for Exchange Act violations. See, e.g., SEC v. Cavanagh, 1 F.Supp.2d 337, 359 (S.D.N.Y. 1998) (district court had subject matter jurisdiction over Commission enforcement action seeking injunctive relief, based in part on Exchange Act Section 27); SEC v. Broadwall Sec. Inc., 514 F.Supp. 488, 492 (S.D.N.Y. 1981) (same); SEC v. Capital Growth Co., S.A., 391 F.Supp. 593, 596 (S.D.N.Y. 1974) ("Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa) gives United States District courts subject matter jurisdiction over suits brought to enforce any liability or duty created by the Act or rules and regulations promulgated thereunder. If the Securities Exchange Act is applicable, therefore, this court has jurisdiction.").

The Crow Defendants nevertheless contend that the Commission must satisfy the requirements of Section 21(d)(1) of the Exchange Act, which sets forth the standards for the Commission to seek and receive injunctive relief, in order for subject matter jurisdiction to lie. The Crow Defendants misconstrue that Exchange Act provision.

7

Section 21(d)(1) of the Exchange Act sets forth the general standards under which the Commission may seek and receive a particular type of relief, namely permanent and temporary injunctions or restraining orders:

> Whenever it shall appear to the Commission that any person is engaged or is about to engage in acts or practices constituting a violation of any provision of this title [or] the rules or regulations thereunder ... it may in its discretion bring an action in the proper district court of the United States ... to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond.

15 U.S.C. § 78u(d)(1). The Crow Defendants erroneously contend that, to fall within the Court's subject matter jurisdiction, the Commission must allege that a defendant "is engaged or is about to engage in acts or practices constituting a violation" of the Exchange Act. (Crow Mem. at 6.) Although the Commission's Amended Complaint indeed alleges such facts (as set forth in section II below), the Crow Defendants cannot cite any authority for the proposition that the Commission must allege the requirements of Section 21(d)(1) to establish subject matter jurisdiction.

At least one Circuit court has expressly rejected a similar argument. In <u>SEC v. Thermodynamics, Inc.</u>, 464 F.2d 457, 458-59 (10th Cir. 1972), the Tenth Circuit addressed the parallel (and almost identical) provisions of the Securities Act of 1933 ("Securities Act"): Section 20(b) of the Securities Act, which mirrors Section 21(d)(1) of the Exchange Act, and Section 22(a) of the Securities Act, which mirrors Section 27 of the Exchange Act.[4] The defendant in <u>Thermodynamics</u> sought to vacate an injunction in

---

[4] Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), states in relevant part: "Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this title, or of any rule or regulation prescribed under authority thereof, the Commission may in its discretion, bring an action in any district court of the United

8

a Commission enforcement action on the ground that the district court did not have subject matter jurisdiction over the action. The defendant argued that the Commission had not satisfied a particular requirement of Section 20(b) of the Securities Act, the injunctive provision, and therefore that no subject matter jurisdiction lay for the Commission's injunctive action. The Tenth Circuit held, to the contrary, that Section 22(a) of the Securities Act – and not Section 20(b), the injunctive provision – was the jurisdictional provision that conferred subject matter jurisdiction. "[I]t would appear that Section 22(a) is intended as the jurisdictional provision in the typical form. Section 20(b), on the other hand, appears to be a provision for injunctions if a showing can be made for such relief under the usual standards." Id. at 459. The Exchange Act's parallel injunctive and jurisdictional provisions operate in precisely the same manner: Section 27 confers subject matter jurisdiction over any federal district court action alleging a violation of the Exchange Act's provisions, and Section 21(d)(1) provides the standards for injunctive relief in Commission enforcement actions.

Furthermore, the Crow Defendants' strained reading of Section 21(d)(1) would lead to absurd and unprecedented results in Commission enforcement actions. Under their reading, subject matter jurisdiction could not be resolved until the court first determined whether to grant an injunction. If the court ultimately found that an injunction was not warranted, the Court then would have to dispose of the entire case for

---

States ... to enjoin such acts or practices, and upon a proper showing, a permanent or temporary injunction or restraining order shall be granted without bond."

