**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

|  |  |  |
|---|---|---|
| | : | |
| **SECURITIES AND EXCHANGE COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **07 Civ. 3814 (CM)** |
| **v.** | : | **ECF Case** |
| | : | |
| **MICHAEL W. CROW, DUNCAN CAPITAL LLC,** | : | |
| **DUNCAN CAPITAL GROUP LLC, ROBERT** | : | |
| **DAVID FUCHS, and ROBERT MACGREGOR,** | : | |
| | : | |
| **Defendants,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **TREVOR CROW, SANTAL HOLDINGS LLC,** | : | |
| **M.W. CROW FAMILY LP, CROW 2001** | : | |
| **CHILDREN'S TRUST FBO MICHELLE LEE** | : | |
| **CROW, CROW 2001 CHILDREN'S TRUST FBO** | : | |
| **SPENCER MICHAEL CROW, CROW 2001** | : | |
| **CHILDREN'S TRUST FBO DUNCAN CROW, and** | : | |
| **CROW 2001 CHILDREN'S TRUST FBO OLIVIA** | : | |
| **TREVOR CROW,** | : | |
| | : | |
| **Relief Defendants.** | : | |
| | : | |

_____

## PLAINTIFF'S STATEMENT OF ELEMENTS AND FACTS[1]

Pursuant to the Court's Individual Practice Rule 3.E.ii, plaintiff Securities and Exchange

Commission ("Commission") respectfully submits this statement of the elements of each of its

remaining claims to be tried, and the facts relied upon to establish each element, against

(1) defendants Michael Crow, Robert David Fuchs, Duncan Capital LLC, and Duncan Capital

---

[1]For a more detailed recitation of the facts and evidence in support of the Commission's claims, the Commission respectfully refers the Court to its proposed findings of fact and law, contained in the parties' proposed joint pretrial order, filed concurrently herewith.

Group LLC; and (2) relief defendants Crow 2001 Children's Trust FBO Michelle Lee Crow;

Crow 2001 Children's Trust FBO Spencer Michael Crow; Crow 2001 Children's Trust FBO

Duncan Crow; and Crow 2001 Children's Trust FBO Olivia Trevor Crow (collectively, the

"Crow Children's Trusts"); Santal Holdings LLC ("Santal"); M.W. Crow Family LP; and Trevor

Crow.[2]

## I.    Violations of Exchange Act Section 15(b)(1) and Rule 15b3-1

Section 15(b)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule

15b3-1 thereunder, require a registered broker-dealer to file with the Commission a document

called "Form BD" and amendments thereto where necessary to update the requisite information.

15 U.S.C. § 78o(b)(1); 17 C.F.R. § 240.15b3-1.

Form BD requires a broker-dealer such as Duncan Capital LLC to disclose, among other

things (a) the names of the broker-dealer's officers and directors "and individuals with similar

status or functions"; (b) whether or not any such officers or directors (or similarly functioning

persons) are "control persons" of the broker-dealer; (c) the name of any other person who

directly or indirectly controls the management or policies of the broker-dealer, through

agreement or otherwise; (d) the name of "any corporation or other organization engaged in the

securities or investment advisory business" that, directly or indirectly, either controls the broker-

dealer or is "under common control" with the broker-dealer; (e) whether in the past ten years any

"domestic court" has enjoined the firm, or any "control affiliate" of the broker-dealer, in

connection with an investment-related activity; and (f) whether the Commission has ever entered

an order against the firm, or any "control affiliate" of the broker-dealer, in connection with

---

[2]The Commission staff is in the process of recommending to the Commission that it voluntarily dismiss its claims against the following relief defendants: Crow 2001 Children's Trust FBO Michelle Lee Crow; Crow 2001 Children's Trust FBO Spencer Michael Crow; Crow 2001 Children's Trust FBO Duncan Crow; and Crow 2001 Children's Trust FBO Olivia Trevor Crow.

investment-related activity.

