UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------

SECURITIES AND EXCHANGE COMMISSION,  :
                                                     :

                   Plaintiff,       :

                                                    :

       -against-           :  07 CV 3814 (CM) (MHD)

                                                  :

MICHAEL W. CROW, et al.,         :

                                                  :

                   Defendants.     :

---------------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE
## DEFENDANTS' EXPERT'S TESTIMONY

Valerie A. Szczepanik
David Stoelting
Attorneys for Plaintiff
Securities and Exchange Commission
New York Regional Office
3 World Financial Center - RM 400
New York, NY 10281-1022
(212) 336-0175 (Szczepanik)

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

    A.    The Commission's Claims .......................................................................1

    B.    Defendants' Proffered Expert Testimony is Neither Expert Nor Proper
        Testimony .............................................................................................. 2

II.  LEGAL STANDARD............................................................................................ 3

    A.    The Decision to Preclude Expert Testimony is Within the Court's
        Discretion............................................................................................3

    B.    Expert Testimony Must Be Relevant, Reliable and Helpful Under Federal
        Rule of Evidence 702 and the Daubert Line of Cases .................................. 3

III. THE PROPOSED EXPERT TESTIMONY SHOULD BE PRECLUDED........................................4

    A.    Tucker's Testimony is Inadmissible Because it is Not Helpful; It Merely
        Tells the Fact Finder What Result to Reach.................................................. 4

    B.    Tucker's Testimony That Defendants Relied on Advice of Counsel is
        Inadmissible ..............................................................................................7

    C.    Tucker's Testimony Relates to Issues the Fact Finder is Capable of
        Understanding and Deciding Without an Expert's Help ...............................8

    D.    Tucker's Testimony on Issues of Law is Inadmissible................................9

IV.  CONCLUSION............................................................................................... 11

# TABLE OF AUTHORITIES

## Cases

Andrews v. Metro N. C. R. Co., 882 F.2d 705 (2d Cir. 1089) ...........................................4

Askanase v. Fatjo, 130 F.3d 657 (5th Cir. 1997)..................................................10

Bourjaily v. United States, 483 U.S. 171, 107 S. Ct. 2775 (1987) ......................................4

Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993)...........3, 4, 5

Estate of Sowell v. U.S., 198 F.3d 169 (5th Cir. 1999) .......................................................10

Highland Capital Mgmt., L.P. v. Schneider, 379 F. Supp. 2d 461 (S.D.N.Y. 2005).......6, 8

Kidder, Peabody & Co. v. IAG Int'l Acceptance Group N.V., 14 F. Supp. 2d 391
(S.D.N.Y. 1998)...............................................................................................................7, 8

Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167 (1999)..............................4

LinkCo, Inc. v. Fujitsu Ltd., 2002 U.S. Dist. LEXIS 12975 (S.D.N.Y. July 16, 2002) ......7

Markowski v. SEC, 34 F.3d 99 (2d Cir. 1994)................................................................7, 8

Marx & Co., Inc. v. Diners' Club, Inc., 550 F.2d 505 (2d Cir. 1977) ..........................4, 10

Media Sport & Arts S.r.L. v. Kinney Shoe Corp., 1999 U.S. Dist. LEXIS 16035
(S.D.N.Y. Oct. 18, 1999) ...............................................................................................5, 6

Nook v. Long Island R.R. Co., 190 F. Supp. 2d 639 (S.D.N.Y. 2002) ...........................3, 4

Palazzeti Import/Export, Inc. v. Morson, 2001 U.S. Dist. LEXIS 9538
(S.D.N.Y. Jul. 13, 2001) ................................................................................................8, 9

Palmieri v. Defaria, 88 F.3d 136 (2d Cir. 1996) ................................................................3

Primavera Familienstiftung v. Askin, 130 F. Supp. 2d 450 (S.D.N.Y. 2001) ................6, 7

Salem v. United States Lines Co., 370 U.S. 31, 82 S. Ct. 1119 (1962)..........................3, 5

SEC v. Savoy Indus., Inc., 1981 U.S. App. LEXIS 17361 (D.C. Cir. 1981)........................7

Supply & Bldg. Co. v. Estee Lauder Int'l, Inc., 2001 U.S. Dist. LEXIS 20737
(S.D.N.Y. Dec. 14, 2001)....................................................................................................4

U.S. v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991)....................................................3, 4, 9, 10

U.S. v. Bronston, 658 F.2d 920 (2d Cir. 1981)..................................................................10

U.S. v. Castillo, 924 F.2d 1227 (2d Cir. 1991)...........................................................5, 8, 9

U.S. v. Daly, 842 F.2d 1380 (2d Cir. 1988)........................................................................3

U.S. v. DiDomenico, 985 F.2d 1159 (2d Cir. 1993)...........................................................3

U.S. v. Scop, 846 F.2d 135, modified, 856 F.2d 5 (2d Cir. 1988)............................4, 9, 10

## Rules

Fed. R. Evid. 104(a)...........................................................................................................4

Fed. R. Evid. 702 ............................................................................................................3, 4

## I.    INTRODUCTION

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") hereby files this memorandum in support of its motion in limine that this Court enter an order precluding testimony by J. Richard Tucker ("Tucker"), an expert proposed by defendants Michael W. Crow and Duncan Capital Group LLC (the "Crow Defendants").[1]  This case will be tried by bench trial, currently scheduled to begin October 14, 2008.

