UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,   Docket No.: 07 Civ. 3814 (CM)

        Plaintiff,

-against-

MICHAEL W. CROW, et al.

        Defendants.

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS' EXPERT'S TESTIMONY

**BUTZEL LONG,**
a professional corporation

Martin P. Russo (MPR-4134)
Alison B. Cohen, Esq. (AC-7702)
380 Madison Avenue, 22nd Floor
New York, NY 10017
Tel: (212) 818-1100
Fax: (212) 818-0494

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 4

ARGUMENT ......................................................................................................................... 5

POINT I
     THE COMMISSION'S MOTION IS UNTIMELY
     AND SHOULD BE DENIED ....................................................................................... 5

POINT II
     THE PROPOSED EXPERT TESTIMONY IS
     ADMISSIBLE AND SHOULD NOT BE
     PRECLUDED ............................................................................................................... 6

     A.    Mr. Tucker's Proposed Testimony
            Will Be Helpful to the Court ............................................................................... 7

     B.    Mr. Tucker's Proposed Testimony Does
            Not Usurp the Court's Role as Fact Finder ....................................................... 10

     C.    Mr. Tucker's Assumption of Facts in the
            Record Was Appropriate .................................................................................... 11

     D.    Mr. Tucker's Testimony Does Not Improperly
            Offer Conclusions of Law ................................................................................... 12

     E.    Mr. Tucker's Testimony Regarding Defendants'
            Reliance Upon Counsel is Admissible ............................................................... 13

CONCLUSION .................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page**

**Cases**

Credit Suisse Securities (USA) LLC v. Glen Billing,
   127 S. Ct. 2383, 168 L. Ed.2d 145 (2007) .......................................................................... 6, 9

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
   509 U.S. 579, 113 S.Ct. 2786 (1993) ..................................................................................... 11

Marx & Co., Inc. v. The Diner's Club, Inc.,
   550 F.2d 505 (2d Cir. 1977) ................................................................................................ 6

Palazzeti Import/Export, Inc. v. Morson,
   2001 U.S. Dist. LEXIS 9538 (S.D.N.Y. Jul. 13, 2001) ........................................................ 10

Primavera Familienstiftung v. Askin Capital Management, L.P.,
   130 F. Supp.2d 450 (S.D.N.Y. 2001) ................................................................................... 6

U.S. v. Castillo, 924 F.2d 1227 (2d Cir. 1991) ............................................................................. 10

United States of America v. Bilzerian, 926 F.2d 1285 (2d Cir. 1991) ........................................... 6

**Statutes and Rules**

Fed. R. Civ. P. 26(a) ............................................................................................... 2, 3, 4, 9

Fed. R. Evid. 701 ....................................................................................................... 11

Fed. R. Evid. 702 ....................................................................................................... 9, 11

Fed. R. Evid. 703 ....................................................................................................... 11

Fed. R. Evid. 704 (a) ................................................................................................. 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

SECURITIES AND EXCHANGE COMMISSION,   Docket No.: 07 Civ. 3814 (CM)

        Plaintiff,

-against-

MICHAEL W. CROW, et al.

        Defendants.

-------------------------------------------------------------------

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS' EXPERT'S TESTIMONY

### PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted by defendants Michael W. Crow ("Crow") and Duncan Capital Group LLC ("DC Group")[1] in opposition to the motion by plaintiff Securities and Exchange Commission ("Commission"), seeking an order precluding testimony by defendants' retained expert, J. Richard Tucker. As demonstrated herein, the Commission's motion should be denied.

First of all, the Commission's motion is untimely. Pursuant to this Court's Individual Rules, motions *in limine* were required to be filed within five (5) days of the Court's Trial Notice scheduling the final pretrial conference (DKT. #65) -- which was filed on July 17, 2008 -- or by July 24, 2008. The Commission filed its motion on August 4, 2008, eleven (11) days late.

