# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION

                      Plaintiff,

- against -

MICHAEL W. CROW, DUNCAN CAPITAL LLC,
DUNCAN CAPITAL GROUP LLC, ROBERT DAVID
FUCHS, and ROBERT MACGREGOR,

                      Defendants,

and

TREVOR CROW, SANTAL HOLDINGS LLC, M.W. CROW
FAMILY LP, CROW 2001 CHILDREN'S TRUST FBO
MICHELLE LEE CROW, CROW 2001 CHILDREN'S
TRUST FBO SPENCER MICHAEL CROW, CROW 2001
CHILDREN'S TRUST FBO DUNCAN CROW, and CROW
2001 CHILDREN'S TRUST FBO OLIVIA TREVOR CROW,

                      Relief Defendants.

07 Civ. 3814 (CM)

## EXPERT DISCLOSURE OF J. RICHARD TUCKER
## IN ACCORDANCE WITH FRCP 26(a)(2)

This Report, pursuant to Rule 26, contains a summary of the testimony that I would give at trial in this matter if called to be an expert witness by the defendants, Michael W. Crow and Duncan Capital Group LLC.

1.     I, J. Richard Tucker, have been asked to serve as an expert witness in the above-captioned matter for defendants, Michael W. Crow and Duncan Capital Group LLC. I am a partner at Maron Marvel Bradley & Anderson, P.A., in Wilmington, Delaware, where I specialize in corporate securities law with a concentration in financial institutions, broker-dealer regulations, and various bank, insurance and securities regulatory compliance issues. I am being paid at $400 per hour. I have more than thirty-six years of experience in the securities industry and in securities law, including nine

years as a lawyer and administrator with the United States Securities and Exchange Commission ("SEC"), fulfilling, among other duties, oversight of the Commission's Broker-Dealer Compliance Examination Program and the enforcement of perceived violations of the program's requirements and/or alleged broker-dealer improprieties on behalf of the Los Angeles Regional Office of the United States Securities and Exchange Commission.

2.  I am a graduate of the University of Delaware and the South Texas College of Law. After graduating law school, I was employed by the SEC and served as a Supervisory Attorney in the SEC's Division of Corporation Finance from 1969 until 1971. From 1971 to 1974, I was Assistant General Counsel to the Securities Industry Association, now Securities Industry and Financial Markets Association ("SIFMA") and in charge of its Washington, D.C. office. SIFMA is a trade association which represents more than 750 securities firms. I rejoined the SEC from 1974 until 1981 as Assistant Administrator of the Los Angeles Regional Office, where I supervised all regulatory programs, including among others the broker-dealer, investment adviser and investment company compliance examination programs. Since leaving the Commission in 1981, I have been involved in the practice of law and have served as the CEO of two national firms involved in the securities industry. Both firms were active in offering and underwriting securities, and one of such firms was a seller of a full range of investment products and the other was an underwriter of mutual fund products.

3.  A complete statement of my background is contained in my *curriculum vitae*, which is attached hereto as Exhibit 1.

2

4. In my positions with the SEC, I conducted over 1000 investigations, reviewed many thousands of complaints, and supervised thousands of complaints and inquiries dealing with, among others, purported broker/client sales practice violations, broker-dealer registration requirements, trading activities and other broker-dealer, investment advisory and investment company sales practice issues and claims.

5. Since my time with the Commission and while in private practice, I have been asked to serve as an Independent Regulatory Counsel, reviewing, among other things, matters concerning trading desks and order entry issues. Such Independent Regulatory Counsel services have required approval by Regulators involved in resolving litigations with broker-dealers, wherein independent counsel is/was hired to investigate, review records and write reports to both the firm and the regulator. The reports may recommend implementation of new firm procedures, describe counsel's observations of the firm's personnel, their conduct and activities and report counsel's assessment of compliance and/or non-compliance by the subjects with the rules and regulations related to the compliance issues surrounding the regulatory litigation.

6. Within the past ten years, I have authored, *"Securities Arbitration; Is It Truly Efficient, or Can It Be Improved?"*, The Journal of Investment Compliance, Spring, 2002.