Section 22(a) of the Securities Act, 15 U.S.C. § 77v, entitled "Jurisdiction of Offenses and Suits," states in relevant part: "The district courts of the United States ... shall have jurisdiction of offenses and violations under this title and under the rules and regulations promulgated by the Commission in respect thereto, and ... of all suits in equity and actions at law brought to enforce any liability or duty created by this title."

lack of subject matter jurisdiction. At the same time, the court would have to deny any other ancillary equitable relief, such as disgorgement, otherwise permitted in injunctive actions.[5] Of course, courts are free to award disgorgement in Commission injunctive actions even when they deny a request for an injunction. See, e.g., SEC v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 103 n.13 (2d Cir. 1978) ("Although here disgorgement was sought as ancillary relief in an injunction action, we do not think that when a violation has been established, a failure of the SEC to show the likelihood of recurrence required to justify an injunction should relieve a defendant found to have violated the securities laws from the obligation to disgorge.").[6] Thus, the Court plainly has subject matter jurisdiction, regardless of whether the Commission has satisfied the requirements of Section 21(d)(1).

Because the Commission alleges that the Crow Defendants violated or aided and abetted violations of the Exchange Act and certain rules thereunder, this court has subject matter jurisdiction over the Commission's injunctive action. The Commission's claims for injunctive relief should not be dismissed under Fed. R. Civ. P. 12(b)(1).

---

[5] Section 21(d)(5) of the Exchange Act authorizes courts to grant ancillary equitable relief in any Commission enforcement action: "In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5).

[6] The Crow Defendants appear to concede that the Court has subject matter jurisdiction over the Commission's claims insofar as they seek civil monetary penalties. As the Crow Defendants acknowledge (Crow Mem. at 6), Section 21(d)(3) of the Exchange Act authorizes the Commission to bring an action seeking civil penalties "[w]henever it shall appear to the Commission that any person has violated any provision of this title [or] the rules or regulations thereunder." 15 U.S.C. § 78u(d)(3). The Crow Defendants do not dispute that the Commission's Complaint alleges violations of the Exchange Act and rules thereunder. (Crow Mem. at 4.)

## II.     The Complaint Adequately Alleges a Basis for Injunctive Relief.

Alternatively, pursuant to Fed. R. Civ. P. 12(f), the Crow Defendants seek to "strike" the Commission's request for injunctive relief. (Crow Mem. at 7 n.4.) Rule 12(f) permits the Court to strike a request for relief only "if such relief is not recoverable under the applicable law." International Motor Sports Group, Inc. v. Gordon, 1999 WL 619633, at *8 (S.D.N.Y. Aug. 16, 1999) (quoting 2 Moore's Federal Practice § 12.37[3], at 12-98 (Mathew Bender 3d ed. 2000)). Once again, the Crow Defendants fail to cite a single decision striking a Commission request for injunctive relief under Rule 12(f). Because the Commission is entitled to injunctive relief if it proves the allegations in the Amended Complaint, the Court should deny the Crow Defendants' motion to strike.

As noted in the preceding section, Section 21(d)(1) authorizes the Commission to seek injunctive relief "[w]henever it shall appear to the Commission that any person is engaged or is about to engage in acts or practices constituting a violation of any provision of this title [or] the rules or regulations thereunder" and authorizes the district courts to enter such injunctions "upon a proper showing." 15 U.S.C. § 78u(d)(1). According to the Second Circuit, this language does not require the Commission to prove ongoing violations to obtain an injunction, but rather that "there is a reasonable likelihood that the wrong will be repeated." SEC v. Management Dynamics, Inc., 515 F.2d 801, 807 (2d Cir. 1975) (quoting SEC v. Manor Nursing Ctrs., Inc., 458 F.2d 1082, 1100 (2d Cir. 1972)). Indeed, "the commission of past illegal conduct is highly suggestive of the likelihood of future violations." Management Dynamics, 515 F.2d at 807. As one court in this District has said, "[i]n deciding whether the 'likelihood of future violations' test

11

has been satisfied the court's focus has been as much retrospective as prospective." SEC v. Benson, 657 F.Supp. 1122, 1133 (S.D.N.Y. 1987).

The Second Circuit identifies five factors for courts to consider in determining whether to grant injunctive relief in Commission enforcement actions:

> [1] the fact that defendant has been found liable for illegal conduct; [2] the degree of scienter involved; [3] whether the infraction is an 'isolated occurrence;' [4] whether defendant continues to maintain that his past conduct was blameless; and [5] whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated.