Thus, for its claims that defendant Duncan Capital LLC violated Exchange Act Section 15(b)(1) and Rule 15b3-1 thereunder, the Commission must establish that Duncan Capital failed to file accurately with the Commission certain requisite "Forms BD" and/or amendments thereto. 15 U.S.C. § 78o(b)(1); 17 C.F.R. § 240.15b3-1.

The trial evidence will establish that defendant Duncan Capital violated Section 15(b)(1) of the Exchange Act, and Rule 15b3-1 thereunder, by failing to disclose in the numerous Forms BD, including amendments filed on Form BD, that the firm filed with the Commission during 2004, that defendant Michael Crow (a) controlled Duncan Capital; (b) had previously been enjoined by a Federal District Court from violating certain of the federal securities laws; (c) had previously been barred by the Commission from practicing as an accountant before the Commission; and (d) exercised common control of both defendants Duncan Capital LLC and Duncan Capital Group LLC.

For its claims that defendants Crow and Robert David Fuchs aided and abetted Duncan Capital's violations of Exchange Act Section 15(b)(1) and Rule 15b3-1 thereunder, the Commission must establish, pursuant to Exchange Act Section 20(e), that Crow and Fuchs "knowingly provide[d] substantial assistance" to Duncan Capital in its violations of Sections 15(b)(1) and Rule 15b3-1.  15 U.S.C. § 78t(e).

The trial evidence will establish that defendant Fuchs knowingly provided substantial assistance to defendant Duncan Capital's violations of Section 15(b)(1) of the Exchange Act and Rule 15b3-1 thereunder by knowingly permitting Crow to control Duncan Capital LLC, and by nonetheless filing false Forms BD, including amendments filed on Form BD, with the Commission that failed to disclose Crow's control of Duncan Capital, the prior injunction and

Commission order against Crow, and Crow's common control of Duncan Capital and Duncan Capital Group.

The trial evidence will establish that defendant Crow knowingly provided substantial assistance to defendant Duncan Capital's violations of Section 15(b)(1) of the Exchange Act and Rule 15b3-1 thereunder by knowingly controlling Duncan Capital, knowing that such control was prohibited without disclosure to the Commission, and knowing that Duncan Capital's Forms BD failed to disclose Crow's control of Duncan Capital and the prior injunction and Commission order against Crow.

## II.    Violations of Exchange Act Section 15(b)(7) and Rule 15b7-1

Exchange Act Section 15(b)(7), and Rule 15b7-1 thereunder, prohibit a registered broker-dealer from "effect[ing] any transaction in, or induc[ing] the purchase or sale of, any security" unless any natural person associated with the broker-dealer who effects or is involved in effecting any such transaction is registered with or approved by any national securities exchange or national securities association of which the broker-dealer is a member.  15 U.S.C. § 78o(b)(7); 17 C.F.R. § 240.15b7-1.

Exchange Act Section 3(a)(18) defines the term "associated person of a broker or dealer" to include "any partner, officer, director, or branch manager of such broker or dealer (or any person occupying a similar status or performing similar functions), any person directly or indirectly controlling, controlled by, or under common control with such broker or dealer, or any employee of such broker or dealer, except … any person associated with a broker or dealer whose functions are solely clerical or ministerial."  15 U.S.C. § 78c(a)(18).

Thus, for its claim that defendant Duncan Capital LLC violated Exchange Act Section 15(b)(7), and Rule 15b7-1 thereunder, the Commission must establish that associated persons of

Duncan Capital were involved in effecting securities transactions while not being registered with or approved by any national securities exchange or national securities association of which Duncan Capital was a member.

The trial evidence will establish that Duncan Capital violated Exchange Act Section 15(b)(7), and Rule 15b7-1 thereunder, because from at least October 2003 through December 2004 (the "Relevant Period") (a) Duncan Capital LLC was a member of the National Association of Securities Dealers ("NASD"); (b) defendant Crow and settled defendant MacGregor were associated persons of Duncan Capital LLC; (c) defendants Crow and MacGregor were involved in effecting securities transactions; and (d) defendants Crow and MacGregor were not registered or approved by the NASD.