### A.    The Commission's Claims

In this proceeding to enforce the federal securities laws, the Commission alleges that defendants Michael W. Crow ("Crow"), Duncan Capital LLC ("Duncan Capital"), Duncan Capital Group LLC ("Duncan Capital Group") and Robert David Fuchs ("Fuchs") violated several provisions of the broker-dealer registration and reporting requirements of the Securities Exchange Act of 1934.[2]  The Commission alleges that, from the fall of 2003 through at least December 2004 (the "Relevant Period"), Crow – who was previously enjoined by a Federal District Court and sanctioned by the Commission – unlawfully acted as an unregistered principal of Duncan Capital, a registered broker-dealer.  The Commission alleges that Crow exercised <u>de facto</u> control over Duncan Capital's operations and received the vast majority of its profits.  The Commission further alleges that Duncan Capital's regulatory filings with the Commission

---

[1] The present motion is filed six days after the date of the Court's order denying the Commission's request for a continuance of the trial date.  (See Dkt. # 66.)  Under the Court's Individual Practices, this motion is one day late.  The delay was due to the assignment of new counsel for the Commission, following the Court's denial of the continuance.  Approximately two months remain before the scheduled Pre Trial Conference; therefore, the Commission does not believe any prejudice will result from the late filing of this motion.  Plaintiff respectfully requests that the Court consider the instant motion.

[2] A more detailed statement of the Commission's case is found in the parties' Joint Proposed Pre-Trial Order, filed July 15, 2008.  (Dkt. # 63.)

falsely omitted to state both Crow's control of the firm and his prior regulatory history.

The Commission further alleges that Fuchs – Duncan Capital's owner and nominal president – made the false regulatory filings on behalf of Duncan Capital, and that Fuchs further acquiesced in and facilitated defendant Crow's undisclosed control of Duncan Capital by, among other things, transferring Duncan Capital's profits to entities Crow controlled (including defendant Duncan Capital Group, an unregistered Crow-controlled entity), and to the relief defendants.

The Commission alleges that defendant Duncan Capital failed to register both Robert MacGregor (Duncan Capital's senior managing director in charge of private placements) and Crow with the appropriate regulatory authority, with the knowledge and substantial assistance of Crow and Fuchs.

### B.    Defendants' Proffered Expert Testimony is Neither Expert Nor Proper Testimony

To be admissible, an expert's opinion must be relevant, reliable and helpful to the fact finder.  Tucker's proposed testimony is none of these.  Rather, it mostly consists of testimony by an attorney on what he believes the law is and how to apply that law to the facts of this case.  Such testimony does not assist the Court, as fact finder, and impermissibly encroaches upon the Court's duty to interpret the law and to apply the law to the facts in this case.  The Crow Defendants' designation of Tucker as an expert is an attempt to usurp the function of the Court and to replace it with fact-finding and decision-making by a purported expert.  In addition, the allegations set out in the Complaint involve matters that the Court is fully capable of understanding without any expert assistance.  Therefore, and for the following reasons, Plaintiff respectfully requests that the Court preclude the proposed expert testimony.

## II.  LEGAL STANDARD

### A.    The Decision to Preclude Expert Testimony is Within the Court's Discretion

The purpose of an in limine motion is to aid the trial process by enabling the

Court to rule in advance of trial on admissibility of certain forecasted evidence without

lengthy argument at, or interruption of, the trial. Palmieri v. Defaria, 88 F.3d 136, 141

(2d Cir. 1996) (citation omitted). The decision whether to admit or exclude expert

testimony rests within the broad discretion of the trial judge, and will not be disturbed

unless clearly wrong. U.S. v. Bilzerian, 926 F.2d 1285, 1295 (2d Cir. 1991) (citing

Salem v. United States Lines, 370 U.S. 31, 35, 82 S. Ct. 1119, 1122 (1962); U.S. v. Daly,

842 F.2d 1380, 1387 (2d Cir. 1988)). The testimony of a qualified expert is admitted

only when it "will assist the trier of fact to understand the evidence or to determine a fact

in issue." Fed. R. Evid. 702. In making a Rule 702 determination, a district court must

be guided by the principle that:

> there is no more certain test for determining when experts may be used than the
> common sense inquiry whether the untrained laymen would be qualified to
> determine intelligently and to the best possible degree the particular issue without
> enlightenment from those having a specialized understanding of the subject
> involved in the dispute.

U.S. v. DiDomenico, 985 F.2d 1159, 1169 (2d Cir. 1993) (citing Advisory Committee

Note to Fed. R. Evid. 702).

### B.    Expert Testimony Must Be Relevant, Reliable and Helpful Under Federal Rule of Evidence 702 and the Daubert Line of Cases

"[U]nder the Rules the trial judge must ensure that any and all [expert] testimony

or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharms.,

Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 2795 (1993); Nook v. Long Island R.R. Co.,

190 F. Supp. 2d 639, 641 (S.D.N.Y. 2002); Supply & Bldg. Co. v. Estee Lauder Int'l,

Inc., 2001 U.S. Dist. LEXIS 20737, *11 (S.D.N.Y. Dec. 14, 2001). See also Kumho Tire

Co. v. Carmichael, 526 U.S. 137, 141, 119 S. Ct. 1167, 1171 (1999) ("[T]he trial judge's

general 'gatekeeping' obligation [established by Daubert] applies not only to testimony

based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other

specialized' knowledge.") Rule 702 further requires that the evidence or testimony be

"sufficiently tied to the facts of the case that it will aid the [fact finder] in resolving a

factual dispute." Daubert, 509 U.S. at 591, 113 S. Ct. at 2796 (citation omitted). Expert

testimony should be excluded when it is directed to matters which the fact finder is

capable of understanding and deciding without the expert's help. Andrews v. Metro N.

C. R. Co., 882 F.2d 705, 708 (2d Cir. 1989).

The admissibility of expert testimony is further governed by the principles of

Federal Rule of Evidence 104(a); the preliminary questions concerning the admissibility

of expert testimony are determined by the court. Daubert, 509 U.S. at 592 n.10, 113 S.

Ct. at 2796 n. 10. The proponent of the testimony has the burden of establishing that the

pertinent admissibility requirements are met by a preponderance of the evidence.

Bourjaily v. United States, 483 U.S. 171, 175-76, 107 S. Ct. 2775, 2778 (1987).