To the extent that the Court determines to hear the Commission's delinquently filed motion-- and it should not -- the motion is substantively deficient as well. The Commission ignores that the Court is the finder of fact in this case, as opposed to a jury, and will be in full

---

[1] Crow and DC Group will sometimes be referred to herein as the "defendants."

and complete control of what testimony is admitted at trial on a question by question basis. In addition, the sophistication of the Court ensures that Mr. Tucker's testimony will not encroach upon the role of the Court in determining the facts and law, and that the Commission could not be prejudiced by any testimony offered through Mr. Tucker at trial. The Commission's attempt at this juncture to foreclose entirely Mr. Tucker's testimony at trial is insupportable.

Significantly, the Commission's motion does not challenge Mr. Tucker's credentials or expert status, nor could it.[2] Unable to challenge Mr. Tucker's qualifications, the Commission posits that Mr. Tucker's testimony will not be helpful to the Court in its role as the fact finder herein. Thus, the Commission presumes that the Court is expertly informed of each and all of the securities broker-dealer regulatory and compliance issues, factors, rules and regulations which Mr. Tucker proposes to testify are necessary to its determination of whether Crow's affiliation with DC Group, an unregistered merchant bank, somehow places him at the helm of Duncan Capital LLC, a registered broker-dealer, as the Commission contends.

---

[2] Mr. Tucker has more than thirty-six (36) years of experience in the securities regulatory and compliance arena, including nine (9) years as an attorney with the Commission during which he oversaw the Broker-Dealer Compliance Examination Program, and the enforcement of alleged broker-dealer improprieties. Mr. Tucker conducted over 1000 investigations for the Commission and supervised thousands of complaints and inquiries dealing with, among other things, broker/client sales practice violations, broker-dealer registration requirements, trading activities and other broker-dealer, investment advisory and investment company sales practice issues and claims. Since leaving the Commission and entering the private sector, Mr. Tucker has served as an Independent Regulatory Counsel, and in that capacity has investigated and reported on broker-dealer procedures, conduct and activities from a regulatory compliance standpoint. Mr. Tucker has on numerous occasions been qualified as an expert, and has testified or reported in securities regulatory and compliance litigations. See, Rule 26(a) Expert Disclosure of J. Richard Tucker (Attached as Exhibit A), ¶¶ 1-7.

While it is understandable that the Commission would prefer that the Court not hear from an expert on defendants' behalf[3], the reality is that the issue of whether Crow exercised <u>de facto</u> "control" over Duncan Capital, as that term is utilized and defined in the securities industry, requires the Court to navigate the specialized and difficult landscape of broker-dealer regulation and compliance, an area in which Mr. Tucker has more than thirty six (36) years of experience, and is an expert.

As stated by Mr. Tucker in his Rule 26(a) expert disclosure (Exhibit A, ¶¶ 10-15), and as discussed fully below, in order to fully understand and evaluate the propriety or impropriety of the relations between Crow and DC Group, on the one hand, and Duncan Capital on the other, the Court must appreciate: various aspects of the SEC's net capital requirements; the commonality and propriety of the sharing of office space, and the sharing of profits, by and between a registered broker-dealer and a non-registered merchant bank; the circumstances under which certain activities would require registration as a general securities representative or as a broker-dealer; the regular and appropriate activities of a non-registered merchant bank; the circumstances under which demising walls or "Chinese Walls" are required to separate employees of an unregistered merchant bank from those of a registered broker-dealer, where the entities share office space; and the propriety or impropriety of the registered broker-dealer's advancement of all of the rent and other expenses incurred by the entities' common occupation of office space.

---

[3] It is odd, and unusual, that the Commission had not retained its own expert to testify in this action. We submit that the Commission's reluctance to employ expert analysis, and its efforts to keep Mr. Tucker from the witness stand, are designed to deprive the Court of clarity, and of the knowledge and understanding essential to its determination of the operative facts. Clearly, the Commission is concerned about -- and wishes to conceal -- the lack of securities regulatory support for its claims.