7. Within the past ten years, I have testified regarding securities issues in many arbitration proceedings before the New York Stock Exchange, the National Association of Securities Dealers (now "FINRA") and the American Arbitration Association. In addition, I have provided reports and/or trial or deposition testimony in many cases in federal and state courts. I have testified or reported in Berlitz

International, Inc. v. MCC Proceeds, Inc., Trustee (Sup. Ct. N.Y., New York County 981/92 IAS Part 4 1999); W.A.W. Van Limburg Stirum, et al. v. Whalen, et al. (N.D.N.Y. 1999); and, Nelson vs. Nationwide Insurance Co., Douglas C. Anello and Morgan Stanley Dean Witter Reynolds, Inc. (CCP Phila. PA, May 2003); Securities and Exchange Commission v. Moises Saba Masri and Albert Meyer Sutton, (S.D.N.Y. 04-Civ.-1584 (RJH))

8. To summarize, my opinions are based upon: (1) my experience and knowledge; (2) my background, education, and training; (3) a review of the First Amended Complaint, the respective Answers of the Defendants, Duncan Capital LLC general ledgers, Duncan Capital LLC Focus reports, investigatory transcripts of the defendants and third party witnesses taken during the SEC investigation, deposition transcripts of the defendants and third party witnesses (together with the exhibits thereto) taken during the instant action; and (4) securities industry laws, rules, regulations, standards, and practices in effect during the relevant time period.

9. Based upon a review of the documents and the deposition transcripts, I have concluded that Mr. Crow's and Duncan Capital Group LLC's conduct was not inconsistent with the regulatory framework, and I do not believe that it was violative of the securities laws.

10. From the record, it appears that Crow was already operating in the merchant banking business in 2003 when he recognized the benefits of an arrangement with a broker-dealer. It further appears that Mr. Crow realized that registration is required for operating in the broker-dealer business and wanted to take precautions to avoid violative conduct. In an effort aimed at compliance with the securities laws, Mr. Crow sought

experienced broker-dealer counsel's advice and relied upon such advice. After the entities were combined into one location, Mr. Crow continued to have counsel's advice from a General Counsel who, among other things, was charged with maintaining the separation between merchant bank and broker-dealer. In addition, Mr. Crow understood that the broker-dealer had hired regulatory counsel to restructure the entity and a reputable compliance firm comprised of former regulators to review, among other things, the operation of the broker-dealer.

11. The record is unclear as to the exact financial arrangements between merchant bank and the broker-dealer, but it supports a conclusion that either there was a profit sharing or a licensing arrangement (neither one of which is improper on its face). The record is also clear that these concepts were discussed with counsel.

12. The SEC relies heavily on the fact that the broker-dealer was paying the expenses of the merchant bank as an indicator that Mr. Crow controlled the broker-dealer. The SEC's reliance is misplaced and there is nothing improper about the broker-dealer paying the expenses. These expenses consisted of rent, overhead expenses, salaries and benefits. There is no dispute among the parties that the broker-dealer paid these expenses. Moreover, there is support in the record that the parties intended that the broker-dealer accrue amounts for such expenses as a future set-off against amounts owed to merchant bank. The existence of this arrangement is reinforced by the fact that there is testimony and documents suggesting that least a portion of these accrued amounts were in fact offset in the separation agreement between the entities. An arrangement where the broker-dealer is completely transparent and reflecting all of its actual expenses— even if those expenses include ones that are incurred on behalf of another– is preferable to

underreporting and/or obfuscating the true financial picture of the broker-dealer's finances. The concept of net capital embodies fully stating all liabilities, contingent and current, while conservatively stating the value of the broker-dealer's assets in an effort to give the worst possible scenario of any capital impairment from operations. In this regard, I fully agree with the compliance consulting firm (and disagree with deponent Purjes) that the preferable method is to have the broker-dealer pay the expenses as opposed to the merchant bank.

13. The SEC also relies upon the fact that the entities shared office space without a demising wall for the proposition that the entities were under common control. There is no such requirement, and the SEC's contention does not follow from its premise. Under certain circumstances, specific legitimate activities of broker-dealers must be separated and the firm(s) create a "Chinese Wall" separation. The circumstances here do not even require a "Chinese Wall." The SEC also finds fault with on the fact that Mr. Crow and certain Duncan Capital Group employees met jointly with the broker-dealer employees on multiple occasions. This too is a red herring. The evidence in the record strongly suggests that such meetings were networking meetings intended to promote business development and cross-selling/marketing, and otherwise explore the synergies between the various entities. Indeed, there is no dispute that the meetings became less frequent as business actually developed.