SEC v. Commonwealth Chem. Sec., Inc., 574 F.2d 90, 100 (2d Cir. 1978) (affirming injunction against principal defendants where district judge relied on quoted factors); SEC v. Cavanagh, 155 F.3d 129, 135-36 (2d Cir. 1998) (affirming preliminary injunction based on same factors). The Commission's Complaint alleges facts more than sufficient to meet at least four of these requirements.[7]

First, the Complaint alleges that the Crow Defendants are liable for illegal conduct, based on their alleged violations of the Exchange Act and certain rules thereunder.

Second, the Complaint alleges that Crow acted with a high degree of scienter. Crow not only knew of each of the violations he aided and abetted (Compl. ¶¶ 39, 43, 51, 66, 68, 74, 76, 81), but intentionally used Duncan Capital as a front for his and DC Group's illegal brokerage activities. (Id. ¶ 39.) Furthermore, Crow's high degree of scienter is attributable to DC Group, because Crow was the president and chief executive

---

[7] The fifth factor – whether the Crow Defendants continue to maintain that their past conduct was blameless – can only be assessed at trial. Nevertheless, Crow has thus far denied that his actions violated the securities laws, in pre-litigation sworn testimony before the Commission staff.

officer of DC Group, as alleged in the Complaint (Id. ¶ 8). See In re JP Morgan Chase Sec. Litig., 363 F.Supp.2d 595, 627 (S.D.N.Y. 2005) (for purposes of pleading scienter in securities fraud action, knowledge of corporate officers was attributable to corporate entity); see also Management Dynamics, 515 F.2d at 813 (affirming anti-fraud injunction against company based on actions of company's vice president).

Third, the Complaint alleges that Crow's violations of the securities laws, far from being "isolated occurrences," were repeat violations. (Compl. ¶ 8.); Commonwealth Chem. Sec., 574 F.2d at 100; SEC v. Drexel Burnham Lambert Inc., 837 F.Supp. 587, 611 (S.D.N.Y. 1993) (enjoining defendants in part because they were "repeat offenders" who had "previously been enjoined from engaging in Rule 10b-5 violations"). Crow is a recidivist who has a history of securities law violations. (Compl. ¶ 8.) He has previously been enjoined from violating the anti-fraud provisions of the securities laws and barred from serving as an officer or director of a public company. (Id.) Yet he has continued to find new ways to violate the securities laws.

Fourth, the Complaint alleges that, because of Crow's professional occupation, he "might be in a position where future violations could be anticipated." Commonwealth Chem. Sec., 574 F.2d at 100. Crow currently provides financial advisory services to numerous companies, including at least one public company, as the Complaint alleges. (Compl. ¶ 8.) He may therefore be in a position to commit future violations of the Exchange Act's broker-dealer registration and reporting requirements. Although the Complaint also alleges that DC Group currently has no operations (id. ¶ 10), Crow continues to control DC Group (id. ¶¶ 8, 10) and could resume using it as a front for illegal brokerage activities.

The Crow Defendants cite two cases in support of their contention that the Court may grant injunctive relief solely where a defendant's violation is current or imminent (Crow Mem. at 7-8 & n.5). Neither case supports their argument. In SEC v. Steadman, 967 F.2d 636, 648 (D.C. Cir. 1992), the court vacated an injunction where defendants did not willfully violate the securities laws, had corrected the violations immediately after receiving Commission notification of them, and had relied in good faith on advice of counsel when causing the violations. In contrast, the Commission alleges that the Crow Defendants engaged in knowing and intentional violations. In SEC v. Jones, 476 F.Supp.2d 374, 384 (S.D.N.Y. 2007), in declining to grant an injunction, Judge Casey relied heavily on the fact that defendants were not "repeat offenders" and had not "engaged in a pattern of securities law violations." Crow, however, is a repeat offender, and his continuing control of DC Group makes it likely that he and DC Group will continue to violate the securities laws.

## CONCLUSION

For the foregoing reasons, the Crow Defendants' motion is wholly without merit, and the Court should deny their motion to dismiss, or to strike, the Commission's claims for injunctive relief.

Dated: New York, New York
      September 24, 2007

By: <u>/s/ Preethi Krishnamurthy</u>
Preethi Krishnamurthy (PK-2809)
Jack Kaufman (JK-3050)
Attorneys for Plaintiff
Securities and Exchange Commission
New York Regional Office
3 World Financial Center
New York, NY 10281-1022
Krishnamurthy: (212) 336-0116
Kaufman: (212) 336-0106