For its claims that defendants Crow and Fuchs aided and abetted Duncan Capital's violations of Exchange Act Section 15(b)(7), and Rule 15b7-1 thereunder, the Commission must establish, pursuant to Exchange Act Section 20(e), that Crow and Fuchs "knowingly provide[d] substantial assistance" to Duncan Capital in its violations of those provisions. 15 U.S.C. § 78t(e).

The trial evidence will establish that defendant Crow knowingly provided substantial assistance to Duncan Capital's violations of Exchange Act Section 15(b)(7) and Rule 15b7-1 thereunder, by (a) knowing that he was not registered with the NASD, and that he had not passed the requisite qualification examinations, while he was both personally acting as a securities broker on, and supervising and overseeing brokerage activities concerning, numerous securities transactions for which Duncan Capital LLC acted as securities broker during the Relevant Period; and (b) knowing that he needed to be registered with the NASD, and to have passed such examinations, in order to conduct such activities.

The trial evidence will further establish that Defendant Fuchs knowingly provided substantial assistance to Duncan Capital's violations of Exchange Act Section 15(b)(7) and Rule 15b7-1 thereunder, by failing to cause the registration of defendants Crow and MacGregor with the NASD, and to ensure that they passed the requisite qualification examinations. Fuchs knew that Crow and MacGregor were conducting securities brokerage activities on behalf of Duncan Capital, were therefore required to be registered with the NASD and to have passed the requisite qualification examinations, and that they were not so registered and had not passed such examinations.

## III.     Violations of Exchange Act Section 15(a)

Exchange Act Section 15(a)(1) requires a "broker" to be registered with the Commission in order "to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security" while making use of the mails or any means or instrumentality of interstate commerce. 15 U.S.C. § 78o(a)(1). Exchange Act Section 3(a)(4) defines a "broker" as any person, other than a bank, "engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4).

Thus, for its claim that defendant Duncan Capital Group LLC violated Exchange Act Section 15(a)(1), the Commission must establish that Duncan Capital Group LLC acted as a broker and effected securities transactions, or induced or attempted to induce the purchase or sale of securities, without being registered with the Commission.

The trial evidence will establish that, during the Relevant Period, and while not being registered with the Commission, Duncan Capital Group LLC acted as a broker on numerous securities transactions, by both directly brokering certain transactions and by combining its operations with those of the registered broker Duncan Capital LLC (and receiving substantial

brokerage commissions from securities transactions effected by Duncan Capital Group LLC and Duncan Capital LLC).

For its claims that defendants Crow and Fuchs aided and abetted Duncan Capital Group LLC's violations of Exchange Act Section 15(a)(1), the Commission must establish, pursuant to Exchange Act Section 20(e), that Crow and Fuchs "knowingly provide[d] substantial assistance" to Duncan Capital Group LLC in its violations of that provision. 15 U.S.C. § 78t(e).

The trial evidence will establish that defendant Crow knowingly provided substantial assistance to Duncan Capital Group's violations of Exchange Act Section 15(a) by knowingly permitting and directing Duncan Capital Group LLC to effect transactions in, or induce or attempt to induce the purchase or sale of, securities, while Duncan Capital Group was not registered with the Commission as a broker-dealer. As the president and chief executive officer of Duncan Capital Group LLC, Crow was responsible for registering Duncan Capital Group with the Commission as a broker-dealer, yet Crow failed to do so.

The trial evidence will establish that defendant Fuchs knowingly provided substantial assistance to Duncan Capital Group's violations of Exchange Act Section 15(a) by knowingly causing large portions of Duncan Capital's placement agent fees to be transferred to Duncan Capital Group, while Fuchs knew that Duncan Capital Group was not, but should have been, registered as a broker-dealer.