## III.    THE PROPOSED EXPERT TESTIMONY SHOULD BE PRECLUDED

### A.    Tucker's Testimony is Inadmissible Because it is Not Helpful; It Merely Tells the Fact Finder What Result to Reach

The use of expert testimony "must be carefully circumscribed to assure that the

expert does not usurp either the role of the trial judge" in interpreting the applicable law

or the fact finder in applying that law to the facts before it. Bilzerian, 926 F.2d at 1294

(citing U.S. v. Scop, 846 F.2d 135, 139-40, modified, 856 F.2d 5 (2d Cir. 1988); Marx &

Co., Inc. v. Diners' Club, Inc., 550 F.2d 505, 510-11 (2d Cir. 1977)). Expert testimony is properly excludable where all the primary facts can be accurately and intelligibly described to the fact finder, and where the fact finder is as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses of special training. U.S. v. Castillo, 924 F.2d 1227, 1232 (2d Cir. 1991) (quoting Salem, 370 U.S. at 35, 82 S. Ct. at 1122).

The Crow Defendants have proffered the testimony of Tucker, whose experience includes his employment as partner at the Delaware law firm of Maron Marvel Bradley & Anderson, P.A., and as lawyer with the Commission. (Expert Disclosure of J. Richard Tucker in Accordance with FRCP 26(a)(2) (attached hereto as "Exhibit A") at 1-2.) Tucker's proposed testimony is that the Crow Defendants' conduct "was not inconsistent with the regulatory framework ... [and was not] violative of the securities laws." (Id. at 4.) Tucker also posits that Crow "sought experienced broker-dealer counsel's advice and relied upon such advice." (Id. at 4-5.) Tucker further opines that Crow did not control the activities of the broker-dealer, and that neither Crow Defendant "engaged in activity that would require registration as either a general securities representative or as a broker-dealer." (Id. at 6-7.)

As the bases for his opinions, Tucker purports to have relied upon the pleadings, various documents, and the transcripts and exhibits of the witnesses testimony in this case. (Ex. A at 4.) Essentially, the Crow Defendants seek to substitute expert testimony for the fact finder's examination of the evidence in this case. However, where an expert's testimony "is not based on personal knowledge, but instead on [a] review of documents and depositions produced by the parties," the expert's testimony may not take

5

the place of that of the individuals who actually were involved in the underlying conduct.
Media Sport & Arts S.r.L. v. Kinney Shoe Corp., 1999 U.S. Dist. LEXIS 16035, *10
(S.D.N.Y. Oct. 18, 1999). "[A]n expert cannot be presented to the [fact finder] solely for
the purpose of constructing a factual narrative based upon record evidence." Highland
Capital Mgmt., L.P. v. Schneider, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) (citing
cases).

For example, Tucker offers such testimony as: "Crow realized that registration is
required for operating in the broker-dealer business and wanted to take precautions to
avoid violative conduct" and "Crow understood that the broker-dealer had hired
regulatory counsel to restructure the entity and a reputable compliance firm comprised of
former regulators to review, among other things, the operation of the broker-dealer."
(Ex. A at 4-5.) These opinions are not based on Tucker's personal knowledge; rather,
they are based on his review of documents. These opinions involve subjective, even
speculative, determinations about evidence and, more important, credibility
determinations concerning, among other things, Defendant Crow's state of mind.[3] Aside
from the obviously inappropriate incursion into the Court's fact-finding realm, there is no
basis to conclude that the Court, after examining the evidence at trial, would not be
competent to determine these issues without the aid of an expert.

In fact, Tucker's entire report illustrates the Crow Defendants' attempt to usurp
the fact-finder's role with expert testimony. Tucker's analysis is sheer speculation and
consists entirely of inferences Tucker has himself drawn from the evidence he has
examined. To allow Defendants to substitute their expert's opinion testimony for the

---

[3] Tucker admitted that he made credibility assessments with respect to the testimony,
although he also conceded that "experts aren't supposed to try the facts." (Deposition of
Expert Witness Robert J. Tucker (Attached as Exhibit B) at 205-06.)

Court's fact-finding in this manner is completely inappropriate. See Primavera

Familienstiftung v. Askin, 130 F. Supp. 2d 450, 529 (S.D.N.Y. 2001) (no expert may

"supplant the role of counsel in making argument at trial, and the role of the jury

interpreting the evidence"); LinkCo, Inc. v. Fujitsu Ltd., 2002 U.S. Dist. LEXIS 12975, at

*1-2 (S.D.N.Y. Jul. 16, 2002) (where expert's report was based on a review of

"documents, computer files, deposition transcripts and exhibits," the testimony by fact

witnesses familiar with those documents would be "far more appropriate . . . and renders

[the expert witness'] secondhand knowledge unnecessary for the edification of the jury.")

(citation omitted). Tucker's analysis does no more than defense counsel will do in

argument, that is, propose a particular interpretation of the evidence. This is an

inappropriate basis for expert testimony.

> **B.    Tucker's Testimony That Defendants Relied on Advice of Counsel is Inadmissible**

Tucker also offers improper opinion testimony about whether the Crow

Defendants relied upon the advice of counsel.[4]  (Ex. A at 5.) Tucker's testimony that

Defendants relied on such advice is entirely inadmissible. The case Kidder, Peabody &

Co. v. IAG Int'l Acceptance Group N.V., 14 F. Supp. 2d 391 (S.D.N.Y. 1998), is on

point. In Kidder, the core issue was whether, in a case for malicious prosecution, one

party reasonably relied upon the advice of outside counsel in suing the other party,

thereby negating an inference of malice. Kidder, 14 F. Supp. 2d at 392, 402. The court

held that expert testimony on this issue must be precluded. Id. at 404. The court stated,

"the case will turn upon the reasonableness of [the party's] conduct and its then-existing

---

[4] Plaintiff notes that good faith reliance on the advice of professionals is not a defense to securities law violations, but only one factor for consideration in determining the propriety of injunctive relief. Markowski v. SEC, 34 F.3d 99, 105 (2d Cir. 1994); SEC v. Savoy Indus., Inc., 1981 U.S. App. LEXIS 17361, at *11 n.28 (D.C. Cir. 1981).

state of mind; and these are the sort of questions that lay jurors have been answering without expert assistance from time immemorial." Id.