While Mr. Tucker's testimony will no doubt prove helpful to the Court, it is non intended to, and will not, in any way usurp the Court's role in determining the facts and applying the law. In any event, since the Court will be acting as the trier of fact, and not a jury, the Court will be in a position to identify, and exclude, on a question by question basis, any particular testimony that it believes tends to usurp its roles. As demonstrated further below, there simply is no good reason to preclude Mr. Tucker from testifying as an expert at trial.

## **BACKGROUND**

In this action, the Commission alleges, <u>inter alia</u>, that Crow unlawfully acted as an unregistered principal of defendant Duncan Capital LLC ("Duncan Capital"), a registered broker-dealer[4]. The Commission's claims are premised upon its allegations that Crow exercised <u>de facto</u> control over Duncan Capital's operations, based upon certain affiliations and relations between Duncan Capital and DC Group, an un-registered merchant bank of which Crow is a principal. Essentially, the Commission alleges that the two entities shared office space, that Duncan Capital paid all the rent and overhead expenses of the two entities, and that the entities shared profits. Crow and DC Group dispute the Commission's claims, and maintain, among other things, that the facts alleged by the Commission do not give rise to <u>de facto</u> control by Crow over Duncan Capital.

Crow and DC Group retained Mr. Tucker, a securities lawyer with significant broker-dealer regulatory and compliance experience, to provide expert testimony at trial. As indicated in Mr. Tucker's Rule 26(a) expert disclosure (Exhibit A), Mr. Tucker proposes to testify to the regulatory framework and compliance structure and to explain that the factual circumstances

---

[4] A more detailed description of the parties' claims and defenses is found in the parties' Joint Pre-Trial Order, filed July 15, 2008 (DKT. #63).

which form the basis for the Commission's contentions that Crow exercised control over Duncan Capital are consistent with applicable standards, practices, rules or regulations of the securities industry (Id., ¶¶ 9, 12-13).  Mr. Tucker's testimony in this regard is based upon his review of the record herein, and upon his specialized knowledge of various concepts, standards, practices, rules and regulations applicable to the securities industry, and to broker-dealer regulation and compliance in particular (Id., ¶ 8).

By this motion, the Commission erroneously seeks to preclude Mr. Tucker from testifying as an expert at trial.

### ARGUMENT

### POINT I

### THE COMMISSION'S MOTION IS UNTIMELY AND SHOULD BE DENIED

Pursuant to the Individual Practices of this Court (Rule 3.E), any and all *in limine* motions "must be filed within five days after the parties are noticed for final pre-trial conference."  On July 17, 2008, this Court filed its Trial Notice (DKT. #65), which scheduled a final pre-trial conference for October 3, 2008, at 2:00 p.m.  Accordingly, under the Court's rules, the latest that the Commission's motion *in limine* could be filed was July 24, 2008.  Without obtaining any enlargement of time, the Commission did not file its motion until August 4, 2008, eleven (11) days late.

In a footnote in its brief (n. 1, p. 1), the Commission inexplicably contends that its motion is only one (1) day late, purporting that its motion was filed six (6) days after the Court's July 24, 2008 order denying the Commission's request for a continuance of the trial date.  In no way, however, did the Commission's request for a continuance stay the time to file motions *in limine*, and the Order denying the request for a continuance did not affect the parties' time to do so.

Accordingly, the Commission's motion was inexcusably filed eleven (11) days late and should be rejected as untimely.

Based upon the foregoing, the Commission's motion is untimely and should be denied.

## POINT II

### THE PROPOSED EXPERT TESTIMONY IS ADMISSIBLE AND SHOULD NOT BE PRECLUDED

It is well recognized in this Circuit that "[t]estimony concerning the ordinary practices of those engaged in the securities business is admissible . . . to enable the [fact finder] to evaluate the conduct of the parties against the standards of ordinary practice in the industry." Marx & Co., Inc. v. The Diner's Club, Inc., 550 F.2d 505, 509 (2d Cir. 1977). Expert opinions which are helpful to the trier of fact are admissible into evidence, provided that the expert does not usurp the roles of the judge and the fact finder. See, United States of America v. Bilzerian, 926 F.2d 1285, 1295 (2d Cir. 1991). Moreover, "[e]xpert evidence is not inadmissible merely because it 'embraces an ultimate issue to be decided by the trier of fact.'" Primavera Familienstiftung v. Askin Capital Management, L.P., 130 F. Supp.2d 450, 528 (S.D.N.Y. 2001) (quoting Fed. R. Evid. 704 (a)). The expert testimony must be helpful to the trier of fact, however, and should not merely tell the jury what result to reach. *Id.*