14. Based on the depositions and the exhibits referenced therein, I see little support for the SEC's claim that Mr. Crow was controlling the daily activities of the broker-dealer (such as employment decisions, dress code, benefits and vacation). Quite to the contrary, the evidence overwhelmingly suggests that Mr. Fuchs controlled all aspects of

the broker-dealer, from net capital reporting and registration issues to day-to-day administrative decisions such as hiring and firing.

15. Finally, my review of the records provided to me revealed little or no evidence that either Mr. Crow or Duncan Capital Group engaged in activity that would require registration as either a general securities representative or as a broker-dealer. Rather, the activity reflected in the record was consistent with legitimate merchant banking activities. I affirm that this is my Report.

Respectfully submitted,

J. RICHARD TUCKER

Dated: April 21, 2008

**EXHIBIT 1**

MARON MARVEL BRADLEY & ANDERSON, P.A.

(Admitted to TX and CA)

## J. RICHARD TUCKER

**EMPLOYMENT:**

| | |
|---|---|
| **MARON MARVEL BRADLEY & ANDERSON, P.A.** | WILMINGTON, DE |
| | (2005-Present) |

Currently practicing in the areas of securities, insurance, banking and corporate law, and mergers and acquisitions. Serves as Mediator and or Arbitrator in various Alternative Dispute Resolution forums. Conducts major concentration in finance and financial institutions, broker-dealer regulations, insurance regulations, banking regulations, investment advisory and investment company regulatory matters and compliance issues related to financial institution regulations. Conducts independent Regulatory and Compliance Consulting. Counsel to companies with needs to raise capital and access financial markets. Serves as independent counsel to broker-dealers under appointment authorized by regulators. Provides expert witness testimony and litigation consulting in capital markets disputes in State and Federal Courts, Arbitrations and Mediations.

| | |
|---|---|
| **GREENBERG TRAURIG LLP, Shareholder** | WILMINGTON, DE |
| **REED SMITH LLP, Partner** | WILMINGTON, DE |
| **DUANE, MORRIS & HECKSCHER LLP, Partner** | WILMINGTON, DE |
| | (1999-2005) |

| | |
|---|---|
| **J. RICHARD TUCKER, P.C. LAW OFFICES** | WILMINGTON, DE |
| | formerly WOODLAND HILLS CA) |
| | (1984-1999) |

Corporate Law-SEC and State Securities Law Business Law. Operated a corporate securities practice with major concentration in finance and financial institutions, broker-dealer regulations, investment advisory and investment company regulatory matters and compliance issues related to financial institution regulations. Independent Regulatory and Compliance Consulting. Counsel to companies with capital needs and in accessing financial markets. Provided expert witness testimony and litigation consulting in capital markets disputes in State and Federal Courts, Arbitrations and Mediation.

**SIGMA INVESTOR SERVICES, INC. (now known as Sentinel Group)**
**President and CEO**
MONTPELIER, VT
(1986-1989)

Served as Chairman, President and Chief Executive Officer of national distributor-underwriter of the Sigma Group of Mutual Funds, Wilmington, Delaware, acquired by Provident Mutual Financial Services, Inc. in 1987, currently, Sentinel Group of Mutual Funds, since 1993.

**UNIVERSITY SECURITIES (now known as SunAmerica Securities, Inc.)**
**President and CEO**                                    PHOENIX, AZ
                                                          (1983-1984)

Directed overall operation of broker-dealer firm with 1000+ registered representatives, eighty branch offices in thirty-four states. University Group, of Long Beach, CA, prior to being acquired by Dallas based Southmark Corporation, was one of this country's largest public syndicators of real estate securities. SunAmerica Securities, Inc. acquired assets of Southmark Financial Services, Inc. and related sales companies in June 1989.

**HILL, FARRER & BURRILL, ATTORNEYS AT LAW**     LOS ANGELES, CA
                                                  (1981-1984)

Corporate securities practice including transactions and consulting services and major concentration in financial institutions, broker-dealer regulation, investment advisory and investment company regulatory matters. Expert witness testimony and litigation consulting in securities industry disputes.

**U.S. SECURITIES AND EXCHANGE AND EXCHANGE COMMISSION**
**Assistant Administrator, Acting Administrator**
                                    **LOS ANGELES, CA REGIONAL OFFICE**
                                                          (1974-1981)

Managed budget and maintained operational responsibility for the 105 member staff. Supervised all regulatory programs including full-disclosure program for securities registration, broker-dealer, investment advisor, investment company and corporate reorganization programs.