## IV.    Violations of Exchange Act Section 17(a) and Rule 17a-3(a)(12)

Exchange Act Section 17(a) and Rule 17a-3(a)(12) thereunder require registered brokers and dealers to make and keep current a questionnaire or application for employment executed by each associated person of the broker-dealer. 15 U.S.C. § 78q(a); 17 C.F.R. § 240.17a-3(a)(12).

The trial evidence will establish that Duncan Capital LLC violated Exchange Act Section

17(a) and Rule 17a-3(a)(12) thereunder by failing to make and keep either a questionnaire or application for employment for Crow and MacGregor, despite the fact that defendants Crow and MacGregor were both "associated persons" of Duncan Capital (as that term is used in 17 C.F.R. § 240.17a-3(a)(12)).

The trial evidence will further establish that defendant Fuchs knew that defendants Crow and MacGregor were each "associated persons" of Duncan Capital LLC and that Duncan Capital LLC failed to make and keep either a questionnaire or application for employment for Crow and MacGregor, as required by Exchange Act Section 17(a) and Rule 17a-3(a)(12) thereunder.  The trial evidence thus will establish that Fuchs knowingly provided substantial assistance to Duncan Capital's violations of Exchange Act Section 17(a) and Rule 17a-3(a)(12) thereunder, and that, pursuant to Exchange Act Section 20(e), Fuchs violated Exchange Act Section 17(a) and Rule 17a-3(a)(12) thereunder.

## V.    Relief

For defendants' violations of the Exchange Act Sections and Rules described above, the Commission seeks the following relief.

### A.    Disgorgement

The "primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws." SEC v. First Jersey Secs., Inc., 101 F.3d 1450, 1474 (2d Cir. 1996).  Thus, disgorgement of a defendant's ill-gotten gains is an appropriate remedy to deter both fraud and non-fraud violations of the federal securities laws.  See, e.g., id.; SEC v. Martino, 255 F.Supp.2d 268 (S.D.N.Y. 2003) (Court ordered defendant to disgorge millions of dollars in brokerage commissions obtained in violation of Exchange Act Section 15(a) and a prior Commission bar,

even in the absence of a fraud claims concerning those commissions); SEC v. Alpha Telcom,
Inc., 187 F.Supp.2d 1250, 1262-63 (D. Ore. 2002) (ordering disgorgement where defendant
profited from unregistered sale of securities); SEC v. Friendly Power Co., LLC, 49 F.Supp.2d
1363, 1372-73 (S.D. Fla. 1999) (same).  Indeed, to do otherwise would potentially leave the
Court without an effective deterrence for non-fraud violations of the federal securities laws, as
the violator could simply view other available relief (e.g., a civil money penalty) as merely a
sustainable cost of doing business illegally.

A district court has broad discretion not only in determining whether or not to order
disgorgement but also in calculating the amount to be disgorged.  First Jersey, 101 F.3d at 1474-
75.  The Commission is not required to establish with certainty the amount to be disgorged;
rather the Commission's burden is to come forward with a "reasonable approximation of profits
causally connected to the violation."  SEC v. First Jersey Secs., Inc., 890 F. Supp. 1185, 1211
(S.D.N.Y. 1995), rev'd on other grounds, 101 F.3d 1450 (2d Cir. 1996), cert. denied, 522 U.S.
812 (1997); SEC v. First City Fin. Corp., 890 F.2d 1215, 1231 (D.C. Cir. 1989).  Once the
Commission has reasonably calculated disgorgement, the burden shifts to the defendants to come
forward with evidence that the requested disgorgement is not a "reasonable approximation" of
unjust enrichment.  First City, 890 F.2d at 1232.

In addition, the Commission generally is entitled to prejudgment interest on any
disgorgement amount awarded.  The decision whether to grant prejudgment interest, and the
appropriate interest rate, are matters confided to the district court's broad discretion.  First
Jersey, 101 F.3d at 1476.  In deciding whether an award of prejudgment interest is warranted, a
court should consider (i) the need to fully compensate the wronged party for actual damages
suffered, (ii) fairness and the relative equities of the award, (iii) the remedial purpose of the

statute involved, and/or (iv) such other general principles as are deemed relevant by the court.