Defendants themselves may testify as to the disclosures they made to advisers, the advice they received and their reliance upon it. See Markowski v. SEC, 34 F.3d 99, 105 (2d Cir. 1994) (to invoke the principle of reliance upon counsel, a defendant must show that he "made complete disclosure to counsel, sought advice as to the legality of his conduct, received advice that his conduct was legal, and relied on that advice in good faith."). Defendants' advisers, in turn, may testify as to any disclosures made to them and what advice, if any, they gave. The questions whether Defendants made full disclosure, received advice and acted in good faith are for the fact finder to decide. As the Kidder court held, "the jury is not assisted by expert opinion testimony about the reasonableness of the advice or the client's reaction to it." Id. at 403; see also Highland Capital, 379 F. Supp. 2d at 469 (expert's speculation regarding state of mind and motivations of certain parties is inadmissible).

### C.    Tucker's Testimony Relates to Issues the Fact Finder is Capable of Understanding and Deciding Without an Expert's Help

Each of the proposed areas of Tucker's testimony can be accurately and intelligibly described to the Court who, as fact finder, will be capable of comprehending them. If expert testimony is directed solely to "lay matters which a jury is capable of understanding and deciding without the expert's help, the testimony is properly excludable." Castillo, 924 F.2d at 1232 (quotation omitted). In Palazzeti Import/Export, Inc. v. Morson, 2001 U.S. Dist. LEXIS 9538 (S.D.N.Y. Jul. 13, 2001), defendants attempted to use an expert to testify to the general elements of a franchise agreement. 2001 U.S. Dist. LEXIS 9538, at *8. The court held that the expert must be excluded

8

because the subject did not require knowledge beyond the ken of the average juror:

> There is nothing particularly esoteric about any of these elements and, therefore, nothing that leads me to believe that the jurors would be assisted (rather than improperly swayed) by the testimony of the expert.

Id.

Similarly, the issues involved in this case are not scientific or technical matters that a fact finder would need assistance in understanding. The Court will hardly need an expert to testify as to, for example, whether Crow controlled the broker-dealer. (Ex. A at 5).[5] This concept is not esoteric and is certainly well within the reach of the Court's common sense, particularly given that the people actually involved in the conduct at issue in this case will testify about it. See Castillo, 924 F.2d at 1233. The Court will have the opportunity to evaluate the credibility of those witnesses, including defendant Crow, and make factual determinations relating to the allegations set out in the Complaint – in other words, to do what a fact finder is supposed to do. Tucker's testimony would attempt to usurp that function by offering his own fact-finding, couched in the form of expert opinion.

### D.    Tucker's Testimony on Issues of Law is Inadmissible

Tucker's proposed testimony that the Crow Defendants' conduct "was not inconsistent with the regulatory framework" and "was [not] violative of the securities laws" (Ex. A at 3) amounts to opinion about legal issues within the exclusive purview of the Court. A virtually unbroken line of cases holds that expert witnesses in securities cases cannot testify on issues of law. Bilzerian, 926 F.2d at 1294 (affirming the exclusion of expert testimony relating to whether certain disclosures in SEC filings

---

[5] In his deposition, Tucker testified, "A. Mr. Crow did not run the broker/dealer. B. If he was running the broker/dealer, then he should have been registered. In my view he was not running the broker/dealer." (Ex. B at 162.)

complied with the law); <u>Scop</u>, 846 F.2d at 139-40 (holding that securities law expert's statements that conduct established a fraudulent scheme within the meaning of the securities law exceeded the scope of permissible opinion testimony); <u>Marx</u>, 550 F.2d at 508-10 (holding that admission of testimony of a securities law expert, to give his opinion as to the legal obligations of the parties, was an error of law and highly prejudicial).  When the testimony encompasses an ultimate conclusion based upon the facts of the case or includes an opinion on the legality of the defendant's conduct, it is inadmissible.  <u>Bilzerian,</u> 926 F.2d at 1295; <u>see</u> <u>U.S. v. Bronston</u>, 658 F.2d 920, 930 (2d Cir. 1981) (affirming exclusion of testimony of defendant's law partner that defendant did not breach a fiduciary duty to client; testimony would have conveyed nothing more to the jury than his "general belief as to how the case should be decided"); <u>cf.</u> <u>Askanase v. Fatjo</u>, 130 F.3d 657, 673 (5th Cir. 1997) (affirming exclusion of attorney expert who sought to testify about whether officers and directors breached their fiduciary duties); <u>Estate of Sowell v. U.S.</u>, 198 F.3d 169, 171-72 (5th Cir. 1999) (affirming exclusion of expert concerning what a reasonable fiduciary would do when confronted with facts identical to those in the case because "responses to which would constitute a legal opinion 'telling the trier of fact what to decide.'").

## IV.    CONCLUSION

For the reasons discussed herein, the Commission respectfully requests this Court

preclude the testimony of J. Richard Tucker.

_____
VALERIE A. SZCZEPANIK
DAVID STOELTING
Attorneys for Plaintiff
Securities and Exchange Commission
3 World Financial Center - RM 400
New York, NY 10281-1022
Ph: (212) 336-0175
Fx: (212) 336-1317
szczepanikv@sec.gov
stoeltingd@sec.gov

Dated:  August 4, 2008
        New York, New York

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION

Plaintiff,

- against -

MICHAEL W. CROW, DUNCAN CAPITAL LLC,
DUNCAN CAPITAL GROUP LLC, ROBERT DAVID
FUCHS, and ROBERT MACGREGOR,

Defendants,

and

TREVOR CROW, SANTAL HOLDINGS LLC, M.W. CROW
FAMILY LP, CROW 2001 CHILDREN'S TRUST FBO
MICHELLE LEE CROW, CROW 2001 CHILDREN'S
TRUST FBO SPENCER MICHAEL CROW, CROW 2001
CHILDREN'S TRUST FBO DUNCAN CROW, and CROW
2001 CHILDREN'S TRUST FBO OLIVIA TREVOR CROW,

Relief Defendants.