In addition, the United States Supreme Court has recently recognized that the securities laws and regulations are extremely complicated and that courts lacking the requisite expertise may be likely to make mistakes in interpreting them. See, Credit Suisse Securities (USA) LLC v. Glen Billing, 127 S. Ct. 2383, 2395-96, 168 L. Ed.2d 145, 159-160 (2007).

A.      <u>Mr. Tucker's Proposed Testimony Will Be Helpful to the Court</u>

At issue in this action is whether Crow exercised *de facto* control over the operations of Duncan Capital. The Commission bases its allegations of control by Crow upon the following factual circumstances:

(i)     that Duncan Capital and DC Group shared office space between them (Complaint, ¶25);

(ii)    that Duncan Capital paid expenses of DC Group, including rent for the office space, overhead expenses of both entities, and the salaries and benefits of both entities (Complaint, ¶26);

(iii)   that DC Group and Duncan Capital shared profits between them (Complaint, ¶30); and

(iv)   that Crow handled certain personnel matters concerning employees of Duncan Capital (Complaint, ¶29).

As set forth below, Mr. Tucker's expert testimony is necessary to explain to the fact finder -- in this case the Court – certain concepts which are particularly applicable to the securities industry, and to broker-dealer regulation and compliance, which defendants believe will provide the Court with a better knowledge and contextual understanding of the operative facts, and whether they constitute <u>de</u> <u>facto</u> control by Crow of Duncan Capital.

Mr. Tucker proposes to testify, based upon his considerable securities regulatory and compliance experience, that none of the aforementioned factual circumstances relied upon by the Commission to allege "control" by Crow of Duncan Capital were inconsistent with the standards, practices, rules and regulations of the securities industry. <u>See</u>, Exhibit A, ¶¶ 9, 12-13. This is obviously important since it informs the Court that there was nothing inappropriate as a matter of

7

accepted industry practice, in and of themselves, about the factual circumstances alleged by the Commission.

In addition, and more specifically, Mr. Tucker will testify:

(v) concerning the net capital requirements imposed upon broker-dealers, but not merchant banks, and thus the manner in which they impacted and dictated the financial arrangements between DC Group and Duncan Capital. Mr. Tucker will testify that the concept of net capital embodies transparency by a broker-dealer, the full disclosure of all liabilities, contingent and current, and a conservative portrayal of the broker-dealer's assets. Thus, Mr. Tucker will testify that given the net capital requirements imposed upon Duncan Capital, and not upon DC Group, in his opinion it was compliant with the securities laws for Duncan Capital to pay the expenses of both entities. See, Exhibit A, ¶ 12.

(vi) that, based upon the natures of their different businesses, from a regulatory standpoint the sharing of office space between DC Group and Duncan Capital did not require a demising wall, or a "Chinese wall," and that in his opinion there was nothing inappropriate about the conduct of joint sales and marketing meetings between the merchant bank and the broker-dealer focused upon networking and cross-selling. Mr. Tucker will testify as to the circumstances under which demising and "Chinese Walls" and advisable or required, and to the differences between these two types of walls. See, Exhibit A, ¶ 13.

(vii) concerning the concept and meaning of "control" of a broker-dealer in the context of the securities laws, rules and regulations. See, Exhibit A, ¶ 14.

  (viii)  Concerning the difference, from both a business purpose and regulatory standpoint, between a merchant bank and a broker-dealer, and the factors that would be applicable in determining whether Crow or DC Group engaged in any activity that would require registration as a general securities representative or a broker-dealer.  See, Exhibit A, ¶ 15.