**SECURITIES INDUSTRY ASSOCIATION, INC., (Executive Director of**
**WASHINGTON, DC Office) Assistant General Counsel**
                                                          (1971-1974)

Directed 30+ professional and support staff members. Had strategic and policy planning responsibilities for liaison with federal and state legislative and regulatory bodies on behalf of principal trade association for securities industry comprised of investment bankers, banks, brokers, dealers, and stock exchange member firms.

**U.S. SECURITIES AND EXCHANGE COMMISSION, DIVISION OF**
**CORPORATION FINANCE, Supervisory Attorney**     WASHINGTON, DC
                                                   (1969-1971)

Major area of concentration as chief interpretive attorney for Williams Act, tender offer, takeover and acquisition disclosure program; also, margin rules and Regulation A exemption.

**LAW SCHOOL HIGHLIGHTS:**

Received the West Publishing Company Law Scholarship Award.

Included in *Who's Who Among Students in American Universities and Colleges*.

State of Texas Moot Court Competition represented law school.

U.S. Moot Court Competition (American Bar Association) represented law school and wrote winning brief.

Served as chairman of several committees of the American Bar Association/Law Student Division and received outstanding service award.

**OTHER HIGHLIGHTS:**

Co-author of an authoritative treatise on corporate acquisitions and tender offers which is entitled, *The Williams Act Public Law 90-439. Growing Pains? Some Interpretations with Respect to the Williams Act*, published in 1971.

Editor of *Digest of State and Local Pension Funds* -- 1972, published by the Securities Industry Association, Inc.

Corporate Secretary, and instrumental in forming the Securities Industry Minority Capital Foundation, a public foundation established to assist minority-owned businesses.

President, Forest Hills Estates Homeowners Association, Woodland Hills, California (1975-1986).

Member, Advisory Council to Graduate and Undergraduate Accounting Programs, California State University Los Angeles (1976-1982).

Chairman, Finance Committee, Vestry, Prince of Peace Church (1980-1983).

General Counsel, The Volunteer League of the San Fernando Valley (1982-1983).

Senior Warden, Prince of Peach Church (1985-1986).

Section Chair, Corporate III Retail, United Way of Delaware (1988-1989 Campaign).

Co-Chair, The Tatnall School, Annual Giving Campaign (1988-1989).

Member, Executive Committee, New Castle County Leadership Foundation (1989-2001).

Member, Executive Committee, Delaware Leadership Foundation (2001-Present).

Member, Board of Directors Delaware Guidance Services for Children and Youth (2001-Present), President of Board (2007-Present).

Panelist, NYU-CLE, Arbitration & Mediation, October 2002.

Author, "*Securities Arbitration: Is it Truly Efficient, or Can It Be Improved?*" The Journal of Investment Compliance, Spring 2002.

Active fundraiser for charitable, civic and religious organizations.

**MEMBERSHIP:**

    Texas, California, Los Angeles County and American Bar Associations.

    Member, American Bar Association (1969-present).

        Member, Subcommittee on Market Structure and Broker-Dealer Matters, Federal Regulation of Securities (1980-Present).

        Co-Chair, Securities Sub-committee of Section of Litigation's Alternative Dispute Resolution Committee (2003-present).

    Member, Executive Committee of Business and Corporations Section of Los Angeles Bar Association (1978-1986).

        Chairman, Financial Institutions-Brokers-Dealers Subcommittee of Los Angeles County Bar Association (1984-1986).

    Member, Executive Committee of Business and Corporations Section of Beverly Hills Bar Association (1979-1983).

    Arbitrator, Pacific Stock Exchange, Inc. (1981-1986).

    Mediator, National Association of Securities Dealers ["NASD"] (1998-2007).

    Mediator, Superior Court for the State of Delaware (1999-Present).

    Mediator, Court of Chancery for the State of Delaware (2001-Present).

    Arbitrator, NASD (2002-2007).

    Mediator and Arbitrator, National Arbitration Forum (2004-Present).

    Mediator and Arbitrator, New York Stock Exchange ["NYSE"] (2004-Present).

    Mediator and Arbitrator, FINRA [successor to NASD & NYSE] (2007-Present).

    Mediator, U.S. Bankruptcy Court, District of Delaware, Mediation or Voluntary Arbitration Program Registry (2008-present).

**EDUCATION:**

    Archmere Academy Preparatory School, Claymont, Delaware.

    A.B. – University of Delaware, Newark, Delaware.

    J.D. – South Texas College of Law, Houston, Texas.

    Admitted to practice law in Texas (1969) and California (1977).