Id.  In an enforcement action brought by a regulatory agency, the remedial purpose of the statute

takes on special importance:

> When the SEC itself orders disgorgement, which as discussed above is designed to strip a wrongdoer of its unlawful gains, the interest rate it imposes is generally the IRS underpayment rate . . . That rate reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud.

Id. (internal citations omitted)

The trial evidence will establish that, as a result of Crow's repeated violations of

Exchange Act Sections 15(a), 15(b)(7) (and Rule 15b7-1 thereunder), and 15(b)(7) (and Rule

15b7-1 thereunder) and Duncan Capital Group's repeated violations of Section 15(a) of the

Exchange Act, described above, Crow, either directly or through Duncan Capital Group or M.W.

Crow Family LP, improperly received a total of $5,484,185 in illegal brokerage fees and

commissions.  That amount comprises $1,420,225 in cash payments; $3,211,591 in warrants to

purchase shares of stock of the securities issuers involved in the transactions at issue; $113,816

in stock received from those issuers; $725,120 in salary, benefits and overhead paid by Duncan

Capital LLC for Duncan Capital Group LLC's portion of salaries, benefits and overhead; and

$13,434 for Crow's travel expenses and the travel expenses of several Duncan Capital Group

LLC employees paid by Duncan Capital LLC.  The trial evidence thus will establish that the

Commission is entitled to an order requiring Crow and Duncan Capital Group, jointly and

severally, to pay the Commission $5,484,185 in disgorgement of those ill-gotten gains, plus

prejudgment interest on that amount.

The trial evidence will establish that, as a result of Fuchs's repeated violations of

Exchange Act Sections 15(a), 15(b)(7) (and Rule 15b7-1 thereunder), 15(b)(7) (and Rule 15b7-1

thereunder), and 17(a) (and Rule 17a-3(a)(12) thereunder) described above, Fuchs, either directly

or through Duncan Capital or relief defendant Santal Holdings LLC, improperly received a total

of $1,953,505 in illegal brokerage fees and commissions.  That amount comprises $105,771 in

illegal cash payments; $311,984 in salary; $1,404,873 in warrants to purchase shares of stock of

the issuers involved in the transactions at issue; and $130,877 in stock received from those

issuers.  Thus, the trial evidence will establish that the Commission is entitled to an order

requiring Fuchs and Duncan Capital, jointly and severally, to pay the Commission $1,953,505 in

disgorgement of those ill-gotten gains, plus prejudgment interest thereon.

The trial evidence will further establish that the Commission is entitled to an award of

disgorgement (and prejudgment interest thereon) against the relief defendants, to the extent such

defendants received any of the ill-gotten gains described in the paragraphs above, or any

additional ill-gotten gains.

"Federal courts may order equitable relief against a person who is not accused of

wrongdoing in a securities enforcement action where that person: (1) has received ill-gotten

funds; and (2) does not have a legitimate claim to those funds." SEC v. Cavanagh, 155 F.3d 129,

136 (2d Cir. 1998) (upholding freeze of proceeds of stock sale deposited into account of primary

defendant's wife where stock sold in violation of Section 5 of Securities Act); SEC v. DCI

Telecommunications, Inc., 122 F. Supp. 2d 495, 502 (S.D.N.Y. 2000) (complaint states a claim

against relief defendant where wife of primary defendant unjustly enriched through transfer to

her of assets obtained as result of primary defendant's alleged unlawful conduct because she did

not provide value for the assets and had no just claim to them).

The trial evidence will establish that relief defendant M.W. Crow Family LP (a Crow-

controlled entity) received $2,537,498 in illegal brokerage commissions.  That amount comprises

$86,729 in illegal cash payments; $2,430,965 in warrants to purchase shares of stock of the issuers involved in the securities transactions at issue; and $19,804 in stock received from one of those issuers.  Given Crow's securities law violations that resulted in M.W. Crow Family LP's receipt of those funds, and Crow's control of M.W. Crow Family LP, M.W. Crow Family LP does not have a legitimate claim to any portion of these funds.  Accordingly, the trial evidence will establish that the Commission is entitled to an order requiring relief defendant M.W. Crow Family LP to pay to the Commission $2,537,498, plus prejudgment interest thereon.