07 Civ. 3814 (CM)

## EXPERT DISCLOSURE OF J. RICHARD TUCKER
## IN ACCORDANCE WITH FRCP 26(a)(2)

This Report, pursuant to Rule 26, contains a summary of the testimony that I would give at trial in this matter if called to be an expert witness by the defendants, Michael W. Crow and Duncan Capital Group LLC.

1.     I, J. Richard Tucker, have been asked to serve as an expert witness in the above-captioned matter for defendants, Michael W. Crow and Duncan Capital Group LLC. I am a partner at Maron Marvel Bradley & Anderson, P.A., in Wilmington, Delaware, where I specialize in corporate securities law with a concentration in financial institutions, broker-dealer regulations, and various bank, insurance and securities regulatory compliance issues. I am being paid at $400 per hour. I have more than thirty-six years of experience in the securities industry and in securities law, including nine

years as a lawyer and administrator with the United States Securities and Exchange Commission ("SEC"), fulfilling, among other duties, oversight of the Commission's Broker-Dealer Compliance Examination Program and the enforcement of perceived violations of the program's requirements and/or alleged broker-dealer improprieties on behalf of the Los Angeles Regional Office of the United States Securities and Exchange Commission.

2.    I am a graduate of the University of Delaware and the South Texas College of Law. After graduating law school, I was employed by the SEC and served as a Supervisory Attorney in the SEC's Division of Corporation Finance from 1969 until 1971. From 1971 to 1974, I was Assistant General Counsel to the Securities Industry Association, now Securities Industry and Financial Markets Association ("SIFMA") and in charge of its Washington, D.C. office. SIFMA is a trade association which represents more than 750 securities firms. I rejoined the SEC from 1974 until 1981 as Assistant Administrator of the Los Angeles Regional Office, where I supervised all regulatory programs, including among others the broker-dealer, investment adviser and investment company compliance examination programs. Since leaving the Commission in 1981, I have been involved in the practice of law and have served as the CEO of two national firms involved in the securities industry. Both firms were active in offering and underwriting securities, and one of such firms was a seller of a full range of investment products and the other was an underwriter of mutual fund products.

3.    A complete statement of my background is contained in my *curriculum vitae*, which is attached hereto as Exhibit 1.

2

4.    In my positions with the SEC, I conducted over 1000 investigations, reviewed many thousands of complaints, and supervised thousands of complaints and inquiries dealing with, among others, purported broker/client sales practice violations, broker-dealer registration requirements, trading activities and other broker-dealer, investment advisory and investment company sales practice issues and claims.

5.    Since my time with the Commission and while in private practice, I have been asked to serve as an Independent Regulatory Counsel, reviewing, among other things, matters concerning trading desks and order entry issues.  Such Independent Regulatory Counsel services have required approval by Regulators involved in resolving litigations with broker-dealers, wherein independent counsel is/was hired to investigate, review records and write reports to both the firm and the regulator.  The reports may recommend implementation of new firm procedures, describe counsel's observations of the firm's personnel, their conduct and activities and report counsel's assessment of compliance and/or non-compliance by the subjects with the rules and regulations related to the compliance issues surrounding the regulatory litigation.

6.    Within the past ten years, I have authored, *"Securities Arbitration; Is It Truly Efficient, or Can It Be Improved?"*, The Journal of Investment Compliance, Spring, 2002.

7.    Within the past ten years, I have testified regarding securities issues in many arbitration proceedings before the New York Stock Exchange, the National Association of Securities Dealers (now "FINRA") and the American Arbitration Association.  In addition, I have provided reports and/or trial or deposition testimony in many cases in federal and state courts.  I have testified or reported in <u>Berlitz</u>

3

International, Inc. v. MCC Proceeds, Inc., Trustee (Sup. Ct. N.Y., New York County 981/92 IAS Part 4 1999); W.A.W. Van Limburg Stirum, et al. v. Whalen, et al. (N.D.N.Y. 1999); and, Nelson vs. Nationwide Insurance Co., Douglas C. Anello and Morgan Stanley Dean Witter Reynolds, Inc. (CCP Phila. PA, May 2003); Securities and Exchange Commission v. Moises Saba Masri and Albert Meyer Sutton, (S.D.N.Y. 04-Civ.-1584 (RJH))

8.    To summarize, my opinions are based upon: (1) my experience and knowledge; (2) my background, education, and training; (3) a review of the First Amended Complaint, the respective Answers of the Defendants, Duncan Capital LLC general ledgers, Duncan Capital LLC Focus reports, investigatory transcripts of the defendants and third party witnesses taken during the SEC investigation, deposition transcripts of the defendants and third party witnesses (together with the exhibits thereto) taken during the instant action; and (4) securities industry laws, rules, regulations, standards, and practices in effect during the relevant time period.

9.    Based upon a review of the documents and the deposition transcripts, I have concluded that Mr. Crow's and Duncan Capital Group LLC's conduct was not inconsistent with the regulatory framework, and I do not believe that it was violative of the securities laws.

10.    From the record, it appears that Crow was already operating in the merchant banking business in 2003 when he recognized the benefits of an arrangement with a broker-dealer. It further appears that Mr. Crow realized that registration is required for operating in the broker-dealer business and wanted to take precautions to avoid violative conduct.    In an effort aimed at compliance with the securities laws, Mr. Crow sought

4

experienced broker-dealer counsel's advice and relied upon such advice. After the entities were combined into one location, Mr. Crow continued to have counsel's advice from a General Counsel who, among other things, was charged with maintaining the separation between merchant bank and broker-dealer. In addition, Mr. Crow understood that the broker-dealer had hired regulatory counsel to restructure the entity and a reputable compliance firm comprised of former regulators to review, among other things, the operation of the broker-dealer.