  All of the foregoing testimony by Mr. Tucker derives from his significant experience in the industry, and from his expertise and knowledge of the applicable standards, practices, rules and regulations.  Undeniably, Mr. Tucker's testimony and opinions will prove helpful to the Court's understanding and ultimate evaluation of defendants' alleged conduct.

  For its part, and all to eager to keep Mr. Tucker from the witness stand, the Commission erroneously contends (Brief, p. 9) that Mr. Tucker's testimony should be precluded because "the issues involved in this case are not *scientific* or *technical* matters that a fact finder would need assistance in understanding" (emphasis added).  This directly is contradictory to the United States Supreme Court's pronouncements in Credit Suisse Securities (USA) LLC v. Billing, supra, 127 S.Ct at 2395-96, 168 L. Ed.2d at 159-160.  In so arguing, however, the Commission also has totally ignored and written out of Fed. R. Evid. 702(a) the express provision that an expert with "specialized knowledge" may offer his or her opinion, if it will help the trier of fact to understand or to determine a fact in issue.  Taking further liberties, the Commission self-servingly concludes that the issue of whether Crow controlled Duncan Capital is not "esoteric," and is "well within the reach of the Court's common sense."

  As established above, however, and in Mr. Tucker's Rule 26(a) expert disclosure, the issue of whether the Commission's allegations amount to de facto control of Duncan Capital is complicated, and is impacted by various issues and factors that are specific to the securities

industry. Indeed, unlike the situations in U.S. v. Castillo, 924 F.2d 1227 (2d Cir. 1991), and Palazzeti Import/Export, Inc. v. Morson, 2001 U.S. Dist. LEXIS 9538 (S.D.N.Y. Jul. 13, 2001), both cited by the Commission, Mr. Tucker's testimony does not solely relate to "lay matters" which do not require the input and analysis of an expert with specialized knowledge.

B.  Mr. Tucker's Proposed Testimony Does Not Usurp the Court's Role as Fact Finder

Mr. Tucker's proposed testimony will provide the Court with his specialized knowledge relating to particular aspects of securities broker-dealer regulation and compliance, which consequently will provide the Court with a contextual understanding of the facts alleged by the Commission, and their relative meaning and significance. While the knowledge to be imparted by Mr. Tucker to the Court will prove extremely helpful to the Court in determining the facts, Mr. Tucker does not purport or propose to tell the Court what result to reach.

In any event, since the Court, and not a jury, will be hearing the evidence and determining both the facts and the law at trial, there is little risk that Mr. Tucker's testimony will usurp the Court's role as a fact finder. If, at any point during trial, the Court felt that Mr. Tucker's testimony was encroaching upon its role as fact finder, or that Mr. Tucker's testimony was inclining toward opining on an issue of law, the Court would have the ability to preclude that testimony upon a proper objection by the Commission. The Court is obviously a most sophisticated fact finder, and there is no danger that the Commission will be prejudiced by any interplay between counsel and the Court regarding the admissibility of any testimony by Mr. Tucker.

In addition, it is highly unlikely that the Court, as opposed to a lay jury, could be swayed by any over-reaching conclusions stated by Mr. Tucker at trial. The Court is perpetually considering and ruling upon objections at trial, and is, of course, capable of parsing appropriate expert testimony from testimony tending to encroach upon the Court's role as judge and jury.

The Court can evaluate and consider Mr. Tucker's testimony for what it determines it is worth, and can assign to it whatever weight it determines to be appropriate. In light of how helpful Mr. Tucker's testimony will no doubt be, however, there is no reason or basis to preclude his testimony, before trial and in its entirety, simply because the lines between appropriate and inappropriate expert testimony are sometimes subjective and blurred.

C.      Mr. Tucker's Assumption of Facts in the Record Was Appropriate

The Commission attempts (Brief, pp. 6-7) to cast doubt upon the reliability of Mr. Tucker's opinions, claiming that they are not based upon his own personal knowledge of the facts, but upon his review of testimony and documents in the record. There is, however, nothing irregular about an expert rendering an opinion not based upon his or her own personal knowledge, as recognized by the United States Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592, 113 S.Ct. 2786, 2796 (1993):

> That these requirements are embodied in Rule 702 is not surprising. Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. See Rules 702 and 703.