The trial evidence will further establish that relief defendant Santal Holdings LLC received $105,771 in illegal cash brokerage commissions; that Fuchs's securities law violations resulted in Santal's receipt of these funds; that Fuchs' controlled Santal, and that Santal does not have a legitimate claim to these funds.  Thus, the trial evidence will establish that the Commission is entitled to an order requiring Santal Holdings, LLC to pay to the Commission disgorgement of $105,771, plus prejudgment interest thereon.

The trial evidence will further establish that defendant Crow's wife, relief defendant Trevor Crow, received $30,000 of illegal Duncan Capital LLC brokerage commissions and has no legitimate claim to those funds.  Accordingly, the evidence will establish that the Commission is entitled to an order requiring Trevor Crow to disgorge to the Commission that $30,000, plus prejudgment interest thereon.

For the same reasons, the trial evidence will establish that relief defendants the Crow Children's Trusts should each disgorge to the Commission the proceeds from the stock they received through Crow's illegal brokerage activities (worth at least $233,000), plus pre-judgment interest thereon.

B.    **Civil Money Penalty**

The Exchange Act authorizes the Court to order civil money penalties for the violations at issue. See 15 U.S.C. § 78u(d)(3); SEC v. Palmisano, 135 F.3d 860, 865 (2d Cir. 1998). The Exchange Act provides three separate "tiers" of potential penalties, which increase depending upon the seriousness of the violation. Id. The Exchange Act further states that the amount of the penalty shall be determined by the Court "in light of the facts and circumstances." Id. For second-tier penalties, the statute provides that the amount of the penalty for a natural person shall not exceed the greater of $60,000 per violation, or the gross amount of pecuniary gain to that person. 15 U.S.C. § 78u(d)(3)(B)(ii). Second-tier penalties require a showing that the violations at issue involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement."

The trial evidence will establish that defendant Crow, a recidivist securities law violator, deliberately disregarded the Exchange Act's broker-dealer reporting and registration requirements at issue in this case. Against the advice of counsel known to Crow, Crow acted as an undisclosed principal of Duncan Capital, personally acted as an unregistered securities broker, and caused and permitted Duncan Capital Group to act as an unregistered securities broker, knowing full well that these actions were in violation of the federal securities laws and regulations. Furthermore, Crow blatantly and knowingly repeatedly violated the securities laws for over a year, solely for the purpose of his personal pecuniary gain. Thus, the trial evidence will establish that the Commission is entitled to an order requiring Crow to pay a second-tier civil money penalty for his violations of the federal securities laws.

The trial evidence will further establish that defendant Fuchs likewise deliberately disregarded the Exchange Act reporting and registration requirements at issue. For example,

Fuchs personally caused Duncan Capital to file several false Forms BD with the Commission, blatantly neglecting to list Michael Crow as a principal or controlling person of Duncan Capital, and failing to disclose Crow's regulatory history.  Furthermore, Fuchs deliberately and knowingly permitted Crow and MacGregor to act as associated persons of Duncan Capital without being registered as such.  Thus, the trial evidence will establish that the Commission is entitled to an order requiring Fuchs to pay a second-tier civil money penalty for his violations of the federal securities laws.

For the same reasons, and because Crow controlled Duncan Capital and Duncan Capital Group (and Fuchs was the nominal president of Duncan Capital), the trial evidence will establish the Commission's entitlement to an order requiring Duncan Capital and Duncan Capital Group to pay second-tier civil money penalties.