11.     The record is unclear as to the exact financial arrangements between merchant bank and the broker-dealer, but it supports a conclusion that either there was a profit sharing or a licensing arrangement (neither one of which is improper on its face). The record is also clear that these concepts were discussed with counsel.

12.     The SEC relies heavily on the fact that the broker-dealer was paying the expenses of the merchant bank as an indicator that Mr. Crow controlled the broker-dealer. The SEC's reliance is misplaced and there is nothing improper about the broker-dealer paying the expenses. These expenses consisted of rent, overhead expenses, salaries and benefits. There is no dispute among the parties that the broker-dealer paid these expenses. Moreover, there is support in the record that the parties intended that the broker-dealer accrue amounts for such expenses as a future set-off against amounts owed to merchant bank. The existence of this arrangement is reinforced by the fact that there is testimony and documents suggesting that least a portion of these accrued amounts were in fact offset in the separation agreement between the entities. An arrangement where the broker-dealer is completely transparent and reflecting all of its actual expenses— even if those expenses include ones that are incurred on behalf of another– is preferable to

5

underreporting and/or obfuscating the true financial picture of the broker-dealer's finances. The concept of net capital embodies fully stating all liabilities, contingent and current, while conservatively stating the value of the broker-dealer's assets in an effort to give the worst possible scenario of any capital impairment from operations. In this regard, I fully agree with the compliance consulting firm (and disagree with deponent Purjes) that the preferable method is to have the broker-dealer pay the expenses as opposed to the merchant bank.

13.    The SEC also relies upon the fact that the entities shared office space without a demising wall for the proposition that the entities were under common control. There is no such requirement, and the SEC's contention does not follow from its premise. Under certain circumstances, specific legitimate activities of broker-dealers must be separated and the firm(s) create a "Chinese Wall" separation. The circumstances here do not even require a "Chinese Wall." The SEC also finds fault with on the fact that Mr. Crow and certain Duncan Capital Group employees met jointly with the broker-dealer employees on multiple occasions. This too is a red herring. The evidence in the record strongly suggests that such meetings were networking meetings intended to promote business development and cross-selling/marketing, and otherwise explore the synergies between the various entities. Indeed, there is no dispute that the meetings became less frequent as business actually developed.

14.    Based on the depositions and the exhibits referenced therein, I see little support for the SEC's claim that Mr. Crow was controlling the daily activities of the broker-dealer (such as employment decisions, dress code, benefits and vacation). Quite to the contrary, the evidence overwhelmingly suggests that Mr. Fuchs controlled all aspects of

the broker-dealer, from net capital reporting and registration issues to day-to-day administrative decisions such as hiring and firing.

15.     Finally, my review of the records provided to me revealed little or no evidence that either Mr. Crow or Duncan Capital Group engaged in activity that would require registration as either a general securities representative or as a broker-dealer. Rather, the activity reflected in the record was consistent with legitimate merchant banking activities. I affirm that this is my Report.

                                    Respectfully submitted,

                                    _J. Richard Tucker_
                                    J. RICHARD TUCKER

Dated: April 21, 2008

7

**EXHIBIT 1**

**MARON MARVEL BRADLEY & ANDERSON, P.A.**

(Admitted to TX and CA)

**J. RICHARD TUCKER**

**EMPLOYMENT:**

**MARON MARVEL BRADLEY & ANDERSON, P.A.**    WILMINGTON, DE
(2005-Present)

Currently practicing in the areas of securities, insurance, banking and corporate law, and mergers and acquisitions. Serves as Mediator and or Arbitrator in various Alternative Dispute Resolution forums. Conducts major concentration in finance and financial institutions, broker-dealer regulations, insurance regulations, banking regulations, investment advisory and investment company regulatory matters and compliance issues related to financial institution regulations. Conducts independent Regulatory and Compliance Consulting. Counsel to companies with needs to raise capital and access financial markets. Serves as independent counsel to broker-dealers under appointment authorized by regulators. Provides expert witness testimony and litigation consulting in capital markets disputes in State and Federal Courts, Arbitrations and Mediations.

**GREENBERG TRAURIG LLP, Shareholder**      WILMINGTON, DE
**REED SMITH LLP, Partner**                  WILMINGTON, DE
**DUANE, MORRIS & HECKSCHER LLP, Partner**   WILMINGTON, DE
(1999-2005)

**J. RICHARD TUCKER, P.C. LAW OFFICES**    WILMINGTON, DE
formerly WOODLAND HILLS CA)
(1984-1999)

Corporate Law-SEC and State Securities Law Business Law. Operated a corporate securities practice with major concentration in finance and financial institutions, broker-dealer regulations, investment advisory and investment company regulatory matters and compliance issues related to financial institution regulations. Independent Regulatory and Compliance Consulting. Counsel to companies with capital needs and in accessing financial markets. Provided expert witness testimony and litigation consulting in capital markets disputes in State and Federal Courts, Arbitrations and Mediation.

**SIGMA INVESTOR SERVICES, INC. (now known as Sentinel Group)**
**President and CEO**                        MONTPELIER, VT
(1986-1989)

Served as Chairman, President and Chief Executive Officer of national distributor-underwriter of the Sigma Group of Mutual Funds, Wilmington, Delaware, acquired by Provident Mutual Financial Services, Inc. in 1987, currently, Sentinel Group of Mutual Funds, since 1993.

**UNIVERSITY SECURITIES (now known as SunAmerica Securities, Inc.)**
**President and CEO** PHOENIX, AZ
(1983-1984)

Directed overall operation of broker-dealer firm with 1000+ registered representatives, eighty branch offices in thirty-four states. University Group, of Long Beach, CA, prior to being acquired by Dallas based Southmark Corporation, was one of this country's largest public syndicators of real estate securities. SunAmerica Securities, Inc. acquired assets of Southmark Financial Services, Inc. and related sales companies in June 1989.