509 U.S. at 592, 113 S.Ct. at 2796 (emphasis added).

It is totally proper, then, that Mr. Tucker's opinions are based upon facts he elicited from the record, notwithstanding his lack of any personal knowledge of those facts. As such, the Commission's contentions (Brief, p. 5) that the admission of Mr. Tucker's testimony would improperly "take the place of that of the individuals who actually were involved in the underlying conduct" are absurd.

As is the Commission's related argument (Brief, p. 6) that Mr. Tucker's testimony improperly includes certain subjective and speculative determinations of evidence. Indeed, Fed. R. Evid. 703 expressly provides that an expert opinion is properly based upon facts "perceived

11

by or made known to the expert at or before the hearing," making it perfectly appropriate for an expert to make factual assumptions, based upon his or her evaluation of testimony and evidence in the record, in rendering an opinion.

To the extent that the Commission believes Mr. Tucker's factual assumptions to be speculative, it will have an opportunity at trial to cross-examine Mr. Tucker, and the fact witnesses upon whose testimony his opinion is based. In addition, the Court will make its own assessments of the factual underpinnings of Mr. Tucker's testimony, and will consider Mr. Tucker's testimony, and rule on objections, accordingly.

D.    Mr. Tucker's Testimony Does Not Improperly Offer Conclusions of Law

The Commission erroneously complains (Brief, p. 9) that Mr. Tucker's testimony that none of the factual circumstances upon which the Commission's claims are based were inconsistent with the relevant regulatory framework, and were not violative of the securities laws, is an inadmissible opinion by Mr. Tucker as to the legality of Crow and DC Group's conduct. The Commission is wrong.

Mr. Tucker's testimony does not opine on the ultimate legal issue before the Court, e.g., whether Crow unlawfully acted as an unregistered principal of Duncan Capital. Rather, as indicated above, Mr. Tucker's references in his report to the regulatory framework and the securities laws relate to his opinion that the factual circumstances underlying the Commission's claims did not, in and of themselves, violate any rules, regulations or laws. This testimony is being offered for the purpose of providing the Court with a better understanding of the facts alleged, and their relative significance within the context of the applicable standards, practices, rules and regulations in the securities industry. Mr. Tucker does not propose to testify at trial that in his opinion Crow did not unlawfully act as an unregistered principal of a registered

broker-dealer. Mr. Tucker, a seasoned and experienced lawyer, is well aware that the ultimate legal issues are for the Court to determine.

E. Mr. Tucker's Testimony Regarding Defendants' Reliance Upon Counsel is Admissible

The Commission contends that Mr. Tucker may not testify as to the defendants' reliance upon the advice of regulatory and compliance counsel in connection with establishing the structure of the relationship and interaction between DC Group and Duncan Capital. According to the Commission, the fact finder, based upon the testimony of those that sought and gave counsel, is perfectly capable of determining the reasonableness of defendants' conduct, and their state of mind.

Mr. Tucker does not propose to testify, however, as to the reasonableness of the defendants' conduct in relying upon the advice that they were given by counsel, or to their state of mind. Mr. Tucker simply made references that it "appears" that they consulted counsel as background for his opinion.

## CONCLUSION

Based upon the foregoing, Mr. Tucker's proposed testimony, based upon his specialized knowledge and experience, will be helpful to the Court's consideration and determination of the operative facts, and is appropriate expert testimony. As such, the Commission's motion to preclude Mr. Tucker's testimony should in all respects be denied.

DATED: August 14, 2008
    New York, New York  BUTZEL LONG,
              a professional corporation

              By: /s/ Martin P. Russo
                Martin P. Russo (MPR-4134)
                Alison B. Cohen, Esq. (AC-7702)
                Attorneys for Defendants
                380 Madison Avenue, 22nd Fl.
                New York, New York 10017
                (212) 818-1110