### C.    Permanent Injunctions

Exchange Act Section 21(d) entitles the Commission to permanent injunctive relief upon a showing that (1) violations of the securities laws have occurred, and (2) a reasonable likelihood exists that violations will occur in the future.  15 U.S.C. §§ 77(t)(b) & 78u(d); SEC v. Commonwealth Chem. Secs., Inc., 574 F.2d 90, 99 (2d Cir. 1978);  SEC v. Manor Nursing Ctrs., Inc., 458 F.2d 1082, 1100 (2d Cir. 1972).  To determine whether a reasonable likelihood exists that a defendant will commit future violations, courts generally consider: (i) the egregiousness of the conduct; (ii) the isolated or recurrent nature of the infraction; (iii) the degree of scienter involved; (iv) the sincerity of the defendant's assurances against future violations; and (v) the defendant's recognition of the wrongful nature of his conduct.  SEC v. Cavanagh, 155 F.3d 129, 135 (2d Cir. 1998); SEC v. Universal Major Indus. Corp., 546 F.2d 1044, 1048 (2d Cir. 1976); see also Manor Nursing, 458 F.2d at 1100-1101.

14

The trial evidence will establish that Crow is a recidivist securities laws violator who was previously enjoined by a federal District Court and sanctioned by the Commission.  The evidence will further establish that Crow's and Fuchs' instant conduct involved several repeated securities law violations that were egregious (particularly because they concealed material information from the Commission) and involved a high degree of scienter.  The evidence will also establish that Crow and Fuchs have not acknowledged any wrongdoing (or given adequate assurance against future misconduct).  Thus, the evidence will establish that the Court should impose against Crow and Fuchs permanent injunctions against future violations of the federal securities laws and regulations that they have violated.

For the same reasons, and because Crow controlled Duncan Capital and Duncan Capital Group (and Fuchs was the nominal president of Duncan Capital), the evidence will establish that the Court likewise should impose against Duncan Capital and Duncan Capital Group permanent injunctions against future violations of the federal securities laws and regulations they have violated.

<div style="margin-left:40%;">

Respectfully submitted,

Mark Schonfeld
Regional Director

s/ Preethi Krishnamurthy
Jack Kaufman (JK-3050)
Preethi Krishnamurthy (PK-2809)
Securities and Exchange Commission
New York Regional Office
3 World Financial Center
New York, NY  10281
(212) 336-1100
Attorneys for Plaintiff Securities
  and Exchange Commission

</div>

July 15, 2008

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Plaintiff's Statement of Elements and Facts by mailing a copy of same via Federal Express on this 15th day of July, 2008 to:

Adam Gilbert, Esq.
Nixon Peabody LLP
437 Madison Avenue
New York, NY 10022
*Counsel for Michael W. Crow, Duncan Capital Group LLC,*
*Trevor Crow, M.W. Crow Family LP,*
*Crow 2001 Children's Trust FBO Michelle Lee Crow,*
*Crow 2001 Children's Trust FBO Spencer Michael Crow,*
*Crow 2001 Children's Trust FBO Duncan Crow, and*
*Crow 2001 Children's Trust FBO Olivia Trevor Crow*

Martin P. Russo, Esq.
Butzel Long
380 Madison Avenue
New York, NY  10017
*Co-counsel for Michael W. Crow, Duncan Capital Group LLC,*
*Trevor Crow, M.W. Crow Family LP,*
*Crow 2001 Children's Trust FBO Michelle Lee Crow,*
*Crow 2001 Children's Trust FBO Spencer Michael Crow,*
*Crow 2001 Children's Trust FBO Duncan Crow, and*
*Crow 2001 Children's Trust FBO Olivia Trevor Crow*

Howard B. Sirota, Esq.
Attorney At Law
260 Madison Avenue
New York, NY  10016
*Counsel for Duncan Capital LLC, Robert David Fuchs,*
*and Santal Holdings LLC*

s/ Preethi Krishnamurthy
PREETHI KRISHNAMURTHY (PK-2809)
Attorney for Plaintiff
Securities and Exchange Commission
New York Regional Office
3 World Financial Center
New York, NY  10281-1022
Ph:  (212) 336-0116
Fax: (212) 336-1317
Email: krishnamurthyp@sec.gov