**HILL, FARRER & BURRILL, ATTORNEYS AT LAW** LOS ANGELES, CA
(1981-1984)

Corporate securities practice including transactions and consulting services and major concentration in financial institutions, broker-dealer regulation, investment advisory and investment company regulatory matters. Expert witness testimony and litigation consulting in securities industry disputes.

**U.S. SECURITIES AND EXCHANGE AND EXCHANGE COMMISSION**
**Assistant Administrator, Acting Administrator**
LOS ANGELES, CA REGIONAL OFFICE
(1974-1981)

Managed budget and maintained operational responsibility for the 105 member staff. Supervised all regulatory programs including full-disclosure program for securities registration, broker-dealer, investment advisor, investment company and corporate reorganization programs.

**SECURITIES INDUSTRY ASSOCIATION, INC., (Executive Director of**
**WASHINGTON, DC Office) Assistant General Counsel**

(1971-1974)

Directed 30+ professional and support staff members. Had strategic and policy planning responsibilities for liaison with federal and state legislative and regulatory bodies on behalf of principal trade association for securities industry comprised of investment bankers, banks, brokers, dealers, and stock exchange member firms.

**U.S. SECURITIES AND EXCHANGE COMMISSION, DIVISION OF**
**CORPORATION FINANCE, Supervisory Attorney** WASHINGTON, DC
(1969-1971)

Major area of concentration as chief interpretive attorney for Williams Act, tender offer, takeover and acquisition disclosure program; also, margin rules and Regulation A exemption.

## LAW SCHOOL HIGHLIGHTS:

Received the West Publishing Company Law Scholarship Award.

Included in *Who's Who Among Students in American Universities and Colleges.*

State of Texas Moot Court Competition represented law school.

U.S. Moot Court Competition (American Bar Association) represented law school and wrote winning brief.

Served as chairman of several committees of the American Bar Association/Law Student Division and received outstanding service award.

**OTHER HIGHLIGHTS:**

Co-author of an authoritative treatise on corporate acquisitions and tender offers which is entitled, *The Williams Act Public Law 90-439. Growing Pains? Some Interpretations with Respect to the Williams Act*, published in 1971.

Editor of *Digest of State and Local Pension Funds* -- 1972, published by the Securities Industry Association, Inc.

Corporate Secretary, and instrumental in forming the Securities Industry Minority Capital Foundation, a public foundation established to assist minority-owned businesses.

President, Forest Hills Estates Homeowners Association, Woodland Hills, California (1975-1986).

Member, Advisory Council to Graduate and Undergraduate Accounting Programs, California State University Los Angeles (1976-1982).

Chairman, Finance Committee, Vestry, Prince of Peace Church (1980-1983).

General Counsel, The Volunteer League of the San Fernando Valley (1982-1983).

Senior Warden, Prince of Peach Church (1985-1986).

Section Chair, Corporate III Retail, United Way of Delaware (1988-1989 Campaign).

Co-Chair, The Tatnall School, Annual Giving Campaign (1988-1989).

Member, Executive Committee, New Castle County Leadership Foundation (1989-2001).

Member, Executive Committee, Delaware Leadership Foundation (2001-Present).

Member, Board of Directors Delaware Guidance Services for Children and Youth (2001-Present), President of Board (2007-Present).

Panelist, NYU-CLE, Arbitration & Mediation, October 2002.

Author, *"Securities Arbitration: Is it Truly Efficient, or Can It Be Improved?"* The Journal of Investment Compliance, Spring 2002.

Active fundraiser for charitable, civic and religious organizations.

**MEMBERSHIP:**

Texas, California, Los Angeles County and American Bar Associations.

Member, American Bar Association (1969-present).

Member, Subcommittee on Market Structure and Broker-Dealer Matters, Federal Regulation of Securities (1980-Present).

Co-Chair, Securities Sub-committee of Section of Litigation's Alternative Dispute Resolution Committee (2003-present).

Member, Executive Committee of Business and Corporations Section of Los Angeles Bar Association (1978-1986).

Chairman, Financial Institutions-Brokers-Dealers Subcommittee of Los Angeles County Bar Association (1984-1986).

Member, Executive Committee of Business and Corporations Section of Beverly Hills Bar Association (1979-1983).

Arbitrator, Pacific Stock Exchange, Inc. (1981-1986).

Mediator, National Association of Securities Dealers ["NASD"] (1998-2007).

Mediator, Superior Court for the State of Delaware (1999-Present).

Mediator, Court of Chancery for the State of Delaware (2001-Present).

Arbitrator, NASD (2002-2007).

Mediator and Arbitrator, National Arbitration Forum (2004-Present).

Mediator and Arbitrator, New York Stock Exchange ["NYSE"] (2004-Present).

Mediator and Arbitrator, FINRA [successor to NASD & NYSE] (2007-Present).

Mediator, U.S. Bankruptcy Court, District of Delaware, Mediation or Voluntary Arbitration Program Registry (2008-present).

**EDUCATION:**

Archmere Academy Preparatory School, Claymont, Delaware.

A.B. – University of Delaware, Newark, Delaware.

J.D. – South Texas College of Law, Houston, Texas.

Admitted to practice law in Texas (1969) and California (1977).

# EXHIBIT B

**Copy of Transcript**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,

       Plaintiff,

      v.         07 Civ. 3814 (CM)

MICHAEL W. CROW, DUNCAN CAPITAL LLC,
DUNCAN CAPITAL GROUP LLC, ROBERT DAVID
FUCHS, and ROBERT MACGREGOR,

       Defendants,

     and

TREVOR CROW, SANTAL HOLDINGS LLC,
M.W. CROW FAMILY LP, CROW 2001
CHILDREN'S TRUST FBO MICHELLE LEE
CROW, CROW 2001 CHILDREN'S TRUST
FBO SPENCER MICHAEL CROW, CROW 2001.
CHILDREN'S TRUST FBO DUNCAN CROW,
and CROW 2001 CHILDREN'S TRUST FBO OLIVIA
TREVOR CROW,

       Relief Defendants.
------------------------------------------------------------------------x

       DEPOSITION of Expert Witness ROBERT J. TUCKER on behalf of Defendant

Michael Crow, taken by Plaintiff, pursuant to Notice, held at Three World Financial

Center, New York, New York on June 17, 2008 at 10:28 a.m., and before Anneliese R.

Tursi, a Registered Professional Reporter and Notary Public of the State of New York.



**Tankoos Reporting**

142 Willis Avenue
Mineola, NY 11501

305 Madison Avenue
New York, NY 10165

516.741.5235   212.349.9692   888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

Robert O. Tucker                                    June 17, 2008

Page 162

1                    R. Tucker

2    had said that running the broker/dealer and I

3    think there were some other examples you gave.  I

4    could be mistaken.  Let's just be clear.

5              You do not have a definition of

6    control, you don't know what the word "control"

7    means?

8         A.    Running the broker/dealer.  I

9    already defined that.

10        Q.    Within your definition of control,

11   running the broker/dealer, if Mr. Crow ran the

12   broker/dealer, would a profit-sharing arrangement

13   between Mr. Crow and the broker/dealer be

14   improper?

15        A.    A, Mr. Crow did not run the

16   broker/dealer.

17              B, if he was running the

18   broker/dealer, then he should have been

19   registered.

20              In my view he was not running the

21   broker/dealer.  Whether or not he was registered

22   or failed to meet the registration requirements,

23   has nothing to do with the profit sharing and it

24   doesn't make any difference.

25              Because I own Merrill Lynch stock



**Tankoos Reporting**

516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

142 Willis Avenue
Mineola, NY  11501

305 Madison Avenue
New York, NY 10165

Page 205

1                          R.  Tucker

2     have  testified  to  that  you  based  your  opinion  in

3     paragraph  15  on?

4               A.      I  think  I've  listed  mostly

5     everything.

6               Q.      You  said  most  everything.   Is  there

7     anything  as  you  sit  here  today  you  recall  basing

8     your  opinion  in  paragraph  15  on  that  you  haven't

9     already  testified  about?

10              A.      No.   One  of  the  problems  in  getting

11    a  degree  in  philosophy  is  that  you  take  a  course

12    in  logic  and  there  are  two  ends  of  any  issue:

13    All,  none.   And  the  universe  is  very  complex  and

14    philosophers  like  to  talk  in  terms  of  virtually.

15    So  I  apologize  if  I've  confused  the  record.

16              MR.  SIROTA:   Having  a  Bachelor's  in

17    philosophy  I  object  to  the  characterization  as

18    going  beyond  your  area  of  expertise.

19              Q.      Mr.  Tucker,  in  reaching  any  of  the

20    conclusions  in  your  expert  report,  did  you  make

21    any  credibility  assessments  with  respect  to  the

22    various  testimony  that  you  have  read?

23              A.      Yeah,  I  think  you  always  look  at

24    people  and  see  how  --  that's  why  I,  made  the

25    statement  earlier  that  as  you  read  some  of  the



**Tankoos Reporting**

516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

142 Willis Avenue
Mineola, NY  11501

305 Madison Avenue
New York, NY 10165

Robert J. Tucker

June 17, 2008

Page 206

R. Tucker

1
2   testimony, you see sort of inconsistencies in
3   there so that generally causes someone to focus
4   on why, what's their bias, is that credible.
5           And I think that, ultimately, I'm
6   not the trier of fact here.  I'm just, you know,
7   giving expert opinions, and as matter of fact
8   experts aren't supposed to try the facts but we
9   base our opinions on what the record is, and I
10  don't think that there was anyone who came across
11  as deceitful, dishonest.  I thought you got fair
12  testimony from all the witnesses that you took,
13  some of them I wonder why they said certain
14  things and it may have suggested some concerns,
15  personal or otherwise, but, no, I didn't.  There
16  was nothing that made me really doubt the
17  credibility of any of the witnesses.
18          Q.    You said that there were some
19  concerns.  Who did you have concerns about?
20          A.    I didn't have concerns about any of
21  the persons.  I would see somebody make a
22  statement that -- and in further examination it
23  was clear that the statement that I thought they
24  made at first is not what they really meant and
25  that as it went on it was clear.



**Tankoos Reporting**

516.741.5235    212.349.9692    888.242.DEPO(3376)
Toll Free Fax: 800.337.6769
www.tankoos.com

142 Willis Avenue
Mineola, NY  11501

305 Madison Avenue
New York, NY 10165

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the 4th day of August, 2008, copies of

the above and foregoing was served on Defendants by sending a copy by Federal Express

Overnight delivery to:

Martin P. Russo
Butzel Long
380 Madison Avenue
New York, NY 10017

Adam Gilbert
Nixon Peabody LLP
437 Madison Avenue
New York, NY 10022

*Attorneys for Defendants Michael W. Crow and Duncan Capital Group LLC and Relief
Defendants Trevor Crow, M.W. Crow Family LP, Crow 2001 Children's Trust FBO
Michelle Lee Crow, Crow 2001 Children's Trust FBO Spencer Michael Crow, Crow
2001 Children's Trust FBO Duncan Crow, and Crow 2001 Children's Trust FBO Olivia
Trevor Crow*

Howard B. Sirota
Attorney At Law
260 Madison Avenue
New York, NY  10016

*Attorney for Defendants Duncan Capital LLC and Robert David Fuchs and Relief
Defendant Santal Holdings LLC*

VALERIE A. SZCZEPANIK
Attorney for Plaintiff
Securities and Exchange Commission
3 World Financial Center - RM 400
New York, NY 10281-1022
Ph: (212) 336-0175
Fx: (212) 336-1317
szczepanikv@sec.gov